**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HAITIAN EVANGELICAL CLERGY ASSOCIATION; SERVICE EMPLOYEES INTERNATIONAL UNION – LOCAL 32BJ; SABINA BADIO FLORIAL; YOUDELAINE DORCIN; ROBERT JEAN ALIX ERINAC; RACHELLE GUIRAND; DIEU YOLNICK JEUNE CADET; AUDOINE AMAZAN; GERALD MICHAUD; NADEGE JOSEPH MICHAUD; and MARIE WILDRIGUE ERINAC MIOT,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**DONALD J. TRUMP, President of the United States of America; UNITED STATES OF AMERICA; THE DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, Secretary of Homeland Security,**<br><br>*Defendants*. | Case No. 1:25-cv-01464-BMC<br><br><br>__ORAL ARGUMENT REQUESTED__ |

**MEMORANDUM OF LAW IN SUPPORT OF
__PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT__**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES........................................................................................................ ii

INTRODUCTION ..........................................................................................................................1

STATEMENT OF UNDISPUTED FACTS....................................................................................3

      A.    The TPS statute imposes temporal limits and procedural requirements on the termination of a country's TPS designation. .............................................................3

      B.    Haiti has been designated for TPS since 2010. .........................................................4

      C.    Secretary Noem prematurely terminated Haiti's designation...................................6

      D.    The premature termination of Haiti's TPS designation harms Plaintiffs. .................6

LEGAL STANDARD ......................................................................................................................7

ARGUMENT ..................................................................................................................................8

I.     There is no dispute as to material facts.................................................................................8

II.    Secretary Noem's premature termination of Haiti's TPS designation is *ultra vires*. ..........8

      A.    Secretary Noem lacks statutory authority to prematurely terminate a TPS designation.................................................................................................................8

      B.    Secretary Noem lacks inherent authority to prematurely terminate a TPS designation.................................................................................................................9

III.   The Secretary's unlawful termination of Haiti's TPS designation is reviewable under the Administrative Procedure Act. .........................................................................................11

      A.    Section 1252(f)(1) does not limit this Court's authority to set aside the unlawful termination.............................................................................................................12

      B.    Section 1254a(b)(5)(A) does not limit this Court's authority to set aside the unlawful termination. ............................................................................................14

CONCLUSION .............................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Am. Methyl Corp. v. EPA*,
749 F.2d 826 (D.C. Cir. 1984)............................................................................................9, 11

*Bennett v. Spear*,
520 U.S. 154 (1997) .......................................................................................................12

*Biden v. Texas*,
597 U.S. 785 (2022) .......................................................................................................13

*Bookman v. United States*,
453 F.2d 1263 (Ct. Cl. 1972)...........................................................................................10

*Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*,
777 F. Supp. 2d 424 (E.D.N.Y. 2011) ..............................................................................10

*CASA de Maryland, Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018)..................................................................................16

*Centro Presente v. U.S. Dep't of Homeland Sec.*,
332 F. Supp. 3d 393 (D. Mass. 2018)...............................................................................16

*Chao v. Russell P. Le Frois Builder, Inc.*,
291 F.3d 219 (2d Cir. 2002) ..............................................................................................9

*China Unicom (Ams) Operations Ltd. v. FCC*,
124 F.4th 1128 (9th Cir. 2024)........................................................................................11

*Civil Aeronautics Bd. v. Delta Air Lines Inc.*,
367 U.S. 316 (1961) .......................................................................................................11

*FCC v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293 (2003) .......................................................................................................11

*Florida v. United States*,
660 F. Supp. 3d 1239 (N.D. Fla. 2023) ............................................................................13

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ...................................................................................................12, 13

*Gorbach v. Reno*,
219 F.3d 1087 (9th Cir. 2000)...........................................................................................9

*Ivy Sports Med., LLC v. Burwell*,
767 F.3d 81 (D.C. Cir. 2014).......................................................................................9, 10

*Kapoor v. U.S. Citizenship & Immigr. Servs.*,
  2025 WL 253301 (E.D.N.Y. 2025) ........................................................................7

*Kidd v. Mayorkas*,
  734 F. Supp. 3d 967 (C.D. Cal. 2024) .................................................................13

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................8

*Macktal v. Chao*,
  286 F.3d 822 (5th Cir. 2002) ...........................................................................9, 10

*N. Air Cargo v. U.S. Postal Serv.*,
  674 F.3d 852 (D.C. Cir. 2012) ...........................................................................14

*Nat. Res. Def. Council v. Regan*,
  67 F.4th 397 (D.C. Cir. 2023) ............................................................................11

*Noroozi v. Napolitano*,
  905 F. Supp. 2d 535 (S.D.N.Y. 2012) ..................................................................8

*Ramos v. Nielsen* ,
  321 F. Supp. 3d 1083 (N.D. Cal. 2018) ..............................................................16

*R.J. Reynolds Tobacco Co. v. FDA*,
  696 F.3d 1205 (D.C. Cir. 2012) .........................................................................14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ...........................................................................................13

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) .............................................................5, 16

*State v. Trump*,
  2025 WL 573771 (S.D.N.Y. 2025) .....................................................................12

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) ..............................................................................14

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) .........................................................................13, 14

**Statutes**

5 U.S.C. § 702 ...........................................................................................................12

5 U.S.C. § 704 ...........................................................................................................12

5 U.S.C. § 706(2) .............................................................................3, 8, 11, 13, 14, 15, 16

5 U.S.C. § 706(2)(A) ........................................................................................................3

5 U.S.C. § 706(2)(C) ....................................................................................................3, 15

5 U.S.C. § 706(2)(D) ......................................................................................................16

8 U.S.C. § 1252(f)(1) ..........................................................................................12, 13, 14

8 U.S.C. § 1254a(a)(1)(A) .................................................................................................4

8 U.S.C. § 1254a(a)(2) .......................................................................................................7

8 U.S.C. § 1254a(b)(1) .........................................................................................4, 15, 16

8 U.S.C. § 1254a(b)(1)(B) ...........................................................................................3, 14

8 U.S.C. § 1254a(b)(1)(C) ...........................................................................................4, 14

8 U.S.C. § 1254a(b)(2) .......................................................................................................4

8 U.S.C. § 1254a(b)(3) ...................................................................................................8, 9

8 U.S.C. § 1254a(b)(3)(A) ...........................................................................4, 10, 14, 15, 16

8 U.S.C. § 1254a(b)(3)(B) ....................................................................3, 4, 6, 9, 10, 15

8 U.S.C. § 1254a(b)(3)(C) .................................................................................................4

8 U.S.C. § 1254a(b)(5)(A) ...................................................................................14, 15, 16

8 U.S.C. § 1254a(c)(1)(A) .................................................................................................4

8 U.S.C. § 1254a(c)(1)(B) .................................................................................................4

Homeland Security Act of 2002,
   Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002) ....................................................10

Homeland Security Act of 2002 Amendments Act,
   Pub. L. 108-7, 117 Stat. 11 (Feb. 20, 2003) ...............................................................10

**Rules**

Fed. R. Civ. P. 56(a) ..........................................................................................................7

**Regulations**

8 C.F.R. § 244.2 .................................................................................................................4

75 Fed. Reg. 3476 (Jan. 21, 2010)....................................................................................4

76 Fed. Reg. 29000 (May 19, 2011) ..................................................................5

77 Fed. Reg. 59943 (Oct. 1, 2012) ...................................................................5

79 Fed. Reg. 11808 (Mar. 3, 2014) ..................................................................5

80 Fed. Reg. 51582 (Aug. 25, 2015) .................................................................5

86 Fed. Reg. 41863 (Aug. 3, 2021) ...............................................................5, 6

88 Fed. Reg. 5022 (Jan. 26, 2023) ................................................................5, 6

89 Fed. Reg. 54484 (July 1, 2024) ..............................................................5, 6, 8

90 Fed. Reg. 10511 (Feb. 24, 2025) .....................................................6, 8, 9, 12, 15

**Other Authorities**

*Haiti swears in new leader among din of gang violence*,
   VOICE OF AMERICA (March 7, 2025), https://www.voanews.com/a/haiti-swears
   -in-new-leader-amid-din-of-gang-violence/8003126.html ........................................1

Caitlin Stephen Hu et al., *FAA grounds all US flights to Haiti after three planes were
   struck by gunfire*,
   CNN (Nov. 12, 2024), https://www.cnn.com/2024/11/11/americas/haiti-spirit-
   airlines-jetblue-intl-latam/index.html ....................................................1

Fredlyn Pierre Louis, *Haitian immigrants grapple with uncertainty as TPS end date looms*,
   NBC News (March 8, 2025), https://www.nbcnews.com/news/nbcblk/haitian-
   immigrants-grapple-uncertainty-tps-end-date-looms-rcna193868 ..........................1

U.S. Dep't of State, Travel Advisory: Haiti, (Sept. 18, 2024),
   https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/
   haiti-travel-advisory.html ..............................................................2, 6

U.S. Dep't of State, U.S. Relations with Haiti (Jan. 20, 2025),
   https://www.state.gov/u-s-relations-with-haiti/ ...........................................6

U.S. Embassy in Haiti, Information for Travelers,
   https://ht.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/information
   -for-travelers/#:~:text=Political%20violence%20and%20violent%20crimes,%2Dau%2
   DPrince%20international%20airport ........................................................2

## INTRODUCTION

The individual Plaintiffs are Haitians lawfully living and working in the United States. They are entitled to live and work here because Haiti has been designated for Temporary Protected Status under 8 U.S.C. § 1254a. They may stay and work as long as that designation is in effect.

This motion presents a narrow question of statutory interpretation: Does the Secretary of Homeland Security have authority to prematurely terminate a country's designation for Temporary Protected Status? The answer is no—the statute expressly prohibits premature termination.

Although narrow, the question has life-and-death consequences.

Haiti is a nation in chaos. Violent gangs control "85% of Port-au-Prince," Haiti's capital city.[1] In 2024 alone, "[m]ore than 5,600 people were killed and 1,400 were kidnapped amid gang conflicts."[2] In November 2024, the Federal Aviation Administration grounded all flights from the United States to Haiti "after three jets from US-based airlines were struck by bullets while flying over" Port-au-Prince.[3] "The violence has rendered 1 million people homeless … forcing many into makeshift shelters and exacerbating the country's economic challenges."[4] Even ignoring this pervasive violence, Haiti is a country in dire straits. Its infrastructure devastated by a series of earthquakes and tropical storms, it suffers from a persistent lack of food, housing, and medical care. Recognizing this, the U.S. State Department advises American citizens to "not travel to Haiti due to kidnapping, crime, civil unrest, and limited health care," noting that "[p]olitical violence

---

[1]  *Haiti swears in new leader among din of gang violence*, VOICE OF AMERICA (March 7, 2025), https://www.voanews.com/a/haiti-swears-in-new-leader-amid-din-of-gang-violence/8003126.html.

[2]  Fredlyn Pierre Louis, *Haitian immigrants grapple with uncertainty as TPS end date looms*, NBC NEWS (March 8, 2025), https://www.nbcnews.com/news/nbcblk/haitian-immigrants-grapple-uncertainty-tps-end-date-looms-rcna193868.

[3]  Caitlin Stephen Hu *et al.*, *FAA grounds all US flights to Haiti after three planes were struck by gunfire*, CNN (Nov. 12, 2024), https://www.cnn.com/2024/11/11/americas/haiti-spirit-airlines-jetblue-intl-latam/index.html.

[4]  Pierre Louis, *supra* n.2.

and violent crimes are common in Haiti, including murders, kidnappings, robberies, assaults, vehicle break-ins, and home invasions."[5]

Due in large part to this mayhem, Haitians present in the United States have enjoyed Temporary Protected Status ("TPS") since 2010, when a massive earthquake tipped the already struggling country into a full-blown crisis. TPS is an immigration status conferred on foreign nationals who—because of war, natural disaster, or other extraordinary conditions—cannot safely return to their home country. Foreign nationals present in the United States at the time of designation are entitled to TPS if the Secretary of Homeland Security designates their country of origin under the statute.

TPS allows recipients to remain in the United States so long as their country's designation remains in effect. When a country is designated for TPS, it is designated for a fixed period—a period that may be extended an unlimited number of times. The TPS statute establishes a specific procedure by which the Secretary may prospectively terminate a country's TPS designation, but under no circumstances may the Secretary terminate a designation or an extended designation before it was originally set to expire.

Given the country's ongoing crisis, the Secretary has extended Haiti's TPS designation repeatedly since 2010. The most recent extension—issued on July 1, 2024—was set to expire no sooner than February 3, 2026. But on February 24, 2025, the new Secretary of Homeland Security, Kristi Noem, prematurely terminated Haiti's TPS designation effective August 3, 2025.

The Secretary's premature termination of Haiti's TPS designation jeopardizes the lives of

---

[5] Travel Advisory: Haiti, U.S. Dep't of State (Sept. 18, 2024), https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/haiti-travel-advisory.html; U.S. Embassy in Haiti, Information for Travelers, https://ht.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/information-for-travelers/#:~:text=Political%20violence%20and%20violent%20crimes,%2Dau%2DPrince%20international%20airport.

Plaintiffs and hundreds of thousands of others by forcing them to return to the bedlam in Haiti.

Although its implications are dire, the legal question raised by this motion is narrow: Does the Secretary have statutory authority to rescind a country's TPS designation before that designation is set to expire? The plain text of the statute answers this narrow question: The Secretary lacks authority to prematurely terminate a country's TPS designation because, even if the statutory termination process is followed, 8 U.S.C. § 1254a(b)(3)(B) prohibits termination of a TPS designation before "expiration of the most recent previous extension."

Secretary Noem did exactly what the statute prohibits; she terminated Haiti's TPS designation before its previously fixed expiration date. Her action is "in excess of statutory … authority" and thus prohibited by the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 706(2)(A), (C). This Court must therefore "set [it] aside" as "unlawful." *Id.* § 706(2) ("[t]he reviewing court ***shall*** hold unlawful and set aside agency action" that is "in excess of statutory … authority") (emphasis added).

## STATEMENT OF UNDISPUTED FACTS

### A.    The TPS statute imposes temporal limits and procedural requirements on the termination of a country's TPS designation.

TPS permits immigrants from designated countries to remain in the United States if certain statutory conditions are met. The Secretary of Homeland Security may designate a country for TPS if the Secretary finds that (1) there has been an "earthquake, flood, drought, epidemic, or other environmental disaster"; (2) the county is "unable, temporarily, to handle adequately the return" of nationals to the country; (3) the country requests TPS designation; or (4) "there exist extraordinary and temporary conditions in the" country that prevent its nationals from returning safely, "unless [the Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. §§ 1254a(b)(1)(B)(i)–(iii),

1254a(b)(1)(C). Although the decision to designate a country for TPS rests with the Secretary, the decision may not be made arbitrarily or capriciously: the decision must be made in "consultation with the appropriate agencies of the Government" and based on the statutorily specified criteria. *Id.* § 1254a(b)(1). When the Secretary designates a country for TPS, the designation is for a fixed period between 6 and 18 months. *Id.* § 1254a(b)(2).

Once a country is designated for TPS, that country's nationals who are physically present in the United States may register with the Department of Homeland Security as TPS beneficiaries. 8 U.S.C. § 1254a(c)(1)(A)–(B); 8 C.F.R. § 244.2. TPS beneficiaries may not be deported and are authorized to work in the United States so long as their home country's designation remains in place. 8 U.S.C. § 1254a(a)(1)(A).

At least sixty days before the end of the period of the TPS designation, the Secretary, "after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state … and shall determine whether the conditions for such designation … continue to be met." 8 U.S.C. § 1254a(b)(3)(A). After conducting this prereview, the Secretary may terminate or extend the country's designation. *Id.* § 1254a(b)(3)(B)–(C). The TPS designation may be extended for 6 months, 12, or 18 months. *Id.* § 1254a(b)(3)(C). If the Secretary does not affirmatively terminate a country's designation, the designation is automatically extended for at least 6 months. *Id.* If the Secretary decides to terminate a country's TPS designation, the termination "shall not be effective earlier than 60 days after the date the notice is published ***or, if later, the expiration of the most recent previous extension***." *Id*. § 1254a(b)(3)(B) (emphasis added).

### B.    Haiti has been designated for TPS since 2010.

Haiti was first designated for TPS in January 2010 after it experienced a devastating earthquake. *See* 75 Fed. Reg. 3476 (Jan. 21, 2010). Since then, Haiti's TPS designation has been extended—and the country has been redesignated—multiple times due to both lingering harms

4

from the 2010 earthquake, including widespread damage to infrastructure and public health, as well as pre-existing conditions exacerbated by the earthquake, such as food insecurity and a lack of housing. *See* 76 Fed. Reg. 29000 (May 19, 2011); 77 Fed. Reg. 59943 (Oct. 1, 2012); 79 Fed. Reg. 11808 (Mar. 3, 2014); 80 Fed. Reg. 51582 (Aug. 25, 2015).

In 2018, during his first term, President Trump attempted to unlawfully end Haiti's TPS designation. Characterizing the termination decision as "a pretextual edict," this Court enjoined that attempt, finding ample evidence that it was "arbitrary and capricious," "not in accordance with law," and "motivated by discriminatory animus." *Saget v. Trump*, 375 F. Supp. 3d 280, 345–47, 353, 368–69 (E.D.N.Y. 2019) (Kuntz, J.).

During the Biden Administration, Haiti's TPS designation was extended—and Haiti was redesignated for TPS—multiple times by then-Secretary Mayorkas, who repeatedly concluded that the statutory conditions for Haiti's TPS designation continued to be met. *See* 86 Fed. Reg. 41863 (Aug. 3, 2021); 88 Fed. Reg. 5022 (Jan. 26, 2023); 89 Fed. Reg. 54484 (July 1, 2024). In 2021, Secretary Mayorkas concluded that "Haiti is grappling with," among other things, "a deteriorating political crisis, violence, and a staggering increase in human rights abuses" in addition to "rising food insecurity" and "a severe lack of healthcare services." 86 Fed. Reg. at 41864–67. In 2023, Secretary Mayorkas, reciting at length extensive evidence of Haiti's deteriorating situation, determined once again that "Haiti is experiencing economic, security, political, and health crises simultaneously." 88 Fed. Reg. at 5025. And finally, less than a year ago, in July 2024, Secretary Mayorkas—citing political corruption, human-rights abuse, escalating gang violence, limited health care, food insecurity, and the continuing impact of a destructive 2021 earthquake that was quickly followed by a strong tropical storm—"determined" yet again "that an 18-month TPS extension is warranted because the extraordinary and temporary conditions supporting Haiti's TPS

designation remain." 89 Fed. Reg. at 54487. That extension, the most recent, extended Haiti's TPS designation through "February 3, 2026." *Id.* at 54491.

### C.    Secretary Noem prematurely terminated Haiti's designation.

On February 24, 2025, Secretary Noem issued what she styled a "partial vacatur" of the July 2024 extension that purports to terminate Haiti's TPS designation 6 months early, "on August 3, 2025, instead of February 3, 2026." 90 Fed. Reg. 10511, 10514–15 (Feb. 24, 2025). When doing so, she did not—and, given 8 U.S.C. § 1254a(b)(3)(B), could not—rely on her statutory authority to prematurely terminate Haiti's TPS designation. Rather, she claimed to have exercised what she characterized as her "inherent authority … to reconsider any TPS-related determination, and upon reconsideration, to vacate or amend the determination." 90 Fed. Reg. at 10514.

### D.    The premature termination of Haiti's TPS designation harms Plaintiffs.

The premature termination of Haiti's TPS designation harms Plaintiffs in various ways. Most obviously, it exposes them to deportation to Haiti, where they would encounter political instability, rampant violence, human-rights abuse, inadequate medical care, insufficient housing, and food insecurity. *See* 86 Fed. Reg. at 41864–67; 88 Fed. Reg. at 5025; 89 Fed. Reg. at 54487; *see also* Decl. of Marie Wildrigue Erinac Miot ¶¶ 16–29 (Ex. 1); Decl. of Youdelaine Dorcin ¶¶ 15–24 (Ex. 2). Indeed, recognizing the "humanitarian, security, and political crises" that continue to grip Haiti, the State Department warns that people should "not travel to Haiti due to kidnapping, crime, civil unrest, and limited health care."[6]

The premature termination of Haiti's TPS designation, 6 months before it was scheduled to expire, places immediate and extraordinary burdens on Plaintiffs beyond the risk of imminent deportation. Suddenly, Plaintiffs have only half the time they previously had to prepare for possible

---

[6]    U.S. Dep't of State, U.S. Relations with Haiti, https://www.state.gov/u-s-relations-with-haiti/ (Jan. 20, 2025); Haiti Travel Advisory (Sept. 18, 2024), https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/haiti-travel-advisory.html.

repatriation. In that short amount of time, they must make arrangements to return to Haiti; locate housing in which they can live upon their return; seek jobs with which they can support themselves after returning; arrange medical care to treat existing conditions and those they are likely to contract in Haiti; and secure reliable sources of food. *See, e.g.*, Miot Decl. ¶¶ 18–23, 28–29; Dorcin Decl. ¶¶ 19–22.

Perhaps worst of all, Plaintiffs must now decide in a matter of months where their children, many of whom are U.S. citizens, will live. They must make "an impossible choice" between taking their children to Haiti, an impoverished country where their children "would immediately become targets for kidnapping and murder," or leaving them in the United States, where they "would not be able to fend for themselves." Miot Decl. ¶ 27. Not surprisingly, all of this has caused Plaintiffs to experience tremendous stress and mental anguish. Miot Decl. ¶ 23; Dorcin Decl. ¶ 16.

The premature termination of Haiti's TPS designation means that within a few months the individual Plaintiffs will be subject to arrest and incarceration pending removal from the U.S. Moreover, even if not deported immediately upon expiration of Haiti's TPS designation, Haitian TPS holders will automatically lose their work authorization as of the date of termination—now set for August 3, 2025. *See* 8 U.S.C. § 1254a(a)(2). Since TPS holders are not eligible for federal assistance, loss of their work authorization would be catastrophic, leaving them with no way to support themselves or their families. Miot Decl. ¶¶ 5, 7, 8, 16–17; Dorcin Decl. ¶¶ 14, 18.

## LEGAL STANDARD

"A party may move for summary judgment" on all claims or a specific "part of [a] claim." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "Where," as here, "a party seeks review of agency action under the APA and 'the entire case on review is a question of law,' summary judgment is appropriate." *Kapoor v. U.S. Citizenship*

& *Immigr. Servs.*, 2025 WL 253301, at *4 (E.D.N.Y. 2025) (quoting *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012)).

## ARGUMENT

Plaintiffs are entitled to judgment as a matter of law: the TPS statute expressly prohibits Secretary Noem from prematurely terminating Haiti's TPS designation.

### I.    There is no dispute as to material facts.

Plaintiffs' motion for partial summary judgment presents a pure question of law that implicates no factual disputes. The motion rests on 8 U.S.C. § 1254a(b)(3), 90 Fed. Reg. 10511, and 89 Fed. Reg. 54484, the content of which are not (and cannot) be disputed.[7]

### II.    Secretary Noem's premature termination of Haiti's TPS designation is *ultra vires*.

The Secretary does not have statutory authority to prematurely terminate a country's TPS designation. Indeed, Secretary Noem does not contend otherwise. Instead, she claims to have inherent authority to do so. But she does not. The statute explicitly prohibits premature termination of a TPS designation. Accordingly, Secretary Noem's "partial vacatur," which prematurely terminates Haiti's TPS designation, is *ultra vires*. It must therefore be held "unlawful and set aside" as such under the APA. 5 U.S.C. § 706(2).

### A.    Secretary Noem lacks statutory authority to prematurely terminate a TPS designation.

It is plain that 8 U.S.C. § 1254a does not authorize the Secretary to prematurely terminate a TPS designation. To the contrary, it expressly prohibits termination of a country's TPS

---

[7] Nor can there be any reasonable dispute over the individual Plaintiffs' standing to sue. To have standing, a plaintiff "must have suffered an 'injury in fact'" that is "causal[ly] connect[ed]" to "the conduct complained of" and would be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, the individual Plaintiffs, who are Haitian TPS holders, are suffering immediate and imminent injury as a result of the Secretary's unlawful premature termination of Haiti's TPS designation (*see supra* at 6–7), and those injuries would be redressed if her action were set aside.

designation "earlier than 60 days after the date the notice is published ***or, if later, the expiration of the most recent previous extension***." *Id*. § 1254a(b)(3)(B) (emphasis added). Implicitly recognizing this, Secretary Noem does not claim to have exercised statutory authority when she prematurely terminated Haiti's TPS status effective August 3, 2025. *Cf.* 90 Fed. Reg. 10511.[8]

### B.    Secretary Noem lacks inherent authority to prematurely terminate a TPS designation.

Rather than rely on statutory authority, Secretary Noem claims to have "inherent authority to reconsider" the July 1, 2024, extension of Haiti's TPS designation. 90 Fed. Reg. at 10514 & n.32 (quoting *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002)). She does not.

Contrary to the Secretary's assertions, "[t]here is no general principle that what [an agency] can do, [it] can undo." *Gorbach v. Reno*, 219 F.3d 1087, 1095 (9th Cir. 2000) (en banc) (Attorney General lacked inherent authority to denaturalize people granted citizenship in error). Indeed, cases that she cites in the termination notice (*cf.* 90 Fed. Reg. at 10514 n.32) defeat her claim of inherent authority to prematurely terminate a TPS designation. As those cases recognize, an agency might have inherent authority to revisit its prior decisions under certain circumstances but only "in the absence of a specific statutory limitation." *Macktal*, 286 F.3d at 825–26; *accord Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (Kavanaugh, J.) ("any inherent reconsideration authority does not apply in cases where Congress has spoken") (citing *Am. Methyl Corp. v. EPA*, 749 F.2d 826 (D.C. Cir. 1984)). As the Second Circuit has held, there may be instances in which agencies can simply vacate a prior decision, "***but not*** where there is 'contrary legislative intent or other affirmative evidence.'" *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n.9 (2d

---

[8]    As discussed below (*see infra* at 10), 8 U.S.C. § 1254a(b)(3) establishes a procedure for terminating a country's TPS designation. Secretary Noem does not claim to have followed that procedure. But even if she had followed that procedure, it would not change the fact that a TPS designation may not be terminated before "expiration of the most recent previous extension." *Id*. § 1254a(b)(3)(B).

Cir. 2002) (quoting *Bookman v. United States*, 453 F.2d 1263, 1265 (Ct. Cl. 1972)); *accord Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 443 (E.D.N.Y. 2011).

Here, "Congress has spoken." *Ivy Sports*, 767 F.3d at 86. It imposed specific statutory limitations—on both how and when—a Secretary may terminate a TPS designation. Procedurally, Congress has established a specific process for terminating a country's TPS designation:

> At least 60 days before end of the initial period of designation, and any extended period of designation, of a foreign state … under this section the [Secretary of Homeland Security], after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state … for which a designation is in effect under this subsection and shall determine whether the conditions for such designation under this subsection continue to be met.

8 U.S.C. § 1254a(b)(3)(A).[9] Thus, by statute, the Secretary must (1) consult with other agencies and (2) make factual determinations with respect to conditions in the country before she may terminate a country's TPS designation. Temporally, Congress has explicitly limited when the Secretary may terminate a country's TPS designation: a termination "shall not be effective earlier than 60 days after the date the notice [of termination] is published or, if later, the expiration of the most recent previous extension." *Id.* § 1254a(b)(3)(B).

These "specific statutory limitation[s]" foreclose the Secretary's assertion of inherent authority to prematurely terminate Haiti's TPS designation. *Macktal*, 286 F.3d at 825–26. As the Ninth Circuit recently explained:

> An agency's assertion of an implied general revocation authority may . . . be sharply limited, or even foreclosed, when the statutory structure negates that assertion of implied authority. That may be the case, for example, when there is a specific statutory ***process*** for altering an agency's grant of a certificate, waiver, or other authorization. Where Congress has provided a particular mechanism, with specified procedures, for an agency to make such alterations, "it is not reasonable to infer" an implied authority that would allow an agency to circumvent those statutory procedural protections.

---

[9] Originally, Congress charged the Attorney General with administering the TPS statute. In 2002, it transferred the responsibility to the Secretary of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, 2142–45, 2177–2212 (Nov. 25, 2002); Homeland Security Act of 2002 Amendments Act, Pub. L. 108-7, 117 Stat. 11, 526–32 (Feb. 20, 2003).

*China Unicom (Ams) Operations Ltd. v. FCC*, 124 F.4th 1128, 1149 (9th Cir. 2024) (citations omitted). When statutes provide "specific instructions," those instructions "are to be followed scrupulously" and "should not be modified by resort to such generalities as 'administrative flexibility' and 'implied powers.'" *Civil Aeronautics Bd. v. Delta Air Lines Inc.*, 367 U.S. 316, 325 (1961); *see also Nat. Res. Def. Council v. Regan*, 67 F.4th 397 (D.C. Cir. 2023) (agency lacks implicit authority to rescind its decision to regulate a substance where, by statute, that conclusion triggered a specific periodic review process); *Am. Methyl Corp.*, 749 F.2d at 835 (agency lacks implicit authority to revoke waiver permitting sale of fuel additive where statute established mechanism for prohibiting sale of dangerous additives, including those "mistakenly waived into commerce"). This constraint on agency authority is particularly strong when, as here, the statute authorizes the agency to issue a license or benefit for a "fixed term" because it "reflects a clear temporal expectation that, absent contrary indication in the statutory text, such a license will *endure* for the length of that term." *China Unicom*, 124 F.4th at 1148. Indeed, Congress's "use of a fixed term is … affirmatively inconsistent with … an implied power to revoke a license at any time." *Id.*

## III.    The Secretary's unlawful termination of Haiti's TPS designation is reviewable under the Administrative Procedure Act.

The APA gives this Court the power—and duty—to review the legality of the Secretary's premature termination of Haiti's TPS designation. Neither of the Secretary's anticipated responses alter that conclusion.

The APA authorizes courts to review agency action. Declaring that a reviewing court "***shall*** … hold unlawful and set aside agency action" that it is "in excess of statutory … authority," "without observance of procedure required by law," or "otherwise not in accordance with law" (5 U.S.C. § 706(2) (emphasis added)), the APA "***requires***" a reviewing court to set aside unlawful agency action. *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (emphasis added).

11

Because the Secretary's premature termination of Haiti's TPS designation is *ultra vires*, it must be set it aside.[10]

Based on its recent filings in other cases challenging the unlawful termination of TPS designations, Plaintiffs anticipate that the government will oppose set-aside under the APA on two grounds, neither of which has merit.

### A.    Section 1252(f)(1) does not limit this Court's authority to set aside the unlawful termination.

First, Plaintiffs expect the government to argue that "8 U.S.C. § 1252(f)(1) … bars such relief." Defs' Resp. in Opp. to Plfs' Mot. to Postpone Effective Date of Agency Action at 7, *Nat'l TPS Alliance v. Noem*, Dkt. 60, No. 3:25-cv-01766 (N.D. Cal. Mar. 3, 2025). On the government's theory, this Court lacks authority to set aside the unlawful premature termination of Haiti's TPS designation under the APA because, supposedly, "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. § 1254a. *Id.* at 7–8.

But § 1252(f)(1) does not deprive this Court of authority to set aside the unlawful premature termination of Haiti's TPS designation under the APA.

In contending otherwise, the government has pointed to *Garland v. Aleman Gonzalez*, 596

---

[10]   The prerequisites for review under the APA are undeniably met here. An action for judicial review may be filed by any person "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. There is no question that the individual Plaintiffs, Haitian TPS holders, are adversely affected by the premature termination of Haiti's TPS designation. *See supra at* 6–7. Review under the APA is available for "final agency action for which," as here, "there is no other adequate remedy in a court." *Id.* § 704. "For an agency action to be 'final' under the APA, two requirements must be met." *State v. Trump*, 2025 WL 573771, at *18 (S.D.N.Y. 2025).

> First, the action must mark the consummation of the agency's decisionmaking process ... And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Those requirements are met here: The Secretary's premature termination of Haiti's TPS designation is the culmination of her "reconsideration" of former-Secretary Mayorkas's July 1, 2024 extension of that designation (90 Fed. Reg. at 10513), and legal consequences—indeed, dire legal consequences—will flow from it.

U.S. 543 (2022). *Cf.* Defs' Resp. in Opp. to Plfs' Mot. to Postpone Effective Date of Agency Action at 8, *Nat'l TPS Alliance*. But, as Justice Sotomayor emphasized at the time, the *Aleman Gonzalez* Court did "not purport to hold that § 1252(f)(1) affects courts' ability to 'hold unlawful and set aside agency action, findings, and conclusions' under the Administrative Procedure Act." *Aleman Gonzalez*, 596 U.S. at 571 (Sotomayor, J., concurring in part and dissenting in part) (quoting 5 U.S.C. § 706(2)). Subsequently, Justices Barrett, Thomas, Alito, and Gorsuch likewise recognized that *Aleman Gonzalez* "avoids a position on whether § 1252(f)(1) prevents a lower court from vacating or setting aside an agency action under the Administrative Procedure Act." *Biden v. Texas*, 597 U.S. 785, 839 (2022).

Since *Aleman Gonzalez*, courts have consistently held that Section 1252(f)(1) does not strip a district court of authority to grant relief under the APA. As the Fifth Circuit has held, "§ 1252(f)(1) does not apply to vacatur"—*i.e.*, set-aside—under 5 U.S.C. § 706(2). *Texas v. United States*, 50 F.4th 498, 528 (5th Cir. 2022); *accord, e.g.*, *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 987 (C.D. Cal. 2024) (§ 1252(f)(1) inapplicable because vacating ICE policy neither "compels nor restrains further agency decision-making") (cleaned up); *Florida v. United States*, 660 F. Supp. 3d 1239, 1284–85 (N.D. Fla. 2023) ("§ 1252(f)(1) does not strip [the Court] of the authority to vacate either of the challenged policies under the APA"). Indeed, "[t]he Supreme Court has cautioned that, '[b]y its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief.'" *Texas*, 50 F.4th at 528 (quoting *Biden*, 597 U.S. at 801, in turn quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999)). Limited to injunctions, § 1252(f)(1) says nothing about vacatur under the APA.

There are "meaningful differences" between injunctions and vacatur under the APA. *Texas*, 50 F.4th at 528–29. In fact, vacatur is "a less drastic remedy" because, "[a]part from the

constitutional or statutory basis on which the court invalidated an agency action, vacatur neither compels nor restrains further agency decision-making." *Id.* (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022), *rev'd on other grounds*, 599 U.S. 670 (2023)). Moreover, once a court has fulfilled its "obligation to 'set aside' [an] unlawful regulation," injunctive relief is ordinarily unnecessary. *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1222 (D.C. Cir. 2012), *overruled on other grounds by Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014). In fact, it is "anomalous." *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012).

In sum, § 1252(f)(1) does not preclude a set-aside under 5 U.S.C. § 706(2).

**B.      Section 1254a(b)(5)(A) does not limit this Court's authority to set aside the unlawful termination.**

Nor is a set-aside foreclosed by 8 U.S.C. § 1254a(b)(5)(A). The government has argued that even an unlawful termination of a country's TPS designation is immune from challenge because § 1254a(b)(5)(A) allows "no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. Defs' Resp. in Opp. to Plfs' Mot. to Postpone Effective Date of Agency Action at 11, *Nat'l TPS Alliance*. But § 1254a(b)(5)(A) does not bar review of Secretary Noem's premature termination of Haiti's TPS designation.

The provision is narrowly circumscribed. It only bars review of a "determination" made by the Secretary. The term "determination" has a specific meaning under § 1254a: it refers to a substantive finding by the Secretary as to whether—given circumstances in the foreign country and the United States's national interest—"the conditions for [TPS] designation" are met or "continue to be met." 8 U.S.C. § 1254a(b)(3)(A); *see also id.* § 1254a(b)(1)(B)–(C).

Here, the Secretary has made no such determination. She does not claim to have "review[ed] the conditions in" Haiti or evaluated the "national interest of the United States," let

14

alone "determined whether the conditions for [Haiti's] designation … continue to be met." 8 U.S.C. §§ 1254a(b)(1), (b)(3)(A). Rather than make any substantive determinations with respect to the conditions in Haiti or the national interest of the United States, Secretary Noem simply criticized her predecessor's most recent extension and redesignation decision. According to Secretary Noem, "partial vacatur" of the July 1, 2024, extension and redesignation—which extended Haiti's TPS designation to February 3, 2026—was warranted because, in her view, it (1) contained "no discussion … of why the 18-month period was selected"; (2) lacked "justification of why permitting the ever-increasing population of Haitian TPS recipients … to remain temporarily in the United States is not contrary to the U.S. national interest"; and (3) cited country conditions reports that "date back to early 2023" or earlier. 90 Fed. Reg. at 10513–14. Despite her criticisms of the July 1, 2024, extension and redesignation, Secretary Noem did not determine that it was now possible for Haitian TPS holders to return to Haiti "in safety"; nor did she determine that the presence of Haitian TPS holders is "contrary to the national interest." 8 U.S.C. §§ 1254a(b)(1). Put simply: the Secretary did not make a "determination" under the TPS statute and § 1254a(b)(5)(A) is therefore no bar to setting her unlawful decision aside under 5 U.S.C. § 706(2).

It would not matter if the Secretary had followed the statutory process for termination and made the requisite determinations after consulting with other agencies. Determinations or not, she simply cannot prematurely terminate a TPS designation. 8 U.S.C. § 1254a(b)(3)(B). That is dispositive: the Secretary's premature termination of Haiti's TPS designation is "in excess of statutory authority" and must therefore be "set aside." 5 U.S.C. § 706(2)(C).

Regardless, the Secretary did not follow—and does not claim to have followed—the mandated termination procedure in this case. *Cf.* 90 Fed. Reg. 10511. She made no determination as to "whether the conditions for [Haiti's TPS] designation … continue to be met," and did not

consult with the "appropriate agencies of the Government" before prematurely terminating the designation. 8 U.S.C. § 1254a(b)(3)(A). Thus, even if the Secretary were permitted to terminate a TPS designation before its previously set expiration date, her premature termination of Haiti's TPS designation was "without observance of procedure required by law" and would have to be set aside on that basis. 5 U.S.C. § 706(2)(D). This Court has previously held that although § 1254a(b)(5)(A) might bar judicial review of the Secretary's substantive determinations with respect to country conditions and the national interest (*cf.* 8 U.S.C. §§ 1254a(b)(1), (b)(3)(A)), it does not prevent the Court from setting aside agency action that is "procedurally deficient." *Saget*, 375 F. Supp. 3d at 332; *accord CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 321 (D. Md. 2018); *Centro Presente v. U.S. Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 409 (D. Mass. 2018); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1101–08 (N.D. Cal. 2018), *vacated sub nom. by Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *vacated*, 59 F.4th 1010 (9th Cir. 2023) (granting en banc rehearing), *appeal dismissed* 2023 WL 4363667 (9th Cir. 2023).

In short, 8 U.S.C. § 1254a(b)(5)(A) neither strips this Court of jurisdiction to review the Secretary's action nor relieves it of its obligation to "hold unlawful and set aside" that action as "in excess of statutory authority." 5 U.S.C. § 706(2).

## CONCLUSION

Summary judgment should be entered in favor of Plaintiffs on their claim that Secretary Noem's premature termination of Haiti's TPS designation is unlawful, and the February 24, 2025, "partial vacatur" should be set aside.

March 24, 2025                                    Respectfully submitted,

                                                  /s/ Andrew Tauber
                                                  Andrew Tauber

Ira J. Kurzban                                    Andrew E. Tauber
Kevin Gregg*                                      Sarah Levine Hartley*

16

KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060
ira@kktplaw.com
kgregg@kktplaw.com

Sejal Zota
Daniel Werner*
Dinesh McCoy*
JUST FUTURES LAW
1629 K Street NW, Suite 300
Washington, DC 20006
(617) 812-2822
sejal@justfutureslaw.org
dinesh@justfutureslaw.org
daniel@justfutureslaw.org

Raymond Audain
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Floor
New York, NY 10004
(212) 847-8315
raudain@gslawny.com

BRYAN CAVE LEIGHTON PAISNER, LLP
1155 F Street NW, Ste. 700
Washington, DC 20004
(202) 508-6200
andrew.tauber@bclplaw.com
sarah.hartley@bclplaw.com

Geoffrey M. Pipoly*
Alexa Thein*
Madisen Hursey*
BRYAN CAVE LEIGHTON PAISNER, LLP
161 N. Clark Street, Ste. 4300
Chicago, IL 60601
(312) 602-5000
geoff.pipoly@bclplaw.com
alexa.thein@bclplaw.com
madisen.hursey@bclplaw.com

*PHV application forthcoming

*Attorneys for Plaintiffs*