UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HAITIAN EVANGELICAL CLERGY
ASS'N, *et al.*,

                        Plaintiffs,

        v.

DONALD J. TRUMP, President of the             Civil Action No.
United States of America, *et al.*,              1:25-cv-1464 (BMC)


                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DEFENDANTS' CROSS-MOTION TO DISMISS**

YAAKOV M. ROTH                    LAUREN BRYANT
Acting Assistant Attorney General     CATHERINE ROSS
                               LUZ MARIA RESTREPO
SARAH L. VUONG                   ERIC SNYDERMAN
Assistant Director                    ANNA L. DICHTER
                               JEFFREY HARTMAN
WILLIAM H. WEILAND             AMANDA SAYLOR
Senior Litigation Counsel          Trial Attorneys
                               U.S. Department of Justice, Civil Division
                               Office of Immigration Litigation
                               P.O. Box 868 Ben Franklin Station
                               Washington, D.C. 20044

                               *Attorneys for Defendants*

April 15, 2025

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS......................................................................................3

I.    Statutory Background ...............................................................................3

II.   Factual Background...................................................................................4

STANDARDS OF REVIEW ..................................................................................6

I.    Motion to Dismiss ....................................................................................6

II.   Motion for Summary Judgment ...............................................................7

ARGUMENT........................................................................................................7

I.    This Court Lacks Jurisdiction over Plaintiffs' Entire Action....................7

      A.   Plaintiffs Lack Standing, and Their Claims Are Not Yet Ripe for Review....................7

      B.   The TPS Statute Bars Plaintiffs' Claims ....................................8

      C.   8 U.S.C. § 1252(f)(1) Bars the Relief Plaintiffs Seek....................10

II.   Plaintiffs' APA Claims Fail Because the Secretary's 2025 Partial Vacatur was not Arbitrary, Capricious, an Abuse of Discretion, Contrary to Law, or in Excess of Statutory Limitations...............................................................................................12

    A.   The Secretary Has Inherent Authority to Revisit and Reconsider a Prior TPS Extension....................................................................................12

    B.   The Partial Vacatur is Not Arbitrary and Capricious....................16

III.  Plaintiffs' Constitutional Claims Fail as a Matter of Law .................18

    A.   Plaintiffs' Due Process Claim Fails Because it is Based on a Purely Hypothetical Termination of Haiti's TPS Designation....................18

    B.   The Secretary's Decision to Partially Vacate the 2024 Extension and Push Back the Deadline to Review the TPS Designation Did Not Violate the Equal Protection Clause ............................................................19

CONCLUSION....................................................................................................21

**TABLE OF AUTHORITIES**

**CASES**

**Page(s)**

*Albertson v. FCC,*
   182 F.2d 397 (D.C. Cir. 1950) ............................................................................13

*Ali v. Fed. Bureau of Prisons,*
   552 U.S. 214 (2008) ..........................................................................................9

*Ali v. Pompeo,*
   2018 WL 2058152 (E.D.N.Y. May 2, 2018) .........................................................7

*Arizona v. United States,*
   567 U.S. 387 (2012) ..........................................................................................17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................19, 21

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
   968 F. 2d 196 (2d Cir. 1992) .............................................................................6

*Bates v. Donley,*
   935 F. Supp. 2d 14 (D.D.C. 2013) .....................................................................6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................6, 19, 21

*Biden v. Texas,*
   597 U.S. 785 (2022) ..........................................................................................11

*Cal. Tow Truck Ass'n v. City & County of San Francisco,*
   807 F.3d 1008 (9th Cir. 2015) ...........................................................................9

*California v. Grace Brethren Church,*
   457 U.S. 393 (1982) ..........................................................................................11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,*
   433 F.3d 181 (2d Cir. 2005) ..............................................................................8

*Chao v. Russell P. Le Frois Builder, Inc.,*
   291 F.3d 219 (2d Cir. 2002) ............................................................................13

*China Unicom (Americas) Ops. Ltd. v. FCC,*
   124 F.4th 1128 (9th Cir. 2024) .........................................................................15

ii

*Dan's City Used Cars, Inc. v. Pelkey*,
   569 U.S. 251 (2013) ........................................................................9

*DHS v. Regents of Univ. of Cal.*,
   591 U.S. 1 (2020) ..........................................................................21

*DHX, Inc. v. Allianz AGF MAT, Ltd*,
   425 F.3d 1169 (9th Cir. 2005) .......................................................10

*Doyle v. Midland Credit Mgmt., Inc.*,
   722 F.3d 78 (2d Cir. 2013) ..............................................................6

*Fiallo v. Bell*,
   430 U.S.787 (1977) ..................................................................19, 20

*Galvan v. Press*,
   347 U.S. 522 (1954) .......................................................................20

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) .......................................................................11

*Gun South, Inc. v. Brady*,
   877 F.2d 858 (11th Cir. 1989) .......................................................14

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) .......................................................................14

*Holcomb v. Iona Coll.*,
   521 F.3d 130 (2d Cir. 2008) ............................................................7

*Huffington v. T.C. Group, LLC*,
   637 F.3d 18 (1st Cir. 2011) ..............................................................9

*Ivy Sports Medicine v. Burwell*,
   767 F.3d 81 (D.C. Cir. 2014) .........................................................15

*Jafarzadeh v. Duke*,
   270 F. Supp. 3d 296 (D.D.C. 2017) ...............................................12

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) .......................................................................20

*Kwong v. Bloomberg*,
   723 F.3d 160 (2d Cir. 2013) ............................................................7

*Last Best Beef, LLC v. Dudas*,
 506 F.3d 333 (4th Cir. 2007) ...................................................................14

*Lia v. Saporito*,
 909 F. Supp. 2d 149 (E.D.N.Y. 2012) ........................................................7

*Macktal v. Chao*,
 286 F.3d 822 (5th Cir. 2002) ...................................................................14

*Marshall Cnty. Health Care Auth. v. Shalala*,
 988 F.2d 1221 (D.C. Cir. 1993) .................................................................6

*Mathews v. Diaz*,
 426 U.S. 67 (1976) ...................................................................................20

*Patel v. Garland*,
 596 U.S. 328 (2022) ...................................................................................9

*Poursina v. USCIS*,
 936 F.3d 868 (9th Cir. 2019) ...................................................................13

*Ramos v. Wolf*,
 975 F.3d 872 (9th Cir. 2020) ......................................................10, 13, 21

*Ramos v. Wolf*
 59 F.4th 1010 (9th Cir. 2023) .................................................................. 10

*Ru Jun Zhang v. Lynch*,
 2018 WL 1157756 .....................................................................................18

*Rynasko v. New York Univ.*,
 63 F.4th 186 (2d Cir. 2023) ........................................................................7

*Saget v. Trump*,
 375 F. Supp. 3d 280 (E.D.N.Y. Apr. 11, 2019) ...............................10, 12

*Saleh v. Blinken*,
 596 F. Supp. 405 (E.D.N.Y. 2022) .............................................................7

*Sanchez v. Mayorkas*,
 593 U.S. 409 (2021) ...................................................................................4

*Selevan v. N.Y. Thruway Auth.*,
 584 F.3d 82 (2d Cir. 2009) .........................................................................7

*Strubel v. Comenity Bank*,
   842 F.3d 181 (2d Cir. 2016) ..........................................................................7

*Texas v. United States*,
   523 U.S. 296 (1998) ...................................................................................7, 8

*Tolbert v. Smith*,
   790 F.3d 427 (2d Cir. 2015) ..........................................................................7

*Trump v. Hawaii*,
   585 U.S. 667.............................................................................. 2, 13, 19, 20, 21

*Trump v. New York*,
   592 U.S. 125 (2020) ........................................................................................8

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
   508 U.S. 439 (1993) ......................................................................................11

*United States R.R. Retirement Bd. v. Fritz*,
   449 U.S. 166 (1980) ......................................................................................21

*United States v. Carroll*,
   105 F.3d 740 (1st Cir. 1997)..........................................................................11

*Youngstown Sheet and Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ......................................................................................15

## <u>STATUTES</u>

### Immigration and Nationality Act of 1952, as amended:

1 U.S.C. § 204(a) ..............................................................................................11

1 U.S.C. § 112.....................................................................................................11

5 U.S.C. 553 .......................................................................................................17

5 U.S.C. § 701(a)(1).............................................................................................2

5 U.S.C. § 706(2)(C) .........................................................................................12

6 U.S.C. § 202(1)-(5) ........................................................................................15

8 U.S.C. § 1103(a)(1).........................................................................................15

8 U.S.C. § 1103(a)(3).........................................................................................15

8 U.S.C. § 1252(f)(1) ................................................. 2, 10, 11

8 U.S.C. § 1254a ........................................10, 11, 13, 15, 17

8 U.S.C. § 1254a(a) ...................................................4

8 U.S.C. § 1254a(b) ...................................................3

8 U.S.C. § 1254a(b)(2) ...............................................4

8 U.S.C. § 1254a(b)(1)(C) ..................................1, *passim*

8 U.S.C. § 1254a(b)(3)(A) ..................................1, *passim*

8 U.S.C. § 1254a(b)(3)(B) ..........................................1, 4

8 U.S.C. § 1254a(b)(3)(C) ............................................4

8 U.S.C. § 1254a(b)(5)(A) ...............................2, 4, 9, 10

**The Immigration Act of 1990:**

Pub. L. No. 101-649, 104 Stat. 4978 ...............................3

**Illegal Immigration Reform and Immigrant Responsibility Act of 1996:**

Pub. L. No. 104-208, 110 Stat. 3009-546 .........................11

## <u>FEDERAL RULES OF APPELLATE PROCEDURE</u>

Fed. R. Civ. P. 12(b)(1) .........................................2, 6, 22

Federal Rule 12(b)(6) .....................................2, 6, 12, 19

Fed. R. Civ. P. 56(a) ...................................................7

## <u>FEDERAL REGISTER</u>

75 Fed. Reg. 3476 (Jan. 21, 2010) ................................4

76 Fed. Reg. 29,000 (May 19, 2011) .............................4

77 Fed. Reg. 59,943 (Oct. 1, 2012) ...............................4

79 Fed. Reg. 11,808 (Mar. 3, 2014) ..............................4

80 Fed. Reg. 51,582 (Aug. 25, 2015) ..............................................................4

82 Fed. Reg. 23,830 (May 24, 2017) ...............................................................4

83 Fed. Reg. 2,648 (Jan. 18, 2018) ..................................................................5

86 Fed. Reg. 41,863 (Aug. 3, 2021) .................................................................5

88 Fed. Reg. 5,022 (Jan. 26, 2023) ..................................................................5

88 Fed. Reg. 40,282 (Jun. 21, 2023) ..............................................................14

89 Fed. Reg. 54,484 (Jul. 1, 2024) ............................................................5, 16

90 Fed. Reg. 10,511 (Feb. 24, 2025) ...................................................5, *passim*

90 Fed. Reg. 12,200 (Mar. 14, 2025) .............................................................17

## **EXECUTIVE ORDER**

Exec. Order No. 14159 (Jan. 20, 2025) ...........................................................18

## **MISCELLANEOUS**

H.R. Rep. No. 101-245 (1989) .........................................................................9

# PRELIMINARY STATEMENT

Secretary of Homeland Security Kristi Noem partially vacated her predecessor's extension of Haiti's Temporary Protected Status ("TPS") designation. TPS is a humanitarian program that affords temporary relief from removal to certain aliens who are in the United States when their country of nationality experiences armed conflict, a natural disaster, or other extraordinary and temporary conditions and who are thus temporarily unable to return home safely. The TPS statutes vest the Secretary with broad discretion over TPS designations. In Secretary Noem's assessment, her predecessor failed to evaluate the key statutory question: whether permitting Haitian nationals to remain temporarily in the United States is "contrary to the national interest." 8 U.S.C. § 1254a(b)(1)(C).

Plaintiffs are nine Haitian TPS beneficiaries, as well as two organizations: Haitian Evangelical American Clergy Association ("HECA"), an association of churches around the Eastern District of New York, and Service Employees International Union, Inc. ("SEIU Local 32BJ"), a chapter of an advocacy organization. Plaintiffs bring Administrative Procedure Act ("APA") and ultra vires claims alleging that Secretary Noem's partial vacatur was an arbitrary and capricious action in excess of her statutory authority under 8 U.S.C. § 1254a(b)(3)(A)-(B). Plaintiffs also claim that the partial vacatur was motivated by discriminatory animus towards Haitians in violation of the Equal Protection and Due Process Clauses of the Constitution. President Donald Trump, Department of Homeland Security ("DHS"), and Secretary Noem (collectively, "Defendants") respectfully submit this memorandum in support of their motion to dismiss and in opposition to Plaintiffs' motion for partial summary judgment.

The Court should dismiss Plaintiffs' Complaint. First, as a threshold matter, this Court lacks jurisdiction over all of Plaintiffs' claims, for two independent reasons. Congress has explicitly

barred judicial review of TPS determinations. *See* 8 U.S.C. § 1254a(b)(5)(A) ("There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief); 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review."). The Secretary's partial vacatur—like the previous Secretary's extension of TPS for Haiti—is not subject to judicial review. Separately, another provision bars any court other than the Supreme Court from granting Plaintiffs the relief they seek—a sweeping order that "restrain[s]" the Secretary from exercising her authority under the TPS statute and enforcing immigration law how she deems appropriate. 8 U.S.C. § 1252(f)(1). Thus, the Court should dismiss the Complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

Even if the Court had jurisdiction, Plaintiffs fail to state a claim on the merits. The partial vacatur, which shortened Haiti's latest extension and redesignation for TPS by six months, was a valid exercise of the Secretary's authority. It was based on her determination that her predecessor's extension and redesignation contained flaws that warranted the abbreviation, particularly in light of evidence regarding improving conditions in Haiti, and it was carefully considered. Nor can Plaintiffs meet the narrow standard for proving discriminatory animus in order to state an Equal Protection Clause claim. *Trump v. Hawaii*, 585 U.S. 667, 703-04 (2018). Indeed, the partial vacatur must be reviewed—to the extent it is reviewable at all—under, at most, a deferential rational basis standard. *Id.* Plaintiffs fail to show that the partial vacatur was not rationally related to a legitimate government interest, and they are unable to even allege that Secretary Noem exhibited any animus.

The Court should dismiss this action with prejudice, pursuant to Federal Rule 12(b)(1) or 12(b)(6), or in the alternative, deny Plaintiffs' motion for partial summary judgment.

## STATEMENT OF FACTS

### I. Statutory Background

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security, "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;
>
> (B) … that—
> (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,
> (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and
> (iii) the foreign state officially has requested designation under this subparagraph; or
>
> (C) … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's

TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations may not exceed eighteen months. *Id.* § 1254a(b)(2). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C).

Finally, the statute makes the Secretary's TPS determinations unreviewable. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

## II. Factual Background

On January 21, 2010, former Secretary Janet Napolitano designated Haiti for TPS for 18 months due to the "conditions in Haiti following the [7.0 magnitude] earthquake" that struck Haiti in January 2010.[1] Various Secretaries extended and redesignated TPS for Haiti through 2018.[2] On

---

[1] *Designation of Haiti for [TPS]*, 75 Fed. Reg. 3476, 3477 (Jan. 21, 2010); Administrative Record ("AR") at 0179-0182. Please note that for ease of the Court's review, citations to the Federal Register Notice are followed by citations to the Administrative Record when the Notice refers to matters that may also be found in the Administrative Record.
[2] *Extension and Redesignation of Haiti for [TPS]*, 76 Fed. Reg. 29,000 (May 19, 2011); *Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 (Oct. 1, 2012); *Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg. 11,808 (Mar. 3, 2014); *Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 (Aug. 25, 2015); *Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 (May 24, 2017); AR at 0214-18, 0246-73.

January 18, 2018, then-Acting Secretary Elaine Duke found that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met" and terminated the designation.[3] On August 3, 2021, former Secretary Alejandro Mayorkas newly designated Haiti on the basis of extraordinary and temporary conditions.[4] Thereafter, he extended and redesignated TPS for Haiti for 18 months, ending on August 3, 2024.[5] On July 1, 2024, former Secretary Mayorkas again extended and redesignated TPS for Haiti for 18 months, ending on February 3, 2026 ("2024 Extension").[6]

On February 24, 2025, Secretary Noem partially vacated the 2024 Extension ("2025 Partial Vacatur").[7] Contrary to Plaintiffs' contention, Secretary Noem did not "prematurely terminat[e]" Haiti's TPS designation. ECF No. 17-1 at 12. Rather, the Secretary shortened the existing designation period from 18 months to 12 months.[8] In rolling back former Secretary Mayorkas's 18-month extension, Secretary Noem explained that the 2024 Extension "failed to evaluate" whether permitting Haitian nationals to remain temporarily is not "contrary to the national interest of the United States." *See* 90 Fed. Reg. at 10,511-12; AR at 0001-02; *see also* 8 U.S.C. § 1254a(b)(1)(C). Secretary Noem also noted that "there is no discussion in the [2024 Extension] of why the 18-month period was selected in lieu of a [six] or [twelve] month period." 90 Fed. Reg. at 10,513; AR at 0003. She further relied on indications from the Department of State and DHS of "significant developments" that "might result in improvement in conditions," including the

---

[3] *Termination of the Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 (Jan. 18, 2018); AR at 0466-0472.
[4] *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 (Aug. 3, 2021); AR at 0183-0191.
[5] *Extension and Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 (Jan. 26, 2023); AR at 0219-29.
[6] *See Extension and Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54,484 (Jul. 1, 2024); AR at 0230-42.
[7] *See Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025); AR at 0001-05.
[8] Notwithstanding Plaintiffs' failure to annex a Statement of Undisputed Material Facts in accordance with Local Rule 56.1, Plaintiffs dubiously draw various legal conclusions in the "Statement of Undisputed Facts" section of their brief. ECF No. 17-1 at 3—7. These legal assertions are more appropriately addressed in the "Argument" section of Defendants' brief.

"deployment of the United Nations Multinational Security Support (MSS) mission" to "support the Haitian National Police in capacity building, combatting gang violence and provid[ing] security for critical infrastructure." 90 Fed. Reg. at 10,513-14; AR at 0003-04. The Secretary considered the putative reliance interests of those impacted by the 2025 Haiti Vacatur but found that they were outweighed by the overriding interests and concerns articulated in the notice. *Id*.

## STANDARDS OF REVIEW

### I. Motion to Dismiss

A court should dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate" the case. *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (citations omitted). In reviewing a Rule 12(b)(1) motion, the Court must accept all material factual allegations in the complaint as true, but it should not draw inferences favorable to the plaintiff. *See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F. 2d 196, 198 (2d Cir. 1992) (citations omitted).

A court should dismiss for failure to state a claim when a complaint fails to plead enough facts to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the APA context, "a court may consider the administrative record and public documents without converting the motion [to dismiss] into a motion for summary judgment." *Bates v. Donley*, 935 F. Supp. 2d 14, 17 (D.D.C. 2013). When a district court reviews agency action under the APA, "the district court sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether the [agency's] study was factually flawed." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993). "When considering a motion made pursuant to Rule 12(b)(6) we may take judicial notice of documents from official government websites ...[.]"

*See Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) (cleaned up); *see also Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012).

## II. Motion for Summary Judgment

Summary judgment is warranted if "there is no genuine dispute of material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). When a party challenges an agency action under the APA, the usual summary judgment standard does not apply. *Saleh v. Blinken*, 596 F. Supp. 405, 413 (E.D.N.Y. 2022) (citations omitted). Instead, in deciding whether an agency action was arbitrary and capricious, the reviewing court "is confined to the administrative record compiled by the agency when it made its decision." *Id*. (citations omitted); *see also Ali v. Pompeo*, 2018 WL 2058152, at *4 (E.D.N.Y. May 2, 2018).

## ARGUMENT

## I. This Court Lacks Jurisdiction over Plaintiffs' Entire Action

### A. <u>Plaintiffs Lack Standing and Their Claims Are Not Yet Ripe for Review</u>

Federal courts can resolve only "'cases' and 'controversies.'" *Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82, 89 (2d Cir. 2009). To enter federal courts, plaintiffs must establish standing, including an injury that is "concrete, particularized and imminent, rather than conjectural or hypothetical." *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016). Their case must also be "ripe"—not dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear

their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

Here, Plaintiffs fail both requirements because their claims depend on contingencies and speculation. Plaintiffs allege an immediate and imminent injury resulting from Secretary Noem's purported "premature termination" of the TPS designation for Haiti. *See* ECF No. 17-1 at 14, n.7. But Secretary Noem's decision was not a "termination" of Haiti's TPS designation—rather, the partial vacatur merely moved up the end date of Haiti's latest extension and redesignation for TPS by six months. *See* 90 Fed. Reg. 10,511; AR at 0005. As the Federal Register Notice explained, the purpose of this partial vacatur is to permit Secretary Noem to conduct a "fresh review of country conditions in Haiti," and, following this review, "make a new determination in due course." *See* 90 Fed. Reg. 10,514; AR. at 0004. That new determination has not yet occurred. Indeed, Plaintiffs' claims rests entirely on the assumption that Haiti's TPS designation *might* be terminated in the future. They have failed to establish that such a determination is "actual or imminent," rather than conjectural. *See Trump v. New York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually implement this general statement of policy is no more than conjecture at this time." (quotation omitted)). Secretary Noem has stated that she intends to review the Haiti TPS designation by June 4, 2025, and will make a determination at that time. 90 Fed. Reg. 10,514; AR at 0004. Because Plaintiffs' claims rest on Secretary Noem's *future* determination regarding Haiti's TPS designation, Plaintiffs presently lack an injury in fact, and their claims are not yet ripe. *Texas*, 523 U.S. at 300.

### B.  The TPS Statute Bars Plaintiffs' Claims

Regardless, Congress has stripped the Court of jurisdiction to hear Plaintiffs' claims. The statute unambiguously provides that "[t]here is no judicial review of any determination of the

[Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. This provision bars all of Plaintiffs' claims in this Court, whether statutory or constitutional, each of which challenges Secretary Noem's partial vacatur. *Id.*; *see also* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.") (emphasis added).

The 2025 Partial Vacatur determination falls into that category because a decision to shorten a TPS extension is undoubtedly a "determination" "with respect to" the "termination or extension of a designation" of Haiti for TPS. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added); *see Merriam-Webster's Dictionary* (2025), Determination ("the act of deciding definitely and firmly"); *The American Heritage Dictionary* (2022), Determination ("The act of making or arriving at a decision[;] The decision reached[;] The settling of a question by an authoritative decision or pronouncement"). Indeed, the Supreme Court held that materially similar jurisdiction stripping language in the INA precludes a whole category of judicial review. *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter). Here, as in *Patel*, the word "any" indicates a broad sweep. *See*, e.g., *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'" (citation omitted)). The phrase "with respect to" is likewise broad in scope, as that phrase "is generally understood to be synonymous with the phrase 'relating to'" or "'related to.'" *Cal. Tow Truck Ass'n v. City & County of San Francisco*, 807 F.3d 1008, 1021 (9th Cir. 2015); accord *Huffington v. T.C. Group, LLC*, 637 F.3d 18, 22 (1st Cir. 2011). And the Supreme Court has underscored that the ordinary meaning of "related to" is "a broad one," meaning "having a connection with or reference to …, whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). Even the

Ninth Circuit has agreed that the TPS statute "generally precludes direct review of the secretary's country-specific TPS determinations." *Ramos v. Wolf*, 975 F.3d 872, 891 (9th Cir. 2020).[9]

Plaintiffs try to avoid this conclusion by arguing that Secretary Noem "made no determination under the TPS statute," ECF No. 1 at ¶ 111; ECF No. 17-1 at 21, and that Section 1254a(b)(5)(A) 'does not contemplate a "vacatur" or 'premature termination.'" ECF No. 1 at ¶ 112; ECF No. 17-1 at 23. But that argument—like Judge Kuntz's decision in *Saget v. Trump*, 375 F. Supp. 3d 280, 331 (E.D.N.Y. 2019), finding jurisdiction—fails to account for Supreme Court decisions emphasizing the expansive use of the phrases "any" and "related to." *See* ECF No. 17-1 at 22. "Determination" is a broad word, and "any" and "with respect to" serve to further broaden the covered decisions. A decision about the length of an extension falls within the statutory bar, no matter whether the challenge rests on statutory or constitutional grounds.

### C. <u>8 U.S.C. § 1252(f)(1) Bars the Relief Plaintiffs Seek</u>

Plaintiffs incorrectly argue that that 8 U.S.C. § 1252(f)(1) does not prohibit this Court from granting the relief they seek, anticipating that asking the Court to set aside the partial vacatur notice is the exact type of remedy that § 1252(f)(1) bars. ECF No. 17-1, at 12. That section provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter … other than with respect to the application of such provisions to an individual alien against whom proceedings … have been initiated.

8 U.S.C. § 1252(f)(1) (emphasis added). Section 1254a is one of the statutory provisions § 1252(f)(1) covers. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a

---

[9] The Ninth Circuit panel's opinion was vacated on rehearing, *Ramos v. Wolf*, 59 F.4th 1010, 1011 (9th Cir. 2023), but the case then became moot. A vacated decision, however, "still carries informational and perhaps even persuasive precedential value." *DHX, Inc. v. Allianz AGF MAT, Ltd*, 425 F.3d 1169, 1176 (9th Cir. 2005).

appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id.* When there is a conflict, the INA prevails. *See U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112...."); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997) ("Conflicts between the text of a statute as it appears in the Statutes at Large, on one hand, and in usually reliable but unofficial sources such as the United States Code Annotated, on the other hand, are rare, but … the rendition of the law contained in the Statutes at Large controls."). INA § 244 lies within chapter 4 of title II of the INA, as amended. Section 1252(f)(1) thus eliminates any court's (other than the Supreme Court's) authority to issue coercive orders enjoining or restraining implementation of 8 U.S.C. § 1254a.

Setting aside or postponing the partial vacatur would "enjoin or restrain" the Secretary and DHS from implementing the Secretary's decision, so the Court lacks jurisdiction to enter such an order. The Supreme Court has held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). And Section 1254(f)(1)'s prohibition applies not just to injunctions but also to any order that otherwise "restrain[s]" the Secretary. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (statute barring court orders that "suspend or restrain" tax collection stripped jurisdiction to enter injunctions or declaratory relief); *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)) ("restrain" means to

"check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action). The INA prohibits the relief that Plaintiffs seek here, so the Court lacks jurisdiction to grant their motion for summary judgment and should instead grant the government's motion to dismiss.

## II. Plaintiffs' APA Claims Fail Because the Secretary's 2025 Partial Vacatur was not Arbitrary, Capricious, an Abuse of Discretion, Contrary to Law, or in Excess of Statutory Limitations

In their motion for partial summary judgment, Plaintiffs contend that the Secretary's 2025 Partial Vacatur was "in excess of statutory authority" and as such should be held unlawful and set aside under 5 U.S.C. § 706(2)(C). ECF No. 17-1 at 9, 12, 14, 18, 21-22. In their Complaint, but not in their motion for partial summary judgment, Plaintiffs additionally allege that the Secretary's partial vacatur was arbitrary and capricious and an abuse of discretion because the partial vacatur was not "a product of the statutorily mandated review process." ECF No. 1 at 5; *see also id.* at ¶¶ 135-36, 138. Even if the Court finds that it has jurisdiction, the Court should dismiss Plaintiffs' APA claims under Rule 12(b)(6) or alternatively, deny their motion for summary judgment because the Secretary has inherent authority to reconsider and partially vacate a prior TPS designation, and her 2025 Partial Vacatur was rational and consistent with Section 1254a.[10]

### A. The Secretary Has Inherent Authority to Revisit and Reconsider a Prior TPS Extension

As a preliminary matter, Plaintiffs' framing of the issue, and ensuing legal analysis, in their motion for partial summary judgment is incorrect because the Secretary did not prematurely

---

[10] Plaintiffs also allege that the Secretary's 2025 Partial Vacatur was ultra vires in that it was not authorized by Section 1254a, and as such it must be held "unlawful and set aside" under the APA. ECF No. 17-1 at 14, 18; *see also* ECF No. 1 at 5; *id.* at Count IV, ¶¶ 154-55. To the extent that Plaintiffs assert that the 2025 Partial Vacatur was both a violation of the INA and a violation of the APA, they cannot obtain relief through the Court's inherent power to review ultra vires agency actions. *See Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 311-12 (D.D.C. 2017) (dismissing ultra vires claim since the same claim could be asserted through the APA); *see also Saget v. Trump*, 375 F. Supp. 3d 280, 365 (E.D.N.Y. 2019).

terminate Haiti's TPS designation. ECF No. 17-1 at 14-17; *see also* ECF No. 1 at ¶¶ 131-33, 135-38. Instead, exercising her inherent authority under the INA, she reconsidered the prior 2024 TPS Haiti extension and redesignation decision and partially vacated it by abbreviating the extension and designation period from 18 months to 12 months, after reasonably determining that it was warranted. *See* 90 Fed. Reg. at 10,513-15; AR at 0003-05.

Congress granted the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos v. Wolf*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Section 1254a specifically requires the Secretary to review conditions within foreign states designated for TPS, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C). Section 1254a also requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). *Cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts") (citing *Hawaii*, 585 U.S. at 684-86).

Courts have long recognized that an administrative agency has inherent or statutorily implicit authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures. S*ee Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n. 9 (2d Cir. 2002) (agency's power to

reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (federal agencies have broad authority to reconsider their prior decisions, particularly when the prior decision contained an error); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration."). And the Secretary has asserted and exercised this authority previously. *See* Reconsideration and Rescission of Termination of the Designation of El Salvador for Temporary Protected Status; Extension of the Temporary Protected Status Designation for El Salvador, 88 Fed. Reg. 40,282 (Jun. 21, 2023) (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination" to vacate his predecessor's termination of El Salvador's TPS designation); AR at 0411, 0414.

Flexibility to reconsider decisions makes especially good sense in the TPS context. The Secretary's TPS authority inevitably requires her to make sensitive assessments affecting United States foreign policy. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). When the Executive Branch acts in the field of foreign policy "… pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can

delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up). Interpreting Section 1254a to bar such reconsideration would mean that no Secretary of Homeland Security could ever vacate a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error or legal defect in a prior determination. Section 1254a does not mandate such an unworkable and potentially detrimental limitation of the Secretary's ability to fulfill her border security, national security, and foreign policy responsibilities by exercising her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C. § 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with the President's Executive Orders.

Although Plaintiffs acknowledge that an agency has inherent authority to revisit its prior decisions, they argue that such inherent authority exists only in the absence of specific statutory time limits. ECF No. 17-1 at 15-17 (relying on *Ivy Sports Med. v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) and *China Unicom (Americas) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1149 (9th Cir. 2024)). Plaintiffs then incorrectly argue that under Section 1254a(b)(3)(A), Congress imposed specific statutory limitations on the Secretary's authority to revisit a deficient TPS designation or extension. *See id*.

Section 1254a requires the Secretary to determine whether permitting the class of aliens from a designated country to remain temporarily in the United States is contrary to the national interest. The statute contains time limits, but none forecloses the Secretary's inherent authority to reconsider the length of a TPS extension. Instead, Section 1254a(b)(3)(A) directs the Secretary to periodically review the conditions in a foreign state. This review must take place at least 60 days before the end of an extension to determine whether the statute continues to be met. 8 U.S.C. § 1254a(b)(3)(A). Secretary Noem amply complied with that time limit by issuing her partial

vacatur months before the end of the existing extension. 90 Fed. Reg. at 10,512, 10,515; AR at 0002, 0005.

**B.  <u>The Partial Vacatur is Not Arbitrary and Capricious</u>**

Plaintiffs incorrectly call Secretary Noem's partial vacatur a "preordained premature termination of Haiti's TPS designation." ECF No. 1, ¶ 136. Here, however, Secretary Noem carefully reviewed the decision of former Secretary Mayorkas to extend (for the second time) the 2021 designation of Haiti for TPS for 18 months and redesignate Haiti for TPS until February 3, 2026. *See* 90 Fed. Reg. at 10,513-15; AR at 0003-05. In doing so, and consistent with Section 1254a(b)(1)(C), Secretary Noem reasonably found that the former Secretary "failed to evaluate whether 'permitting the aliens to remain temporarily in the United States' is not 'contrary to the national interest of the United States'" and cited a lack of support in the record concerning the national interest. 90 Fed. Reg. at 10,511-13; AR at 0001-03. Indeed, the only reference to the national interest element in the 2024 Extension is simply that "the Secretary has determined that … it is not contrary to the national interest of the United States to permit Haitian TPS beneficiaries to remain in the United States temporarily." 89 Fed. Reg. at 54,491; AR at 0237.

Additionally, Secretary Noem reasonably found that the former Secretary's decision to extend the TPS designation for Haiti did not include a discussion of "why the 18-month period was selected in lieu of a 6- or 12-month period." *See* 90 Fed. Reg. at 10,513-15; AR at 0003-05; *see also* 89 Fed. Reg. at 54,487-92; AR at 0233-38. Secretary Noem's consideration of this issue is entirely consistent with Congress's objective of providing *temporary* relief (subject to mandatory periodic review) to nationals until they can safely return home. *See* 8 U.S.C. § 1254a. Further, Secretary Noem found that some of the sources the former Secretary relied on indicated that "significant developments" that "might result in improvement in conditions" took place in

2024, and they were not discussed when assessing the length of the extension. 90 Fed. Reg. at 10,513-14; AR at 0003-04; *see also* 89 Fed. Reg. at 54,491; AR at 0237. These include a United Nations-backed Multinational Security Support Mission deployed to Haiti in 2024 to support the Haitian National Police in "capacity building, combatting gang violence, and provide security for critical infrastructure." 90 Fed. Reg. at 10,513-14; AR at 0003-04; *see also* AR at 0489-92.

For these articulated reasons, Secretary Noem exercised her inherent authority under Section 1254a to vacate the former Secretary's decision, which had the effect of rolling back the extension—not terminating it—from 18 months to 12 months. 90 Fed. Reg. at 10,515; AR at 0005. In so doing, Secretary Noem—consistent with her authority under Section 1254a and in light of the deficiencies noted in the former Secretary's decision to extend the designation—determined that this vacatur was warranted. Specifically, she found that the vacatur would allow for a clearer and more fulsome review of the country conditions in Haiti, whether Haitians could return to Haiti safely, and whether it is contrary to the U.S. national interest to continue to permit Haitian nationals to remain in the United States under the TPS program. 90 Fed. Reg. at 10,514; AR at 0004.

The Secretary's partial vacatur was firmly and appropriately rooted in foreign policy and national interest considerations. *See* 8 U.S.C. § 1254a(b)(1)(C); *Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"); *cf.* U.S. Secretary of State, *Determination: Foreign Affairs Functions of the United States*, 90 Fed. Reg. 12,200 (Mar. 14, 2025) ("[A]ll efforts, conducted by any agency of the federal government, to control the status, entry, and exit of people, and the transfer of goods, services, data, technology, and other items across the borders of the United States, constitute a foreign affairs function of the United States under the Administrative Procedure Act, 5 U.S.C. 553, 554."). Thus, Plaintiffs'

complaints that she did not follow the statutory guidelines for termination fall flat. The Secretary's action was consistent with her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws. *See* 8 U.S.C. § 1254a(b)(1)(C); Exec. Order No. 14159, Protecting the American People Against Invasion, § 16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025); AR at 200-05.

Furthermore, the Secretary "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for" her action "including whether there is a rational connection between the facts found and the choice made." *Ru Jun Zhang v. Lynch*, 2018 WL 1157756, at *6 (citation omitted). Plaintiffs have accordingly failed to show that the Secretary's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* at *9.

Based on the foregoing, this Court should dismiss this case or alternatively, deny Plaintiffs' motion for partial summary judgment and grant judgment in favor of Defendants.

### III. Plaintiffs' Constitutional Claims Fail as a Matter of Law

Even if the Court finds that it has jurisdiction to consider Plaintiffs' constitutional claims, Secretary Noem's decision to partially vacate the 2024 Extension and roll back the deadline to review Haiti's TPS designation did not violate Plaintiffs' due process rights.

### A. Plaintiffs' Due Process Claim Fails Because it is Based on a Purely Hypothetical Termination of Haiti's TPS Designation

Plaintiffs allege that their Fifth Amendment rights have been violated because "Defendants prematurely *terminated* Haiti's TPS designation … without any due process, let alone any process" (emphasis supplied). ECF No. 1 at 43. However, Defendants have not actually terminated Haiti's TPS designation. Rather, Secretary Noem partially vacated the 2024 Extension and rolled back the existing designation period from 18 months to 12 months. *See* 90 Fed. Reg. at 10,511; AR 0001-

0005. The Secretary explained that rolling back the designation period was necessary in order to evaluate whether permitting Haitian nationals with TPS status to remain temporarily was "contrary to the national interest of the United States" and in compliance with the parameters set forth in 8 U.S.C. § 1254a(b)(1)(C). *See* 90 Fed. Reg. at 10,513; AR 0003. Only after such consideration will the government decide whether to extend or terminate Haiti's TPS designation on August 3, 2025.

In short, Plaintiffs' due process claim fails as a matter of law because it is premised upon a hypothetical "termination" of Haiti's TPS designation which *has not taken place*. ECF No. 1 at 42-43; AR 0004. Accordingly, Plaintiffs' due process claim should be dismissed under Federal Rule 12(b)(6). *See Bell Atl. Corp.*, 550 U.S. at 570; *see also Ashcroft*, 556 U.S. at 677-78.

**B. The Secretary's Decision to Partially Vacate the 2024 Extension and Roll Back the Deadline to Review the TPS Designation Did Not Violate the Equal Protection Clause**

Plaintiffs' claim that the 2025 Partial Vacatur was motivated by "racial animus" is baseless. The Supreme Court has been clear that where, as here, a decision involves immigration policy, courts cannot look behind facially legitimate actions to hunt for illicit purposes. *See Hawaii*, 585 U.S. at 703-04. The deferential standard set out in *Trump v. Hawaii* applies here, and the Secretary's decision easily passes muster under it. *Hawaii's* deferential rational-basis standard governs this immigration policy decision. *See id.* "'Any rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution,' and [the Court's] inquiry into matters of entry and national security is highly constrained." *Id*. at 704.

The Supreme Court "ha[s] long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control. *Fiallo v. Bell*, 430 U.S.787, 792 (1977). Because decisions in these

matters implicate "relations with foreign powers" and involve "classifications … defined in the light of changing political and economic circumstances," such judgments "are frequently of a character more appropriate to either the Legislature or the Executive." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government"). Decisions by the political branches about which classes of aliens to exclude or expel will generally be upheld against constitutional challenges so long they satisfy deferential rational-basis review. *Hawaii*, 585 U.S. at 704-05; *see also Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (judicial review of "[p]olicies pertaining to the entry of aliens and their right to remain here" is limited to whether the Executive gave a "facially legitimate and bona fide" reason for its action); *Mathews*, 426 U.S. at 82 (a "narrow standard of review" applies to "decisions made by Congress or the President in the area of immigration and naturalization"); *Shaughnessy*, 342 U.S. at 588-89.

The holdings in *Hawaii*, *Mandel*, and *Fiallo* support the application of rational basis review in this case. The Secretary's partial vacatur affords her the opportunity to analyze "whether permitting a class of aliens to remain temporarily in the United States is contrary to the national interest," in accordance with 8 U.S.C. § 1254a(b)(1)(C). 90 Fed. Reg. at 10,513; AR at 0003. TPS decisions, this one included, involve sensitive, country-specific determinations that both "implicate relations with foreign powers" and "involve classifications defined in the light of changing political and economic circumstances," *Hawaii*, 585 U.S. at 702—precisely the situation in which the Supreme Court has repeatedly applied rational-basis review. *See id.*; *see also Fiallo*, 430 U.S. at 799.

Even under a higher standard, Plaintiffs' Equal Protection claim fails. Plaintiffs cannot show that the Secretary's TPS determinations were "motivated by animus or discriminatory intent based on race, national origin, and ethnicity," ECF No. 1 ¶ 149, through statements taken out of context and without direct links to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus").

Plaintiffs' reliance on the President's statements emphasizes the paucity of evidence of an invidious discriminatory purpose and their invocation of a "cat's paw" theory, which courts have previously rejected. *See Ramos*, 975 F.3d at 889 (emphasizing Appellees' failure to "provide any case where such a theory of liability has been extended to governmental decisions in the foreign policy and national security realm"). Plaintiffs point to statements from the President to suggest discriminatory motives for the 2025 Partial Vacatur, *see* ECF No. 1 ¶ 150, but Plaintiffs have failed to show how these statements extend to Secretary Noem's determination. AR 0001-0005.

Here, the Secretary's partial vacatur is consistent with Congress's goal of providing TPS to eligible aliens so long as it is not contrary to the U.S. national interest and until the Secretary determines that the conditions for the country's TPS designation no longer continues to exist. AR 0003; 8 U.S.C. § 1254a(b)(1)(C); *see also Hawaii*, 585 U.S. at 704-05; *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980). Thus, under the rational basis test, Plaintiffs' equal protection claim also fails as a matter of law. *See Bell Atl. Corp.*, 550 U.S. at 570; *see also Ashcroft*, 556 U.S. at 677-78.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack

of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

Alternatively, Plaintiffs' Motion for Partial Summary Judgment should be denied and judgment

entered in favor of Defendants.


Dated: April 15, 2025


YAAKOV M. ROTH
Acting Assistant Attorney General

SARAH L. VUONG
Assistant Director

WILLIAM H. WEILAND
Senior Litigation Counsel

LAUREN BRYANT
CATHERINE ROSS
ERIC SNYDERMAN
ANNA L. DICHTER
JEFFREY HARTMAN
AMANDA SAYLOR
Trial Attorneys

s/ Luz Maria Restrepo
LUZ MARIA RESTREPO
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044

*Counsel for Defendants*

TO:   Raymond Audain
      *Counsel for Plaintiff*
      GISKAN, SOLOTAROFF & ANDERSON, LLP
      New York
      90 Broad Street
      Second Floor
      New York, NY 10004
      646-835-0773

      Ira J Kurzban
      *Counsel for Plaintiffs*
      KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
      131 Madeira Avenue
      Coral Gables, FL 33134
      305-444-0060

Madisen Hursey
Geoffrey Pipoly
Alexa Jane Thein
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER
161 N Clark St
Ste 4300
Chicago, IL 60607
847-894-3712

Andrew Tauber
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, DC 20004
202-508-6111

Sarah Levine Hartley
*Counsel for Plaintiffs*
BRYAN CAVE LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80202
303-866-0363

Sejal Zota
*Counsel for Plaintiffs*
JUST FUTURES LAW
1629 K Street N.W.
Suite 300
District of Columbia, DC 20006
919-698-5015