IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAITIAN EVANGELICAL CLERGY ASSOCIATION; SERVICE EMPLOYEES INTERNATIONAL UNION – LOCAL 32BJ; SABINA BADIO FLORIAL; YOUDELAINE DORCIN; ROBERT JEAN ALIX ERINAC; RACHELLE GUIRAND; DIEU YOLNICK JEUNE CADET; AUDOINE AMAZAN; GERALD MICHAUD; NADEGE JOSEPH MICHAUD; and MARIE WILDRIGUE ERINAC MIOT, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States of America; UNITED STATES OF AMERICA; THE DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, Secretary of Homeland Security, <br><br> *Defendants*. | Case No. 1:25-cv-01464-BMC <br><br> <u>ORAL ARGUMENT REQUESTED</u> |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR RELIEF PENDING REVIEW</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................................i
TABLE OF AUTHORITIES ......................................................................................................... ii
INTRODUCTION ...........................................................................................................................1
LEGAL STANDARD .....................................................................................................................1
ARGUMENT ..................................................................................................................................2
I.      Plaintiffs are entitled to relief under 5 U.S.C. § 705. .......................................................2
        A.    Plaintiffs are likely to succeed on the merits. ............................................................2
        B.    Plaintiffs are likely to suffer irreparable harm absent relief. .....................................4
        C.    Postponing the effective date of Secretary Noem's "partial vacatur" is in the public interest. ................................................................................................................6
II.     The Court has authority to grant relief under 5 U.S.C. § 705. ..........................................10
CONCLUSION .............................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego Garcia v. Noem*, No. 8:25-cv-00951 (D. Md.) ..................................................................4

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
    78 F.4th 210 (5th Cir. 2023) ...................................................................................................10

*Arana v. Decker*,
    2020 WL 7342833 (S.D.N.Y. 2020) .........................................................................................7

*Brainwave Sci., Inc. v. Arshee, Inc.*,
    2021 WL 6211630 (E.D.N.Y. 2021) ......................................................................................2, 4

*Casa de Maryland, Inc. v. Wolf*,
    486 F. Supp. 3d 928 (D. Md. 2020) ..........................................................................................1

*Dist. of Columbia v. Dep't of Agric.*,
    444 F. Supp. 3d 1 (D.D.C. 2020) ..............................................................................................1

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ......................................................................................................7

*Make the Road New York v. Cuccinelli*,
    419 F. Supp. 3d 647 (S.D.N.Y. 2019) ......................................................................................8

*Make the Road New York v. Pompeo*,
    475 F. Supp. 3d 232 (S.D.N.Y. 2020) ......................................................................................7

*Maryland v. United States Dep't of Agric.*,
    2025 WL 800216 (D. Md. 2025) ............................................................................................10

*Nat'l TPS All. v. Noem*,
    2025 WL 957677 (N.D. Cal. 2025) ..................................................................................*passim*

*National TPS Alliance v. Noem*,
    No. 3:25-cv-01766 (N.D. Cal.) .............................................................................................1, 3

*New York v. United States Dep't of Educ.*,
    477 F. Supp. 3d 279 (S.D.N.Y. 2020) ...................................................................................1, 8

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................................................................2

*Noem v. Abrego Garcia*,
    604 U.S. ____, 2025 WL 1077101 (U.S. 2025) .......................................................................4

*Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*,
    337 F. Supp. 3d 308 (S.D.N.Y. 2018) .................................................................................7

*Saget v. Trump*,
    375 F. Supp. 3d 280 (E.D.N.Y. 2019) ...............................................................................6, 7

*Schmidt v. Kosinski*,
    602 F. Supp. 3d 339 (E.D.N.Y. 2022) ..................................................................................2

*Texas v. Biden*,
    646 F. Supp. 3d 753 (N.D. Tex. 2022) ................................................................................11

*Torres-Jurado v. Biden*,
    2023 WL 7130898 (S.D.N.Y. 2023) .....................................................................................7

*You v. Nielsen*,
    321 F. Supp. 3d 451 (S.D.N.Y. 2018) ..................................................................................7

**Statutes**

5 U.S.C.
    § 705 .............................................................................................................................*passim*
    § 706 .................................................................................................................2, 3, 10, 11

8 U.S.C.
    § 1252(f)(1) ......................................................................................................... 3, 10, 11
    § 1254a .................................................................................................................. 3, 9, 11
    § 1255a(b)(5)(A) ........................................................................................................ 10, 11

**INTRODUCTION**

Secretary Noem's "partial vacatur" of Haiti's TPS designation effective August 3 is already causing Plaintiffs irreparable harm—and will inflict even greater irreparable harm if allowed to take effect as scheduled. The Secretary's *ultra vires* action not only exposes Plaintiffs to deportation and the loss of work authorization in less than four months but has upended Plaintiffs' lives as they must suddenly scramble—and make heart-wrenching decisions regarding their U.S.-citizen children—in anticipation of August 3. *See* ECF 17-1 at 6–7; *see also* ECF 27 at 2–3; ECF 15 at 1–2; ECF 1 ¶¶ 115–126.[1] Accordingly, Plaintiffs ask that this Court enter an order pursuant to 5 U.S.C. § 705 postponing the effective date of the Secretary's action pending final resolution of this case on the merits—just as the Northern District of California recently postponed the Secretary's termination of Venezuela's TPS designation pending resolution of *National TPS Alliance v. Noem*, No. 3:25-cv-01766 (N.D. Cal.).

**LEGAL STANDARD**

The Administrative Procedure Act authorizes reviewing courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. "The standard for a stay under 5 U.S.C. § 705 is the same as the standard for a preliminary injunction." *New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279, 294 (S.D.N.Y. 2020); *accord, e.g.*, *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 950 (D. Md. 2020); *Dist. of Columbia v. Dep't of Agric.*, 444 F. Supp. 3d 1, 16 (D.D.C. 2020).

Thus, to obtain an order postponing the effective date of an administrative action, a plaintiff

---

[1] Many of the issues implicated by this motion are identical to issues addressed in Plaintiffs' motion for partial summary judgment. Rather than burden the Court with repetitive briefing on these issues, Plaintiffs incorporate by reference their motion for partial summary judgment as well as the affidavits and notices of supplemental authority submitted in support thereof. *See* ECF 17-1 & Exs. 1–2; ECF 25; ECF 28.

"must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Schmidt v. Kosinski*, 602 F. Supp. 3d 339, 341 (E.D.N.Y. 2022) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The final two factors merge when," as here, "the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (cleaned up).

Of these factors, "[a] showing of 'irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Brainwave Sci., Inc. v. Arshee, Inc.*, 2021 WL 6211630, at *5 (E.D.N.Y. 2021) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). "To show irreparable harm, a plaintiff must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (cleaned up).

## ARGUMENT

Plaintiffs are entitled to a postponement under 5 U.S.C. § 705. They satisfy the criteria for such relief, and the Court is authorized to grant it.

### I. Plaintiffs are entitled to relief under 5 U.S.C. § 705.

#### A. Plaintiffs are likely to succeed on the merits.

For the reasons set forth in their motion for partial summary judgment and notices of supplemental authority, Plaintiffs are likely to succeed on the merits. ECF 17-1 at 3–6, 8–16; ECF 28; ECF 25.

To start, Plaintiffs are likely to prevail on their claim that the premature termination of Haiti's TPS designation is *ultra vires*.

There is no dispute that the Secretary acted "in excess of statutory … authority" (5 U.S.C.

§ 706(2)(D)) when prematurely terminating Haiti's TPS designation. In fact, the government recently admitted in open court that, given 8 U.S.C. § 1254a(b)(3), "there is ***no ability*** to terminate" a TPS designation under the statute "prior to" the designation's previously scheduled expiration date. Hrg. Tr. 53:9–54:5, *Nat'l TPS All. v. Noem*, No. 3:25-cv-01766 (N.D. Cal. March 24, 2025) (emphasis added) (ECF 25 Ex. 1); *cf.* ECF 17-1 at 8–9.

And Plaintiffs are likely to establish that the Secretary lacks inherent authority to prematurely terminate a country's TPS designation. As the Northern District of California recently held when reviewing the Secretary's premature termination of Venezuela's TPS designation, the Secretary's assertion of an "inherent right to vacate the extension" of a country's TPS designation "is at odds with the structure of the TPS statute." *Nat'l TPS All. v. Noem*, 2025 WL 957677, at *34 (N.D. Cal. 2025) (*NTPS*), *appeal filed* (Apr. 2, 2025); *see also* ECF 17-1 at 9–11.

Plaintiffs are, moreover, likely to establish that, contrary to the government's jurisdictional arguments, neither 8 U.S.C. § 1252(f)(1) nor § 1254a(b)(5)(A) deprives this Court of jurisdiction to set aside the Secretary's "partial vacatur" under 5 U.S.C. § 706.

As the Northern District of California stated when rejecting the government's contention that review is barred by 8 U.S.C. § 1252(f)(1), "[n]o court has adopted the construction of § 1252(f)(1) advanced by the government." *NTPS*, 2025 WL 957677, at *12. To the contrary, "all courts that have addressed the issue have rejected the government's construction of the statute." *Id.*; *see also* ECF 17-1 at 12–14.

As for § 1254a(b)(5)(A), "the government [has] explicitly conceded that § 1254a(b)(5)(A) does ***not*** bar the Court from entertaining Plaintiffs' contention that the Secretary lacked the inherent authority to vacate the extension" of a country's TPS designation. *NTPS*, 2025 WL 957677, at *12; *see also* ECF 17-1 at 14–16.

Plaintiffs are therefore likely to succeed on the merits of their claim.

B. **Plaintiffs are likely to suffer irreparable harm absent relief.**

As both alleged in Plaintiffs' complaint (ECF 1 ¶¶ 115–126) and shown in Plaintiffs' motion for partial summary judgment (ECF 17-1 at 6–7 & Exs. 1–2), Plaintiffs "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied" if the court fails to postpone the effective date of the "partial vacatur" pending a final disposition on the merits. *Brainwave*, 2021 WL 6211630, at *5.

Unless the effective date of Secretary Noem's "partial vacatur" is postponed, Plaintiffs will soon face deportation to a country where both violence and human-rights abuse are pervasive while food, housing, and medical care are scarce. ECF 17-1 at 6; ECF 17-2 at 6 ("If our family is forced to return to Haiti, we would … be in danger due to the violence" because "[t]he gangs are in charge of Haiti right now and they target people from the United States for kidnapping and ransom" and "the only way to protect yourself from the corrupt police is to bribe them with more money than the gangs are willing to pay, which we cannot afford."); ECF 17-3 at 5 ("[A]s a young woman, I am afraid of getting raped or otherwise abused by the gangs in Haiti, if not killed.").[2] Recognizing

---

[2] The likelihood that Plaintiffs will suffer irreparable harm if the Secretary's action is not postponed pending final resolution on the merits is heightened by the government's avowed refusal to abide by a court order directing it to facilitate the return of Kilmar Abrego Garcia, a Salvadoran national whom the administration—by its own admission—illegally removed from the United States. *Compare Noem v. Abrego Garcia*, 604 U.S. ____, 2025 WL 1077101 (U.S. 2025) ("The United States acknowledges that Abrego Grcia was subject to a withholding order forbidding his removal to El Salvador, and that the removal to El Salvador was therefore illegal."), Order, *Abrego Garcia v. Noem*, No. 8:25-cv-00951, ECF 51 (D. Md. Apr. 10, 2025) (directing government to "take all available steps to facilitate the return of Abrego Garcia to the United States"), and Order, *Abrego Garcia v. Noem*, No. 8:25-cv-00951, ECF 61 (D. Md. Apr. 11, 2025) (finding that "the Defendants," including Secretary Noem, "have failed to comply with this Court's order"), *with* Decl. of Joseph N. Mazzara, *Abrego Garcia v. Noem*, No. 8:25-cv-00951, ECF 74 (D. Md. Apr. 14, 2025) (DHS acting general counsel asserting that government "does not have authority" to abide by court order).

these conditions, the U.S. State Department advises that people should "not travel to Haiti due to kidnapping, crime, civil unrest, and limited health care." *See* ECF 17-1 at 6.

Even if not immediately deported on August 3, Plaintiffs will be subject to arrest and incarceration pending deportation as of that date. And even if not immediately arrested, Plaintiffs will automatically lose their work authorization that day—and with it, the ability to provide for themselves and their families. ECF 17 at 6–7. The consequences will be devastating. For example, work authorization is what allows Plaintiff Marie Miot to have a job that provides health insurance, which, in turn, pays for her husband Robert's cancer treatment; if she loses her work authorization and thus her job, "Robert will probably die as a result." ECF 17-2 at 4.

Although August 3 has yet to arrive, Plaintiffs are *already* suffering irreparable harm from Secretary Noem's premature termination of Haiti's TPS designation as they must suddenly scramble to prepare for possible repatriation. In the short time remaining, they must—from afar—locate housing, obtain jobs, arrange medical care, and secure reliable sources of food in a country on the brink of collapse. ECF 17-2 at 7 ("If we had to return to Haiti, we would have nowhere to live."); ECF 17-3 at ("Given the conditions of extreme poverty, gang violence, homelessness, and lack of rule of law in Haiti, I don't know how I would find any stable housing."). And, most agonizingly, Plaintiffs must decide whether, and if so, how to leave their U.S.-citizen children behind in America. ECF 17-1 at 7; *see also* ECF 17-2 at 6–7 ("If we took our children with us, they would immediately become targets for kidnapping and murder. But they would not be able to fend for themselves in the United States, either.").

Simply put, "without postponement" of the "partial vacatur," Plaintiffs "will suffer irreparable injury." *NTPS*, 2025 WL 957677, at *20. Indeed, they will suffer irreparable harm at least as great as what would have been suffered by Venezuelan TPS holders had the Northern

5

District of California not postponed the effective date of the Secretary's vacatur of Venezuela's TPS designation. "Absent relief from the Court," Plaintiffs soon "will no longer have authorization to work in the United States and thus will lose their jobs—which in turn imperils their livelihoods, housing, and health care." *Id.* And like Venezuelan TPS holders, Plaintiffs will soon face removal to a country "in the throes of a political and economic crisis," forcing Plaintiffs who "live in mixed-status families"—*i.e.*, families in which "some family members, including partners and/or some children are U.S. citizens"—to either "stay together" and thereby subject every family member to Haiti's dangers and deprivations, "or split apart" and endure family separation to spare their U.S.-citizen family members those hardships. *Id.* at *21.

When the first Trump administration attempted to unlawfully terminate Haiti's TPS designation, this Court preliminarily enjoined that attempt, finding that "[w]ith the expiration date of Haiti's TPS looming, Plaintiffs face[d] imminent and irreparable harm." *Saget v. Trump*, 375 F. Supp. 3d 280, 376 (E.D.N.Y. 2019). The Court concluded that the irreparable-harm "factor weigh[ed] heavily in favor" of provisional relief because the plaintiffs and other Haitian TPS holders faced removal to a "countr[y] that might not be safe," "confronted the impossible choice of either leaving their children behind" or "tearing them away from the only country and community they have known," and would "lose their work authorization and … no longer be legally employable in the United States, causing financial distress," all of which was causing them to "suffer[] from severe emotional distress and anxiety." *Id.* at 374–75. The same is true today.

**C.     Postponing the effective date of Secretary Noem's "partial vacatur" is in the public interest.**

Postponing the effective date of the Secretary's "partial vacatur" of Haiti's TPS designation is in the public interest.

"As an initial matter, there is no public interest in allowing Defendants to proceed with

6

unlawful, arbitrary, and capricious executive or agency actions that exceed their statutory authority." *Make the Road New York v. Pompeo*, 475 F. Supp. 3d 232, 269 (S.D.N.Y. 2020); *accord, e.g.*, *Saget v. Trump*, 375 F. Supp. 3d 280, 377 (E.D.N.Y. 2019); *Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).[3]

While there is no public interest in allowing an agency's *ultra vires* action to stand, there is strong public interest in allowing Plaintiffs to retain TPS status pending a final resolution of this case on the merits.

To start, "there is a public interest in maintaining families together." *You v. Nielsen*, 321 F. Supp. 3d 451, 469 (S.D.N.Y. 2018) (staying removal of Chinese national with U.S.-citizen children); *accord, e.g.*, *Torres-Jurado v. Biden*, 2023 WL 7130898, at *5 (S.D.N.Y. 2023); *Arana v. Decker*, 2020 WL 7342833, at *4 (S.D.N.Y. 2020). Unless the "partial vacatur" is postponed, families will likely be ripped apart when Haitian TPS holders are forced to either leave behind their U.S.-citizen children and spouses or take their entire family to a country that is gripped by violence, political instability, and human-rights abuse as well as persistent shortages of food, housing, and medical care. ECF 17-1 at 5–7 & Exs. 1–2; ECF 1 at 1–3 & ¶¶ 34–57, 109, 115–24.

Other factors considered by courts in weighing the public interest also strongly support

---

[3] In *NTPS*, the court held that "the public interest weighs in favor of, not against, postponement" of the Secretary's premature termination of Venezuela's TPS designation despite the Secretary's invocation of public safety and national interest. 2025 WL 957677, at *24. Here, where the Secretary's premature termination of Haiti's TPS designation rests exclusively on criticism of her predecessor rather than any determination as to national interest (ECF 17-1 at 14–15), the government cannot rely on national interest or public safety to oppose postponement under 5 U.S.C. § 705.

granting relief here. When weighing the public interest, a court may consider, among other things, "the alleged economic and public health harms" caused by the challenged agency action and, given the weight of such considerations, may stay such action notwithstanding the government's "legitimate interest in administering the national immigration system." *Make the Road New York v. Cuccinelli*, 419 F. Supp. 3d 647, 665–66 (S.D.N.Y. 2019), *aff'd as modified sub nom. New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020). Thus, for example, a court may consider whether the agency action "will likely result in worse health outcomes, including … malnutrition," "increased rates of poverty and housing instability," or "reduced productivity and educational attainment." *New York*, 969 F.3d at 87 (affirming preliminary injunction barring implementation of rule that would have rendered certain immigrants inadmissible to the United States) (cleaned up). Here, consideration of these factors confirms that postponing the effective date of the "partial vacatur" is in the public interest. If deported to Haiti—where healthcare, food, jobs, and housing are scarce to nonexistent—Plaintiffs and any family members forced to return with them are likely to experience worse health outcomes, malnutrition, poverty, and housing instability. ECF 17 at 6–7 & Exs. 1–2. And whether or not Plaintiffs' children are deported, their education is almost certain to be negatively affected—either because the children will be taken to Haiti where the education system is in shambles, or because they will remain in the United States without parental support and supervision. *Id.*

Given the significant "economic contributions" made by TPS holders, who "work, spend, and pay taxes" in the United States (*NTPS*, 2025 WL 957677, at *24), postponement of the "partial vacatur" also is in the public interest because the Secretary's premature termination of Haiti's TPS designation will likely impose significant economic costs—both direct and indirect—on the communities where Haitian TPS holders currently live.

Ineligible for public assistance (*see* 8 U.S.C. § 1254a(f)(2)), TPS holders are employed at high rates. "TPS holders work in frontline jobs, hospitality, delivery, customer service, retail, restaurants, transportation, construction, factories, and manufacturing, among many other professional fields." *NTPS*, 2025 WL 957677, at *24. Their labor is critical to many local economies. For example, Haitian TPS holders have helped power Springfield, Ohio's economic recovery, enabling employers to fill jobs and meet demand that they otherwise could not. Miriam Jordan, *Why Thousands of Haitians Have Settled in Springfield, Ohio*, N.Y. TIMES (Sept. 14, 2024), https://www.nytimes.com/2024/09/14/us/haitian-migrants-springfield-ohio.html. The premature termination of Haiti's TPS designation, and corresponding end to Haitian TPS holders' work authorization, will disrupt and depress the economy in Springfield and the many other communities around the country where Haitian TPS holders have settled. *Cf. NTPS*, 2025 WL 957677, at *25 ("The cost to companies to replace laid-off TPS employees could be as high as $1.3 billion.").

Once Haitian TPS holders lose work authorization, they will be unable to support their families. ECF 17-1 Ex. 1 ¶¶ 5, 7, 8, 16–17 & Ex. 2 ¶¶ 14, 18. Consequently, as the Northern District of California recognized when postponing the Secretary's premature termination of Venezuela's TPS designation, "[i]f TPS holders no longer have jobs, they or their families may need to seek public assistance." *NTPS*, 2025 WL 957677, at *25. Moreover, "[w]ithout jobs, TPS holders and their families would also lose employer-sponsored health insurance, which would likely increase health care expenditures for local governments." *Id.* The additional financial burden on states and localities would be compounded by a simultaneous loss of tax revenues. "In New York," for example,

> TPS households earned $2.3 billion in income, paid $348.9 million in federal taxes, $305.5 million in state and local taxes, and also contributed $1.6 billion in spending

> power. Moreover, at least 41 percent of TPS households are homeowners and pay taxes on property having a total value of approximately $19 billion.

*Id.* at *24 (quotation marks omitted). In short, unless postponed, the premature termination of Haiti's TPS designation will have an adverse "economic impact[] on the United States and the communities where TPS holders currently live." *Id.* at 25.

But premature termination of Haiti's TPS designation would also inflict non-economic harm on the communities where TPS holders live. Premature termination of Haiti's TPS designation would also adversely affect public safety. "Fears of detention and deportation cause undocumented immigrants to forego medical care, such as diagnostic testing and vaccinations, which increases health risks to the broader community." *NTPS*, 2025 WL 957677, at *25. Moreover, "immigrants without legal status are less likely to report crimes or testify in court, reducing public safety and making effective law enforcement more difficult." *Id.*

For these reasons, the public interest, like each of the other factors to be considered, strongly favors postponement of the "partial vacatur."

## II. The Court has authority to grant relief under 5 U.S.C. § 705.

Given what it argued in *NTPS*, the government is likely to argue that 8 U.S.C. § 1252(f)(1) and § 1255a(b)(5)(A) prevent the Court from postponing the effective date of the "partial vacatur" under 5 U.S.C. § 705. But, as the *NTPS* court held, there is no merit to that assertion.

"In the same way that a preliminary injunction is the temporary form of a permanent injunction, a stay" under 5 U.S.C. § 705 "is the temporary form of vacatur" under § 706. *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. 367 (2024); *accord, e.g.*, *Maryland v. United States Dep't of Agric.*, 2025 WL 800216, at *25 (D. Md. 2025) ("just as vacatur would likely be the appropriate remedy at the final judgment stage under the APA, 5 U.S.C. § 706—the proper provisional remedy under … § 705 is

a stay" of the agency action). Therefore, if the Court has authority to set aside agency action under § 706 it also has authority to postpone that action under § 705.

Having jurisdiction to set aside the "partial vacatur" under § 706 (*see* ECF 17 at 11–16), this Court also has jurisdiction to postpone it under § 705. Neither § 1252(f)(1) nor § 1255a(b)(5)(A) is to the contrary. Indeed, "[n]o court has adopted the construction of § 1252(f)(1) advanced by the government." *NTPS*, 2025 WL 957677, at 12. To the contrary, "all courts that have addressed the issue have rejected the government's construction of the statute." *Id.* Thus, "[j]ust as Section 1252(f)(1) does not prohibit 'vacatur' under Section 706, Section 1252(f)(1) does not prohibit issuance of a 'stay' under Section 705." *Texas v. Biden*, 646 F. Supp. 3d 753, 768 (N.D. Tex. 2022) (postponing Department of Homeland Security action terminating the Migrant Protection Program). As for § 1254a(b)(5)(A), the government has "explicitly conceded that § 1254a(b)(5)(A) does ***not*** bar the Court from entertaining Plaintiffs' contention that the Secretary lacked the inherent authority to vacate the extension" of a country's TPS designation." *NTPS*, 2025 WL 957677, at *25.

## CONCLUSION

The Court should postpone the effective date of Secretary Noem's *ultra vires* "partial vacatur" of Haiti's TPS designation pending final resolution of this case on the merits.

April 15, 2025

Respectfully submitted,

/s/ Andrew Tauber
Andrew Tauber

Ira J. Kurzban
Kevin Gregg*
KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060
ira@kktplaw.com
kgregg@kktplaw.com

Andrew E. Tauber
Sarah Levine Hartley
BRYAN CAVE LEIGHTON PAISNER, LLP
1155 F Street NW, Ste. 700
Washington, DC 20004
(202) 508-6200
andrew.tauber@bclplaw.com
sarah.hartley@bclplaw.com

11

Sejal Zota
Daniel Werner*
Dinesh McCoy*
JUST FUTURES LAW
1629 K Street NW, Suite 300
Washington, DC 20006
(617) 812-2822
sejal@justfutureslaw.org
dinesh@justfutureslaw.org
daniel@justfutureslaw.org

Raymond Audain
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Floor
New York, NY 10004
(212) 847-8315
raudain@gslawny.com

Geoffrey M. Pipoly
Alexa Thein
Madisen Hursey
BRYAN CAVE LEIGHTON PAISNER, LLP
161 N. Clark Street, Ste. 4300
Chicago, IL 60601
 (312) 602-5000
geoff.pipoly@bclplaw.com
alexa.thein@bclplaw.com
madisen.hursey@bclplaw.com

**PHV* application forthcoming

*Attorneys for Plaintiffs*