# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAITIAN EVANGELICAL CLERGY ASSOCIATION; SERVICE EMPLOYEES INTERNATIONAL UNION – LOCAL 32BJ; SABINA BADIO FLORIAL; YOUDELAINE DORCIN; ROBERT JEAN ALIX ERINAC; RACHELLE GUIRAND; DIEU YOLNICK JEUNE CADET; AUDOINE AMAZAN; GERALD MICHAUD; NADEGE JOSEPH MICHAUD; and MARIE WILDRIGUE ERINAC MIOT, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States of America; UNITED STATES OF AMERICA; THE DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, Secretary of Homeland Security, <br><br> *Defendants*. | Case No. 1:25-cv-01464-BMC <br><br> <u>ORAL ARGUMENT REQUESTED</u> |

## PLAINTIFFS'
## REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND
## <u>OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

I.    Plaintiffs have alleged—and offered undisputed evidence proving—imminent
harm from Secretary Noem's premature termination of Haiti's TPS designation ..............2

II.    Secretary Noem's premature termination of Haiti's TPS designation is *ultra vires* ...........5

     A.    Secretary Noem lacks statutory authority to prematurely terminate a TPS
designation.................................................................................................6

     B.    Secretary Noem lacks inherent authority to prematurely terminate a TPS
designation.................................................................................................6

III.    The Secretary's unlawful termination of Haiti's TPS designation is reviewable
under the Administrative Procedure Act ...........................................................13

     A.    Section 1254a(b)(5)(A) does not limit this Court's authority to set aside
the unlawful termination................................................................................13

     B.    Section 1252(f)(1) does not limit this Court's authority to set aside the
unlawful termination ...................................................................................18

IV.    Plaintiffs have adequately alleged APA, due-process, and equal-protection claims.........21

     A.    Plaintiffs have stated a claim under the Administrative Procedure Act ...............21

     B.    Plaintiffs have stated a due-process claim............................................................23

     C.    Plaintiffs have stated an equal-protection claim....................................................23

CONCLUSION ...........................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albertson v. FCC,*
 182 F.2d 397 (D.C. Cir. 1950) ............................................................................7, 8

*Bell Atl.Corp. v. Twombly,*
 550 U.S. 544 (2007) ........................................................................................22, 25

*Biden v. Texas,*
 597 U.S. 785 (2022) ..............................................................................................20

*Bowen v. Mich. Acad. of Family Physicians,*
 476 U.S. 667 (1986) ..............................................................................................15

*CASA de Md., Inc. v. Trump,*
 355 F. Supp. 3d 307 (D. Md. 2018) ................................................................16, 17

*Centro Presente v. U.S. Dep't of Homeland Sec.,*
 332 F. Supp. 3d 393 (D. Mass. 2018) ...................................................................17

*Chao v. Russell P. Le Frois Builder, Inc.,*
 291 F.3d 219 (2d Cir. 2002) ....................................................................................7

*China Unicom (Ams) Operations Ltd. v. FCC,*
 124 F.4th 1128 (9th Cir. 2024) ................................................................................8

*FDA v. Brown & Williamson Tobacco Corp.,*
 529 U.S. 120 (2000) ..............................................................................................11

*Freedom to Travel Campaign v. Newcomb,*
 82 F.3d 1431 (9th Cir. 1996) ...................................................................................5

*Garland v. Aleman Gonzalez,*
 596 U.S. 543 (2022) ..........................................................................................1, 20

*Gun S., Inc. v. Brady,*
 877 F.2d 858 (11th Cir. 1989) ..................................................................................8

*Ivy Sports Med., LLC v. Burwell,*
 767 F.3d 81 (D.C. Cir. 2014) ...................................................................................7

*Last Best Beef, LLC v. Dudas,*
 506 F.3d 333 (4th Cir. 2007) ...................................................................................8

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ....................................................................8

*Macktal v. Chao*,
286 F.3d 822 (5th Cir. 2002) ......................................................7

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991) ..................................................................17

*Nakka v. U.S. Citizenship & Immigr. Servs.*,
111 F.4th 995 (9th Cir. 2024) ..................................................17

*Nat. Res. Def. Council v. Regan*,
67 F.4th 397 (D.C. Cir. 2023) ....................................................7

*Nat'l TPS Alliance v. Noem*,
--- F. Supp. 3d ---, 2025 WL 957677 (N.D. Cal. 2025) ......................*passim*

*New Jersey v. EPA*,
517 F.3d 574 (D.C. Cir. 2008) ..................................................12

*Nken v. Holder*,
556 U.S. 418 (2009) ..................................................................21

*Ramos v. Nielsen*,
336 F. Supp. 3d 1075 (N.D. Cal. 2018) ..............................12, 17

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019) ................................*passim*

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016) ........................................................3

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) ......................................................21

*Trump v. Hawaii*,
585 U.S. 667 (2020) ..................................................................24

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
508 U.S. 439 (1993) ..................................................................19

**Statutes**

5 U.S.C. § 559 ..............................................................15, 18

5 U.S.C. § 705 ....................................................................4

5 U.S.C. § 706 ..............................................................*passim*

8 U.S.C. § 1252(f)(1) ................................................................13, 18, 19, 20, 21

8 U.S.C. § 1254a(b)(1)(C) .................................................................10, 11, 16

8 U.S.C. § 1254a(b)(3) .............................................................................6, 9, 12

8 U.S.C. § 1254a(b)(3)(A) ...........................................................9, 11, 16, 22

8 U.S.C. § 1254a(b)(3)(B) ...............................................................*passim*

8 U.S.C. § 1254a(b)(3)(C) ..........................................................................12

8 U.S.C. § 1254a(b)(5)(A) ...............................................................*passim*

Administrative Procedure Act, Pub. L. 89-554, 80 Stat. 378 (Sept. 6, 1966) ...............................15

Immigration Act of 1990, Pub. L. 101-649 § 302, 104 Stat. 4978 (Nov. 29, 1990) ....................15

U.S. CONST. art. I, § 8 ................................................................................7

**Rules**

E.D.N.Y. L.R. 56.1(a) ...............................................................................4

Fed. R. Civ. P. 11(b)(2) ...........................................................................14

Fed. R. Civ. P. 12(b)(6) ...........................................................................22

Fed. R. Civ. P. 56(c)(1) .............................................................................4

**Regulations**

Ensuring Accountability for All Agencies, Exec. Order No. 14215 of Feb. 18, 2025,
   90 Fed. Reg. 10447, 2025 WL 579355 (Feb. 24, 2025) ....................................14, 26

Extension and Redesignation of Haiti for Temporary Protected Status,
   89 Fed. Reg. 54484 (July 1, 2024) .........................................................................2

Partial Vacatur of 2024 Temporary Protected Status Decision for Haiti,
   90 Fed. Reg. 10511 (Feb. 24, 2025) ......................................................2, 6, 10, 11

Reconsideration and Rescission of Termination of the Designation of El Salvador for
   Temporary Protected Status; Extension of the Temporary Protected Status Designation
   for El Salvador,
   88 Fed. Reg. 40282 (June 21, 2023) .......................................................................12

**Other Authorities**

13B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3532.2 (3d ed.)................4, 5

Am. Heritage Dict. of the English Language 1033 (1979)...........................................................3

Devlin Barrett & Glenn Thrush, *Justice Dept. Lawyers Are Struggling to Defend Trump's Policies in Court*, N.Y. TIMES (Apr. 7, 2025, updated Apr. 15, 2025), https://www.nytimes.com/2025/04/07/us/politics/justice-department-trump-policies-defense.html..................................................................................14

Sadie Gurman, *He Represented Contentious Immigration Cases for the Government. His Candor Lost Him His Job*, WALL STREET JOURNAL (Apr. 15, 2025)................................14

Off. of the Atty. Gen., *General Policy Regarding Zealous Advocacy on Behalf of the United States* (Feb. 5, 2025), https://www.justice.gov/ag/media/1388521/dl?inline...............................................................14

# INTRODUCTION

The arguments that the government presents to this Court are identical to those that it advanced in *National TPS Alliance v. Noem*, --- F. Supp. 3d ---, 2025 WL 957677 (N.D. Cal. 2025), *appeal docketed*, No. 25-2120 (9th Cir. Apr. 2, 2025) (*NTPS*).[1] In that case, the Northern District of California rejected each of the government's arguments. This Court should reject them too.

*NTPS* is directly on point, cited in Plaintiffs' previous submissions, and involves the same attorneys as represent the government in this case. Yet the government pretends that *NTPS* does not exist, failing to cite it even once in its motion to dismiss and opposition to Plaintiffs' motion for partial summary judgment. Critically, the government also simply ignores its admission in *NTPS* that, contrary to the position it takes here, 8 U.S.C. § 1254a(b)(5)(A) allows judicial review of an *ultra vires* claim brought under 5 U.S.C. § 706.

What the government does say is unpersuasive. For example, the government argues that Plaintiffs' claims are not ripe because the Secretary might choose to extend Haiti's TPS designation upon further review. But the government ignores Plaintiffs' well-pleaded allegations that final termination is preordained and that, preordained or not, the mere prospect of final termination effective August 3 is—as shown by Plaintiffs' uncontroverted affidavits—already causing Plaintiffs significant injury. Similarly, the government argues that *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), precludes a set-aside but ignores the fact that eight Supreme Court justices have stated—and every lower court to reach the issue has held—exactly the opposite.

Ignoring the law and Plaintiffs' allegations does not entitle the government to dismissal. On the contrary, when the law, Plaintiffs' well-pleaded allegations, and the undisputed facts are

---

[1] The Northern District of California denied the government's motion to stay *NTPS* pending appeal, holding that it had failed "to make a strong showing of likelihood of success on the merits." *NTPS*, 2025 WL 1019671, at *1 (N.D. Cal. 2025) (emphasis omitted). The Ninth Circuit affirmed denial of the stay. *NTPS*, 2025 WL 1142444 (9th Cir. 2025).

given due regard, it is clear that Plaintiffs have not only stated a claim but are entitled to relief under 5 U.S.C. § 706. Accordingly, the government's motion to dismiss should be denied and Plaintiffs' motion for partial summary judgment should be granted.

## ARGUMENT

### I. Plaintiffs have alleged—and offered undisputed evidence proving—imminent harm from Secretary Noem's premature termination of Haiti's TPS designation.

The government argues that "Plaintiffs lack standing and their claims are not yet ripe for review," because, according to the government, "Plaintiffs' claims rest[] entirely on the assumption that Haiti's TPS designation *might* be terminated in the future." ECF 37 at 7–8 (capitalization omitted). Not so.

The government admits that, when adjudicating its motion to dismiss, "the Court must accept all material factual allegations in the complaint as true." ECF 37 at 6. The government also concedes that "Plaintiffs allege an immediate and imminent injury resulting from Secretary Noem's purported 'premature termination' of the TPS designation for Haiti." *Id.* at 8. Those allegations, accepted as true, are sufficient to establish standing and ripeness.

Resisting this conclusion, the government denies that the February 28 "partial vacatur" prematurely terminated Haiti's TPS designation. According to the government, rather than prematurely terminate Haiti's TPS designation, "the partial vacatur merely moved up the end date of Haiti's latest extension … by six months." ECF 37 at 8. The government's semantics are unavailing. Before the "partial vacatur," Haiti's TPS designation had been extended to February 3, 2026. 89 Fed. Reg. 54484, 54491 (July 1, 2024). Now, because of the "partial vacatur," it is scheduled to expire August 3, 2025. 90 Fed. Reg. 10511, 10511 (Feb. 24, 2025). As the government admits (ECF 38-1 at 3; ECF 28 at 1), the TPS statute expressly prohibits termination of a country's TPS designation before "expiration of the most recent previous extension." 8 U.S.C.

§ 1254a(b)(3)(B). Despite this unambiguous statutory prohibition, Secretary Noem's "partial vacatur" ends Haiti's TPS designation six months before expiration of the most recent extension. ECF 37 at 18 ("Secretary Noem … rolled back the existing designation period from 18 months to 12 months."). By any reasonable definition, the "partial vacatur" is in fact a premature termination of Haiti's TPS designation. *See* Premature, Am. Heritage Dict. of the English Language 1033 (1979) ("Occurring, growing, or existing prior to the customary, correct, or assigned time; uncommonly or unexpectedly early: *a premature end*."). The harms caused by the "partial vacatur"—including loss of work authorization, deportation to a violent country lacking basic services, and family separation (ECF 1 ¶¶ 2–3, 34–57, 109, 115–26)—are "particularized and imminent," not "conjectural or hypothetical," and thus sufficient to establish standing and ripeness. ECF 37 at 7 (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016))).[2]

Ignoring Plaintiffs' well-pleaded allegations of imminent, particularized harm from the "partial vacatur," the government argues that Plaintiffs' claims are "conjectural" because they supposedly "rest on Secretary Noem's *future* determination regarding Haiti's TPS designation." ECF 37 at 8. The government implies that Plaintiffs might not suffer loss of work authorization, deportation, and family separation because, upon review, Secretary Noem might choose to extend Haiti's TPS designation beyond August 3. But the suggestion that the Secretary might extend Haiti's TPS designation beyond August 3 is fanciful. As alleged in Plaintiffs' complaint—and as evidenced by President Trump's promise to "revoke" Haiti's TPS designation and send Haitian TPS holders "back to their country"—all indications are to the contrary. ECF 1 ¶¶ 58–101 (collecting cases and other sources evidencing the administration's determination to end Haiti's

---

[2] Given the alleged—and proven (*see infra* at 4–5)—harms that flow from Secretary Noem's "partial vacatur," there is no merit to the government's contention that Plaintiffs' due-process claim is based on "hypothetical" events that have yet to take place. ECF 37 at 19.

TPS designation).[3] That is sufficient. As the leading treatise on federal procedure notes: "A claim

… may be ripe because the future injury is nearly certain" and "there is nothing the plaintiff can

do to alter present conduct to affect the future." 13B Charles Alan Wright & Arthur R. Miller, Fed.

Prac. & Proc. § 3532.2 (3d ed.) (collecting cases). That is the case here.

Regardless, Plaintiffs have presented uncontradicted evidence demonstrating that the

"partial vacatur" is already causing them significant harm.[4] The mere fact that now Haiti's TPS

designation could (and almost certainly will) end on August 3 leaves Plaintiffs with only half the

time that they previously had to prepare for possible repatriation. Plaintiffs cannot wait until June

4—the date by which the Secretary says she "intends to review the Haiti TPS designation" (ECF

37 at 8)—to see whether the Secretary extends the designation beyond August 3. They must start

planning now if they have any hope of managing and surviving a possible return to Haiti. Were it

---

[3] As demonstrated by the administration's premature termination of Venezuela's TPS designation, "roll[ing] back" Haiti's "existing designation period from 18 months to 12 months" (ECF 37 at 18) is the first of two steps that will culminate in the final termination of Haiti's TPS designation on August 3. Because 8 U.S.C. § 1254a(b)(3)(B) prohibits termination of a TPS designation before the end of its most recent extension, unlawfully vacating a country's most recent extension allows the administration to then, in a second action, unlawfully terminate the country's TPS designation earlier than otherwise allowed while nominally adhering to the statute's text. As the Northern District of California explained when postponing its effective date under 5 U.S.C. § 705, the "decision to terminate" Venezuela's TPS designation "was possible only because of the decision to vacate Secretary Mayorkas's extension in the first place." *NTPS*, 2025 WL 957677, at *9.

[4] The government accuses Plaintiffs of having "fail[ed] to annex a Statement of Undisputed Material Facts in accordance with Local Rule 56.1." ECF 37 at 5 n.8. But the "rule does not apply to claims brought under the Administrative Procedure Act." Local Rule 56.1(a). Plaintiffs have moved for partially summary judgment on an APA claim. Hence, Plaintiffs set forth the undisputed facts in the body of their motion for partial summary judgment. ECF 17-1 at 3–7. Although the government claims that Plaintiffs' statement of undisputed facts "dubiously draw various legal conclusions," it identifies no such conclusions. ECF 37 at 5 n.8. Regardless, if the government contends that a fact contained in Plaintiffs' statement of undisputed facts "is genuinely disputed," the government bears the burden of supporting that contention by "citing to particular parts of materials in the record" or "showing that the materials cited [by Plaintiffs] do not establish the absence … of a genuine dispute" as to material facts. Fed. R. Civ. P. 56(c)(1). But the government has neither cited evidence to rebut Plaintiffs' sworn affidavits nor shown that those affidavits fail to establish irreparable harm caused by the "partial vacatur."

not for the "partial vacatur," Plaintiffs would have six additional months to make the difficult if not impossible arrangements and difficult if not impossible decisions that they must make. ECF 17-1 at 6–7. Because of the "partial vacatur," Plaintiffs now have less than four months to organize transportation to Haiti; locate housing in which they can live upon their return; seek jobs with which they can support themselves after returning; arrange medical care to treat existing conditions and those they are likely to contract in Haiti; and secure reliable sources of food. ECF 17-2 ¶¶ 18–23, 28–29; ECF 17-3 ¶¶ 19–22; ECF 1 ¶¶ 34–57, 109, 115–24. And in that same rapidly vanishing time, they must make "an impossible choice" between taking their U.S.-citizen children to Haiti where they "would immediately become targets for kidnapping and murder," or leaving them in the United States, where they "would not be able to fend for themselves." ECF 17-2 ¶ 27. Plaintiffs' injuries are not just imminent—they are already occurring, whether or not Secretary Noem ultimately chooses to extend Haiti's TPS designation.

This is enough to establish ripeness. As various cases recognize, claims may be ripe even when there is uncertainty as to future contingencies because, as here, "the prospect or fear of future events may have a real impact on present affairs." 13B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3532.2 (3d ed.) (collecting cases); *see also id.* (claims ripe where plaintiff must "arrange its affairs to conform" to anticipated future event); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1435 (9th Cir. 1996) (claims ripe where challenged action "places the challenger in an 'immediate dilemma'").

## II.  Secretary Noem's premature termination of Haiti's TPS designation is *ultra vires*.

As Plaintiffs have explained, Secretary Noem has neither statutory nor inherent authority to prematurely terminate Haiti's TPS designation. ECF 17-1 at 8–11.

**A.    Secretary Noem lacks statutory authority to prematurely terminate a TPS designation**.

The government does not claim that Secretary Noem has statutory authority to prematurely terminate Haiti's TPS designation. It did not invoke statutory authority in the "partial vacatur," and it does not invoke it in this Court. *See* 90 Fed. Reg. 10511; ECF 37. That is understandable. The government has rightly admitted that there is no statutory authority to prematurely terminate a country's TPS designation. ECF 25-1 (Hrg. Tr. 53:9–54:5, *Nat'l TPS Alliance v. Noem*, No. 3:25-cv-01766 (N.D. Cal. March 24, 2025)) (given 8 U.S.C. § 1254a(b)(3), "there is no ability to terminate" a TPS designation "prior to" the designation's previously scheduled expiration date); *accord* ECF 38-1 at 3; *cf.* ECF 17-1 at 8–9.

**B.    Secretary Noem lacks inherent authority to prematurely terminate a TPS designation**.

Concededly lacking statutory authority to prematurely terminate Haiti's TPS designation, the government claims that Secretary Noem "has inherent authority to revisit and reconsider a prior TPS extension." ECF 37 at 12 (capitalization omitted). But she does not. As the Northern District of California recently held in *NTPS*, the government's assertion of an "inherent right to vacate the extension" of a TPS designation "is at odds with the structure of the TPS statute." *NTPS*, 2025 WL 957677, at *31; *see also* ECF 38-1 at 3; ECF 28 at 1; ECF 17-1 at 9–11.

Having no persuasive response, the government ignores *NTPS* and the fact that it squarely rejected the government's claim of inherent authority. *See* ECF 37 at iv. Rather than confront *NTPS* and attempt to explain why it was wrongly decided, the government simply recycles the same arguments that were rejected by the Northern District of California. *Compare* ECF 37 at 13–14 *with* Defs' Resp. in Opp. to Plfs' Mot. to Postpone Effective Date of Agency Action at 14 n.5, ECF 60, *Nat'l TPS Alliance v. Noem*, No. 3:25-cv-01766 (N.D. Cal. Mar. 3, 2025) (Gov't *NTPS*

Response). But those arguments lack merit, as explained in *NTPS* and Plaintiffs' motion for partial summary judgment. *NTPS*, 2025 WL 957677, at \*27–34; ECF 17-1 at 9–11.

The government argues that "[t]he power to reconsider is inherent in the power to decide." ECF 37 at 13 (quoting *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950)). Perhaps so, but an agency's "inherent" authority to reconsider an earlier decision is subject to statutory constraints. As the Northern District of California explained in *NTPS*:

> [T]he term "inherent" is misleading because it is axiomatic that administrative agencies may act only pursuant to authority delegated to them by Congress. Thus, the more accurate label for the power [to reconsider a prior decision] is "statutorily implicit." And although the power to decide is normally accompanied by the power to reconsider, Congress undoubtedly can limit an agency's discretion to reverse itself.

2025 WL 957677, at \*28 (quoting *Nat. Res. Def. Council v. Regan*, 67 F.4th 397, 401 (D.C. Cir. 2023)) (cleaned up). Thus, as the Second Circuit has held, an agency lacks authority to vacate a prior decision "where," as here, "there is contrary legislative intent or other affirmative evidence." *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n.9 (2d Cir. 2002) (cleaned up). Arising from Congress's constitutional power "[t]o make Rules for the Government" (U.S. Const. art. I, sec. 8), this bedrock principle is recognized by the very authority that Secretary Noem invoked in the "partial vacatur." *See Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (Kavanaugh, J.) ("any inherent reconsideration authority does not apply in cases where Congress has spoken"); *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002) (agency's inherent authority to reconsider a prior decision exists only "in the absence of a specific statutory limitation"). Even the authority cited in the government's brief recognizes that an agency's inherent authority to reconsider a decision exists only "in the absence of [a] statutory prohibition."

*Albertson*, 182 F.2d at 399.[5] Indeed, to the best of Plaintiffs' knowledge, the courts are unanimous in holding that "[a]n agency's assertion of an implied general revocation authority may . . . be sharply limited, or even foreclosed, when the statutory structure negates that assertion of implied authority." *China Unicom (Ams) Operations Ltd. v. FCC*, 124 F.4th 1128, 1149 (9th Cir. 2024).

Constrained by this well-established case law, the government concedes that an agency lacks inherent authority to reconsider a prior decision if Congress has "foreclosed this authority by requiring other procedures." ECF 37 at 13. Nevertheless, the government insists that Secretary Noem had inherent authority to prematurely terminate Haiti's TPS designation because, says the government, Congress imposed no "specific statutory limitations on the Secretary's authority to revisit a deficient TPS designation or extension." ECF 37 at 15. But that is not so.

---

[5]     Neither of the other cases cited by the government (*cf.* ECF 37 at 14) supports the Secretary's assertion of inherent authority to prematurely terminate Haiti's TPS designation. In *Last Best Beef, LLC v. Dudas*, 506 F.3d 333 (4th Cir. 2007), the Patent and Trademark Office issued trademarks for a particular phrase in direct violation of a statute that, unbeknownst to PTO, had been signed into law just hours before. Upon learning of its error, the PTO cancelled the trademarks. Although it held that PTO was permitted to do so under the unique circumstances of the case, the court did not address—and had no reason to address—potential statutory limits on an agency's power to vacate prior agency action. Moreover, the situation in *Last Best Beef* is the opposite of the situation here. There, PTO exercised its inherent authority to undo *ultra vires* action; here, the Secretary claims inherent authority to engage in *ultra vires* action. The Secretary's reliance on *Gun South, Inc. v. Brady*, 877 F.2d 858 (11th Cir. 1989), is likewise misplaced. In *Gun South*, the Bureau of Alcohol, Tobacco, and Firearms suspended import licenses that it had previously issued. The court ruled that ATF had inherent authority to do so after concluding that the relevant statutory provision did not expressly prohibit the agency's action. That the court upheld the exercise of inherent authority only after finding that there was no statutory bar undermines any assertion that agencies have unfettered power to reconsider earlier actions. Furthermore, in concluding that the relevant statutory provision did not preclude ATF from exercising inherent authority to suspend import licenses, the *Gun South* court "defer[red] to" ATF's statutory interpretation (877 F.2d at 863)— something that now is impermissible after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024), held that both generally and under the Administrative Procedure Act in particular "courts must exercise independent judgment in determining the meaning of statutory provisions." Applying pre-*Loper* precedent, the *Gun South* court deferred to ATF's statutory interpretation because the statute at issue did not "compel[] a different interpretation." 877 F.2d at 863. Here, by contrast, the plain text of the relevant statute—8 U.S.C. § 1254a(b)(3)(B), which expressly bars termination of a TPS designation before its previously scheduled expiration date—forecloses the Secretary's claim of inherent authority to prematurely terminate Haiti's TPS designation.

The Secretary "does not have the implicit authority" to prematurely terminate a TPS designation "because the TPS statute"—namely, 8 U.S.C. § 1254a(b)(3)—"lays out specific timelines and processes for TPS designations, extensions, and terminations." *NTPS*, 2025 WL 957677, at *30; *see also* ECF 17-1 at 10; *accord Saget v. Trump*, 375 F. Supp. 3d 280, 298–301 (E.D.N.Y. 2019) (explaining the statutorily required process); *id.* at 346 ("The TPS statute imposes several requirements on the DHS Secretary regarding periodic review and termination of TPS designations."). "The TPS statute is," for example, "specifically prescriptive as to the time frame within which a TPS designation may be terminated," namely, no "earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension." *NTPS*, 2025 WL 957677, at *31 (quoting 8 U.S.C. § 1254a(b)(3)(B)); *accord Saget*, 375 F. Supp. 3d at 298. Simply put, the statute "does not permit the Secretary to terminate a TPS designation 'midstream' during the term of the prior designation." *NTPS*, 2025 WL 957677, at *31. Similarly, a TPS designation may not be terminated unless the Secretary has, "[a]t least 60 days before end" of the designation, "consult[ed] with appropriate agencies of the Government, … review[ed] the conditions in the foreign state," and "determine[d] whether the conditions for … designation … continue to be met." 8 U.S.C. § 1254a(b)(3)(A).[6] These "clear[ly] stated terms for extensions and terminations of TPS designations are … affirmatively inconsistent with the positing an implied power to revoke or vacate a prior designation (or extension)." *NTPS*, 2025 WL 957677, at *31 (cleaned up).

The government argues that interpreting § 1254a(b)(3) "to bar such reconsideration would

---

[6] Although the government says that Secretary Noem "amply complied" with the 60-day deadline for consultation, review, and determination "by issuing her partial vacatur months before the end of the existing extension" (ECF 37 at 15–16), it does not claim that the Secretary consulted with other agencies, reviewed the conditions in Haiti, or determined whether the statutory conditions for a TPS designation continue to exist before she issued the "partial vacatur."

mean that no Secretary of Homeland Security could ever vacate a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error or legal defect in a prior determination." ECF 37 at 15. The *NTPS* court considered and properly rejected this argument too. The court found it "unpersuasive" for three distinct reasons. *NTPS*, 2025 WL 957677, at *33.

*First*, "Secretary Noem's decision to vacate the extension of [Venezuela's TPS designation] was not based on any claimed national security interest." *NTPS*, 2025 WL 957677, at *33. So too here. Notwithstanding the government's assertion that "[t]he Secretary's partial vacatur was firmly and appropriately rooted in foreign policy and national interest considerations" (ECF 37 at 17), Secretary Noem's "partial vacatur" of Haiti's TPS designation contains no determination as to national interest. ECF 17-1 at 14–15. Rather than affirmatively determine that the continued presence of Haitian TPS holders is not in the "national interest" (8 U.S.C. § 1254a(b)(1)(C)), the Secretary found only that her predecessor had, supposedly, "failed to evaluate whether 'permitting the aliens to remain temporarily in the United States' is not 'contrary to the national interest of the United States.'" ECF 37 at 16 (quoting 90 Fed. Reg. at 10511; AR 0001–03).[7] Consistent with this limited finding with respect to her predecessor's decision-making process, the government says that the "partial vacatur" will "allow for a clearer and more fulsome review of … ***whether*** it is contrary to the U.S. national interest to continue to permit Haitian nationals to remain in the United States under the TPS program." ECF 37 at 17 (citing 90 Fed.

---

[7] The Secretary's finding is belied by the administrative record, which establishes that Secretary Mayorkas, in consultation with the appropriate agencies, did in fact consider whether extension of Haiti's TPS designation was consistent with the national interest. *See* AR 0342 (State Department memo advising Secretary Mayorkas that "[i]t is not contrary to the national interest of the United States to permit those who meet the eligibility requirements of TPS to remain in the United States temporarily").

Reg. at 10514; AR at 0004) (emphasis added).[8] Had the Secretary already determined that Haiti's TPS designation is not in the national interest, as the government seems to intimate, she would not still need to consider whether it is.

*Second*, "[r]egardless of how serious the problem an administrative agency seeks to address, ... it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law." *NTPS*, 2025 WL 957677, at *33 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000)). Thus, "in spite of possible national security interests, the Secretary does not have the ability, *e.g.*, to revoke en masse green cards, H-1B visas, or student visas; such authority resides with Congress." *Id.* (quotation marks omitted). And although national interest may be considered by the Secretary when deciding whether to extend a TPS designation (*see* 8 U.S.C. § 1254a(b)(3)(A) in conjunction with § 1254a(b)(1)(C)), "Congress did not create a national security exception to the framework it prescribed for the termination of TPS status." *NTPS*, 2025 WL 957677, at *33.

*Third*, to the extent that national security is implicated, "the TPS statute accounts for that in several ways." *NTPS*, 2025 WL 957677, at *33. Specifically:

> (a) TPS is temporary, not permanent, in nature; (b) the Secretary is to consult with other government agencies before making a decision on TPS designations, terminations, or extensions, and, presumably, the agencies would alert her to any potential for concern; and (c) if there are any concerns, the Secretary can issue a TPS designation of short duration (*e.g.*, 6 months instead of 18).

*Id.* Further and "[p]erhaps more to the point, the Secretary maintains the authority to withdraw a TPS holder's status if a beneficiary presents a danger to national security." *Id.* Specifically, "the Secretary 'shall withdraw [TPS] granted to an alien ... if [the Secretary] finds that the alien was

---

[8] The government's proffered rationale for Secretary Noem's "partial vacatur" makes no sense. Slashing Haiti's TPS designation by six months leaves the newly installed Secretary with less rather than more time to conduct a "more fulsome review." ECF 37 at 17.

not in fact eligible for such status,' 8 U.S.C. § 1254a(c)(3)(A), and ineligibility includes, *e.g.*, committing a crime involving moral turpitude, committing a felony, or being a member of a terrorist organization." *Id.* (emphasis omitted).

In short, "[n]othing in the TPS statute indicates there is" a national-interest "exception to its statutorily imposed temporal limitations … that would implicitly permit the Secretary to vacate at will, in midstream, a TPS designation still in effect." *NTPS*, 2025 WL 957677, at *33.

Finally, contrary to the government's contention (ECF 37 at 14), Secretary Mayorkas's recission of the first Trump administration's attempted termination of El Salvador's TPS designation does not support Secretary Noem's "partial vacatur" of Secretary Mayorkas's July 1, 2024, extension of Haiti's TPS designation. First, the mere fact that one Secretary arguably violated 8 U.S.C. § 1254a(b)(3) does not excuse a subsequent Secretary's violation of the statute. *NTPS*, 2025 WL 957677, at *32 (citing *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008)). Second, there is a significant difference between extending and terminating a TPS designation: terminating a designation impairs TPS holders' reliance interests; extending a designation does not.[9] Preliminarily enjoined as likely unlawful, the termination that Secretary Mayorkas rescinded had never taken effect. Reconsideration and Rescission of Termination of the Designation of El Salvador for Temporary Protected Status; Extension of the Temporary Protected Status Designation for El Salvador, 88 Fed. Reg. 40282, 40284–85 (June 21, 2023) (citing *Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018)). Here, by contrast, Secretary Mayorkas's eighteen-month extension of Haiti's TPS designation has been in effect for nearly nine months,

---

[9] A TPS designation "creates important reliance interests." *NTPS*, 2025 WL 957677, at *32. Not only does 8 U.S.C. § 1254a(b)(3)(B) guarantee that a country's TPS designation will remain in effect at least until the previously scheduled expiration date, but, under § 1254a(b)(3)(C), a designation is automatically extended unless the designation is affirmatively terminated pursuant to § 1254a(b)(3)(B).

creating a reliance interest among Haitian TPS holders that Secretary Noem's "partial vacatur" eviscerates. For each of these reasons, the government's invocation of Secretary Mayorkas's action "is misplaced." *NTPS*, 2025 WL 957677, at *32.

In sum, Secretary Noem lacks inherent authority to vacate a country's TPS designation. She "may do so only under the terms and timeframe set forth in the TPS statute." *NTPS*, 2025 WL 957677, at *27.

### III. The Secretary's unlawful termination of Haiti's TPS designation is reviewable under the Administrative Procedure Act.

As Plaintiffs explained, neither 8 U.S.C. § 1252(f)(1) nor 8 U.S.C. § 1254a(b)(5)(A) precludes a set-aside under 5 U.S.C. § 706. ECF 17-1 at 11–16.

#### A. Section 1254a(b)(5)(A) does not limit this Court's authority to set aside the unlawful termination.

The government tells this Court that the TPS statute has "stripped the Court of jurisdiction to hear Plaintiffs' claims" because 8 U.S.C. § 1254a(b)(5)(A) "unambiguously provides that 'there is no judicial review of any determination of the Secretary with respect to the designation, or termination or extension of a designation, of a foreign state' for TPS relief." ECF 37 at 8–9. But that is not what the government ultimately told the Northern District of California. There, after having first advanced the same arguments that it makes here (*compare* ECF 37 at 8–10 *with* Gov't *NTPS* Response at 11–13), "the government explicitly conceded that § 1254a(b)(5)(A) does ***not*** bar the Court from entertaining Plaintiffs' contention that the Secretary lacked the inherent authority to vacate" a country's TPS designation. *NTPS*, 2025 WL 957677, at *15; ECF 28 at 1.[10]

---

[10] The government's concession came in the following exchange on the scope of 8 U.S.C. § 1254a(b)(5)(A):

THE COURT     [I]f the bar of 1254 is so broad, we wouldn't even reach the question of whether [the Secretary] had authority or not. We wouldn't even

Having admitted in open court that § 1254a(b)(5)(A) does not preclude judicial review of an *ultra vires* claim under the APA, the government should not be permitted to assert the contrary here.[11]

Regardless, § 1254a(b)(5)(A) does not deprive this Court of jurisdiction to hear Plaintiffs' APA claims. As the *NTPS* court concluded, "the government's argument that § 1254a(b)(5)(A) is

---

<table>
<tr><td></td><td>reach the question of whether what she did was reasonable. There would just be no review, that whatever she did, no review, period.</td></tr>
<tr><td>MS. VUONG:</td><td>I think the Ninth Circuit in *Ramos* and yourself indicated you could look at legal questions surrounding the interpretation of the statute.</td></tr>
<tr><td>THE COURT:</td><td>Okay. So you could have judicial reviews as to the -- construing the statute, for instance, in determining whether or not there was implicit authority or not?</td></tr>
<tr><td>MS. VUONG:</td><td>Yes, Your Honor</td></tr>
</table>

ECF 25-1 (Hrg. Tr. 50:4–15, *Nat'l TPS Alliance v. Noem*, No. 3:25-cv-01766 (N.D. Cal. Mar. 24, 2025)).

[11] This is not an instance of one set of attorneys representing a client not knowing what another set of attorneys representing the client has said. Each attorney representing the government in this case also represents the government in *NTPS*. Indeed, the very attorney who admitted that § 1254a(b)(5)(A) does not bar judicial review of an *ultra vires* claim—Sarah Vuong—is on the government's brief in this case. Under these circumstances, it is difficult to reconcile, on the one hand, counsel's argument to this Court and, on the other hand, counsel's "certif[ication]" that, "to the best of [their] knowledge, information, and belief," the "legal contentions" in their brief are "warranted by existing law or by a nonfrivolous argument for … reversing existing law." Fed. R. Civ. P. 11(b)(2). It is unclear why counsel continues to assert a concededly false position. Plaintiffs note, however, that the administration recently fired another attorney in the Office of Immigration Litigation because he admitted error in an immigration case. *See* Sadie Gurman, *He Represented Contentious Immigration Cases for the Government. His Candor Lost Him His Job*, WALL STREET JOURNAL (Apr. 15, 2025) ("Deputy Attorney General Todd Blanche told Reuveni … he was suspended," and ultimately fired, "for failing to follow orders"); *see also* Devlin Barrett & Glenn Thrush, *Justice Dept. Lawyers Are Struggling to Defend Trump's Policies in Court*, N.Y. TIMES (Apr. 7, 2025, updated Apr. 15, 2025) ("[i]n several other high-profile cases, career prosecutors in the criminal division were punished for declining to take actions they deemed improper or unethical"), https://www.nytimes.com/2025/04/07/us/politics/justice-department-trump-policies-defense.html; Ensuring Accountability for All Agencies, Exec. Order No. 14215 of Feb. 18, 2025, 90 Fed. Reg. 10447, 10448 (Feb. 24, 2025) ("The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties."); Off. of the Atty. Gen., *General Policy Regarding Zealous Advocacy on Behalf of the United States* (Feb. 5, 2025) (DOJ attorneys "will be subject to discipline and potentially termination" if they substitute their judgment in place of "those who prevailed in the election"), https://www.justice.gov/ag/media/1388521/dl?inline)
.

a jurisdictional bar lacks merit for several reasons." 2025 WL 957677, at *16.

To start, as this Court noted when reviewing the first Trump administration's attempted termination of Haiti's TPS designation, "there is a 'strong presumption that Congress intends judicial review of administrative action.'" *Saget*, 375 F. Supp. 3d at 330 (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)); *accord NTPS*, 2025 WL 957677, at *16. Thus, as a general matter, "courts must restrict access to judicial review of administrative action only upon a showing of clear and convincing evidence of contrary legislative intent." *Saget*, 375 F. Supp. 3d at 330 (cleaned up); *accord NTPS*, 2025 WL 957677, at *16.

General principles aside, Congress has specifically addressed when a statute can be construed to limit review under the APA. In particular, it has decreed that a "[s]ubsequent statute may not be held to supersede or modify … chapter 7" of the APA "except to the extent that it does so ***expressly***." 5 U.S.C. § 559 (emphasis added). Here, 8 U.S.C. § 1254a(b)(5)(A)—which was enacted in 1990 (Immigration Act of 1990, Pub. L. 101-649 § 302, 104 Stat. 4978 (Nov. 29, 1990)), long after 5 U.S.C. § 559 (Administrative Procedure Act, Pub. L. 89-554, 80 Stat. 378, 388 (Sept. 6, 1966))—does not expressly supersede or modify 5 U.S.C. § 706, which is part of chapter 7 of the APA. To the contrary, § 1254a(b)(5)(A) is silent as to the APA. Thus, 5 U.S.C. § 559 forbids the Court from construing § 1254a(b)(5)(A) as limiting its power to set-aside unlawful agency action under 5 U.S.C. § 706.

Even on its own terms, § 1254a(b)(5)(A) plays no role here. It bars judicial review only of a "***determination*** … with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." The government argues that § 1254a(b)(5)(A) prohibits judicial review of the "partial vacatur" because, says the government, "a decision to shorten a TPS extension is undoubtedly a 'determination' 'with respect to' the 'termination or extension of a

designation.'" ECF 37 at 9 (quoting 8 U.S.C. § 1254a(b)(5)(A)). But that is incorrect. As used in the TPS statute, "determination" refers to the Secretary's "determin[ation] whether the conditions for … designation … continue to be met." 8 U.S.C. § 1254a(b)(3)(A); *see also id.* § 1254a(b)(3)(B) (allowing termination only after the Secretary "determines under [§ 1254a(b)(3)(A)] that a foreign state … no longer continues to meet the conditions for designation"). Here, the relevant determination would be a determination whether there are "extraordinary and temporary conditions" in Haiti "that prevent" Haitian nationals "from returning to" Haiti "in safety." *Id.* § 1254a(b)(1)(C); *supra* at 9. But the "partial vacatur" of Haiti's TPS designation contains no such determination. ECF 17-1 at 14–15.[12] Therefore, § 1254a(b)(5)(A) does not strip this Court of jurisdiction over Plaintiffs' claims. *NTPS*, 2025 WL 957677, at *17 (§ 1254a(b)(5)(A) does not bar review of Secretary Noem's vacatur of Venezuela's TPS designation because the vacatur "was based purely on procedural concerns … and did not turn, *e.g.*, on country conditions in Venezuela or a concern about U.S. interests").

Moreover, even if the Secretary had made a "determination" with respect to country conditions or national interest, § 1254a(b)(5)(A) still would not prevent this Court from reviewing the "partial vacatur." As this Court and every court reaching the issue has held, "§ 1254a(b)(5)(A) was designed to bar judicial review of substantive" findings with respect to "country-specific conditions" that are made "in service of TPS designations, terminations, or extensions …[,] not judicial review of general procedures or collateral practices related to such." *NTPS*, 2025 WL 957677, at *16; *accord Saget*, 375 F. Supp. 3d at 330–32; *CASA de Md., Inc. v. Trump*, 355 F.

---

[12]   The government might argue that the relevant "determination" also encompasses consideration of whether "permitting [Haitians] to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). But even if that were so, it would not help the government here because the "partial vacatur" contains no determination as to the national interest either. *Supra* at 10–11; ECF 17-1 at 14–15.

Supp. 3d 307, 317–21 (D. Md. 2018); *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1102 (N.D. Cal. 2018), *vacated and remanded sub nom. Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023); *Centro Presente v. U.S. Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 408–09 (D. Mass. 2018); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991) (8 U.S.C. § 1160(e)(3) does not preclude "collateral challenges to unconstitutional practices and policies"); *Nakka v. U.S. Citizenship & Immigr. Servs.*, 111 F.4th 995, 1009 (9th Cir. 2024) (8 U.S.C. § 1252(a)(2)(B)(i) does not bar "collateral actions challenging general policies and procedures"). Thus, § 1254a(b)(5)(A) "is best read as barring judicial review of the merits of the determination itself, but not whether the determination" was the result of unlawful "practices and policies." *CASA*, 355 F. Supp. 3d at 320.

Here, Plaintiffs' challenge is procedural, not substantive, and therefore not barred by § 1254a(b)(5)(A). Plaintiffs do not contest the correctness of a (non-existent) determination with respect to country conditions or national interest. Rather, they allege that Secretary Noem's "partial vacatur" of Haiti's TPS designation was "arbitrary, capricious, [and] an abuse of discretion"; "in excess of statutory … authority"; "not in accordance with law"; "without observance of procedure required by law"; and "contrary to constitutional right." ECF 1 ¶¶ 128–38. That Plaintiffs' claims are procedural rather than substantive is evident from the relief they seek.

> They do not seek a substantive declaration from the Court they are entitled to a TPS determination in their favor. Plaintiffs' success in this case would not compel Defendants to extend Haiti's TPS designation.

*Saget*, 375 F. Supp. 3d at 332. Rather, if Plaintiffs prevail, the Secretary would simply have "to make a new, good faith, fact- and evidence-based determination" applying "lawful criteria" before terminating Haiti's TPS designation as of February 3, 2026, when it was originally scheduled to expire. *Id.* "Plaintiffs' contention that the decision to vacate was arbitrary or capricious—and thus should be set aside—does not dictate how the Secretary should ultimately rule on a TPS

designation, termination, or extension." *NTPS*, 2025 WL 957677, at *17.

Simply put—and as the government has "explicitly conceded"—"§ 1254a(b)(5)(A) does ***not*** bar judicial review of Plaintiffs' challenge to the Secretary's decision to vacate." *NTPS*, 2025 WL 957677, at *15, 17.[13]

**B.      Section 1252(f)(1) does not limit this Court's authority to set aside the unlawful termination.**

In their motion for partial summary judgment, Plaintiffs explained that 8 U.S.C. § 1252(f)(1) likewise is no impediment to this Court setting aside Secretary Noem's premature termination of Haiti's TPS designation. ECF 17-1 at 12–14. Nothing that the government says in response alters that conclusion.

To start, § 1252(f)(1)—like § 1254a(b)(5)(A)—says nothing about the APA, much less "expressly" displaces it. 5 U.S.C. § 559; *see supra* at 15. Accordingly, § 1252(f)(1) "may not be held to supersede or modify" it. *Id.* This by itself is sufficient ground to reject the government's contention that § 1252(f)(1) precludes a set-aside under 5 U.S.C. § 706.

In addition, it is not clear that § 1252(f)(1) even applies to matters arising under § 1254a. By its terms, § 1252(f)(1) applies only to "the operation of the provisions of ***part IV***" of the Immigration and Nationality Act (INA) as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). "The government acknowledges that the U.S. Code places the TPS statute within ***part V***, not part IV" of the amended act. *NTPS*, 2025 WL 957677, at *10 (emphasis added); ECF 37 at 8. Nevertheless, the government argues that "Section 1254a is one of the statutory provisions § 1252(f)(1) covers." ECF 37 at 10. According to the

---

[13]  When attempting to unlawfully terminate Haiti's TPS designation, the first Trump administration argued that "judicial review is ... not permitted even in a scenario where a Secretary of Homeland Security *violates* the TPS statute." *Saget*, 375 F. Supp. 3d at 333. As this Court concluded at the time, "[t]he language of the TPS statute does not provide such an unrestrained destruction of the rule of law." *Id.*

government, "[a]lthough Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions … appear in Chapter 4." *Id.* at 10–11. This matters, says the government, because "[w]hen there is a conflict, the INA prevails." *Id.* at 11 (citing *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993), for the proposition that "[t]hough the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112."). But, as the Northern District of California stated just last month, "[n]o court has yet to hold that § 1252(f)(1) applies to § 1254a." *NTPS*, 2025 WL 957677, at *10. This is likely true for at least two reasons: First, "§ 1252 is titled 'Judicial review of orders of removal' and TPS does not directly involve orders of removal." *Id.* Second, "it appears that the codification of § 1254a into part V may well have been consistent with IIRIRA and the INA." *Id.* at *11.

Regardless, even if § 1252(f)(1) did apply to § 1254a, it still would not preclude a set-aside of the Secretary's "partial vacatur" under 5 U.S.C. § 706.

As an initial matter, regardless of the provisions to which it applies, § 1252(f)(1) proscribes only orders that "enjoin or restrain **the operation**" of those provisions. Setting aside the "partial vacatur" as "arbitrary, capricious, [and] an abuse of discretion," "in excess of statutory … authority," "not in accordance with law," "without observance of procedure required by law," or "contrary to constitutional right" neither enjoins nor restrains the operation of § 1254a. To the contrary, setting-aside the Secretary's unlawful "partial vacatur" promotes the provision's proper operation.

In any event, as Plaintiffs have explained, a set-aside under 5 U.S.C. § 706 does not "enjoin or restrain" anything. ECF 17-1 at 12–14.

Urging the contrary, the government relies—both directly and indirectly—on *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). ECF 37 at 11–12. But as Plaintiffs noted (ECF 17-1 at 13) and the government ignores, a clear majority of Supreme Court justices agree that *Aleman Gonzalez* "avoids a position on whether § 1252(f)(1) prevents a lower court from vacating or setting aside an agency action under the Administrative Procedure Act." *Biden v. Texas*, 597 U.S. 785, 839 (2022) (Barrett, Thomas, Alito, Gorsuch, JJ., dissenting); *accord Aleman Gonzalez*, 596 U.S. at 571 (Sotomayor, Kagan, Breyer, JJ., concurring in part and dissenting in part) (*Aleman Gonzalez* does "not purport to hold that § 1252(f)(1) affects courts' ability to 'hold unlawful and set aside agency action, findings, and conclusions' under the Administrative Procedure Act"); *cf. NTPS*, 2025 WL 957677, at *11 ("the Supreme Court has, to date, declined to address the issue of whether § 1252(f)(1) is a bar to a court issuing relief pursuant to the APA").[14]

In fact, "[n]o court has adopted the construction of § 1252(f)(1) advanced by the government." *NTPS*, 2025 WL 957677, at *12. To the contrary, "all courts that have addressed the issue have rejected the government's construction of the statute." *Id.* (collecting cases). But rather than engage with the cases that have rejected its position and attempt to explain why they are wrongly decided, the government simply ignores them. *Compare* ECF 37 at 11–12, *with NTPS*, 2025 WL 957677, at *12, *and* ECF 17-1 at 13.

There is good reason why every court to have considered the question has rejected the government's contention that § 1252(f)(1) precludes a set-aside under 5 U.S.C. § 706. Contrary to the government's assertion (ECF 37 at 11), a set-aside neither enjoins nor restrains the Secretary. As Plaintiffs explained and the government once again ignores, there are "material differences"

---

[14] The government's reliance (ECF 37 at 11) on *Biden v. Texas*, 597 U.S. at 797, is perplexing. *Biden* does not hold that § 1252(f)(1) bars set-aside under 5 U.S.C. § 706 and it is the very case in which Justices Barrett, Thomas, Alito, and Gorsuch acknowledge that *Aleman Gonzalez* does not bar set-aside under § 706.

between injunctions and set-aside under the APA. *NTPS*, 2025 WL 957677, at *13; *accord* ECF 17-1 at 13–14. Perhaps most fundamentally, a set-aside, unlike an injunction, "neither compels nor restrains further agency decision-making." *Texas v. United States*, 50 F.4th 498, 528–29 (5th Cir. 2022)). Thus, as noted above, setting aside Secretary Noem's premature termination of Haiti's TPS designation "would not compel [her] to extend Haiti's TPS designation" beyond its previously scheduled expiration date of February 3, 2026. *Saget*, 375 F. Supp. 3d at 332. Indeed, if the Secretary, applying "lawful criteria" after consultation with the appropriate agencies, were to make a "good faith, fact- and evidence-based determination" (*id.*) that Haiti "no longer continues to meet the conditions for designation" (8 U.S.C. § 1254a(b)(3)(B)), she could still terminate Haiti's TPS designation as of that date. *Saget*, 375 F. Supp. 3d at 332. As the Northern District of California observed, a set-aside "does not dictate how the Secretary should ultimately rule on a TPS designation, termination, or extension." *NTPS*, 2025 WL 957677, at *17.

At bottom, the government argues that 8 U.S.C. § 1254a(b)(5)(A) bars relief under 5 U.S.C. § 706 because, in the government's view, a set-aside is the functional equivalent of an injunction. For the reasons discussed above, that is not so. In any event, "an injunction has a specific legal meaning, and the fact that a different procedural mechanism can achieve the same result as an injunction does not mean that the two should be deemed the same." *NTPS*, 2025 WL 957677, at *14 (citing *Nken v. Holder*, 556 U.S. 418, 428–29 (2009)).

For each of these many reasons, 8 U.S.C. § 1252(f)(1) does not preclude a set-aside under 5 U.S.C. § 706.

## IV.    Plaintiffs have adequately alleged APA, due-process, and equal-protection claims.

### A.    Plaintiffs have stated a claim under the Administrative Procedure Act.

Seeking dismissal of Plaintiffs' APA claim, the government argues that Plaintiffs have

"failed to show that the Secretary's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." ECF 37 at 18. The government's argument is fatally flawed.

As a threshold matter, Plaintiffs are not required "to show" anything to avoid dismissal for failure to state a claim. To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs' allegations easily satisfy this standard.

Even if Secretary Noem "reasonably found" that former-Secretary Mayorkas's decision-making process was flawed when he extended Haiti's TPS designation through February 3, 2026 (ECF 37 at 16–17), it would not obviate the sufficiency of Plaintiffs' allegations.[15] No matter the proffered rationale, the Secretary's premature termination of Haiti's TPS designation is, as alleged, "in excess of [the] statutory authority" granted her by 8 U.S.C. § 1254a(b)(3)(B) and "without observance of [the] procedure required by" § 1254a(b)(3)(A). *Supra* at 5–13; ECF 17-1 at 8–11, 14–16; ECF 1 ¶¶ 23–33, 108, 132–33. That the Secretary "reasonably found" flaws in her predecessor's decision-making process in no way detracts from Plaintiffs' allegation that her premature termination of Haiti's TPS designation is "arbitrary, capricious, [and] an abuse of discretion" because it was made "without reviewing the conditions in Haiti and without making an evidence-based determination based on those conditions as required by 8 U.S.C. §§ 1254a(b)(3)(A)–(B)." ECF 1 ¶ 135; *see also id.* ¶¶ 92–101, 108–114; *supra* at 9, 15–16. Similarly, the fact that the Secretary cited her predecessor's purportedly flawed decision-making process as the nominal basis for the "partial vacatur" is entirely consistent with Plaintiffs'

---

[15] In addition to being legally irrelevant, the government's assertion that Secretary Noem "***reasonably*** found" Secretary Mayorkas's decision-making process deficient is dubious. *See supra* 10 n.7.

allegation that her premature termination of Haiti's TPS designation is "arbitrary, capricious, [and] an abuse of discretion" as well as "contrary to constitutional right" inasmuch as it reflects a preordained outcome "animated in significant part by discriminatory animus toward Haitians and other nonwhite immigrants." ECF 1 ¶ 136; *see also id.* ¶¶ 58–114.

Plaintiffs have stated a claim under the Administrative Procedure Act. In fact, Plaintiffs have not only stated a claim under the Administrative Procedure Act but also offered undisputed evidence that Secretary Noem's premature termination of Haiti's TPS designation is an *ultra vires* act causing them irreparable injury. Plaintiffs are therefore entitled to a set-aside under 5 U.S.C. § 706.

**B.     Plaintiffs have stated a due-process claim**.

The government argues that "Plaintiffs' due process claim fails as a matter of law because it is premised upon a hypothetical 'termination' of Haiti's TPS designation which has not taken place." ECF 37 at 19 (emphasis omitted). But Secretary Noem's "partial vacatur" has indisputably "taken place" and is—as detailed above, in Plaintiffs' motion for partial summary judgment, and in Plaintiffs' complaint—currently inflicting significant harm on Plaintiffs. *Supra* at 2–5; ECF 17-1 at 6–7; ECF 17-2 at ¶¶ 16–29; ECF 17-3 at ¶¶ 15–24; ECF 1 ¶¶ 115–24. In short, Plaintiffs have adequately alleged a due-process claim based on what the Secretary has already done, not what she might do in the future.

**C.     Plaintiffs have stated an equal-protection claim**.

The government argues that Plaintiffs' equal-protection claim should be dismissed for two reasons, but neither is persuasive.

First, repeating an argument rejected in both *NTPS* and *Saget*, the government insists that the "partial vacatur" is subject to "rational-basis" review and "easily passes muster" under that

"deferential standard," which, according to the government, does not allow courts to "look behind facially legitimate actions to hunt for illicit purposes." ECF 37 at 19. The government bases its argument on *Trump v. Hawaii*, 585 U.S. 667 (2018), but its reliance is misplaced for multiple reasons. As an initial matter, the "partial vacatur" is not facially legitimate; to the contrary, it is a facially improper *ultra vires* act whose supposed rationale—giving the Secretary the opportunity to conduct a "more fulsome review" (ECF 37 at 17)—is contrary to what it accomplishes. *Supra* at 5–13 & n.8. In addition, *Hawaii* involved foreign nationals living outside the U.S. who had "no constitutional right to entry." 585 U.S. at 703. This case, by contrast, involves individuals "lawfully present in the United States" and therefore "accorded greater constitutional protection." *Saget*, 375 F. Supp. 3d at 367; *accord NTPS*, 2025 WL 957677, at *37. Further, the legal authority that allowed the President to act in *Hawaii* was "a very broad grant of statutory discretion"; here, "Congress has not given the Secretary *carte blanche* to terminate TPS for any reason whatsoever" but has instead limited exercise of her "discretion to initiate, extend, and terminate TPS" to "specific enumerated circumstances." *NTPS*, 2025 WL 957677, at *37; *accord Saget*, 375 F. Supp. 3d at 332 ("the TPS statute limits the Secretary's discretion"). Finally, in *Hawaii*, the President explicitly invoked national security as justification for his action (585 U.S. at 677–81); in this case, the Secretary did not invoke national interest as a basis for the "partial vacatur" at issue. *Supra* at 10–11. For these reasons, "the deferential standard employed in *Trump v. Hawaii* does not apply to Plaintiffs' constitutional challenges to Haiti's TPS termination." *Saget*, 375 F. Supp. 3d at 367; *accord NTPS*, 2025 WL 957677, at *38.

Undeterred, the government argues that Plaintiffs' equal-protection claim fails even if the "partial vacatur" is subject to heightened scrutiny because, according to the government, "Plaintiffs cannot show that the Secretary's TPS determinations were 'motivated by animus and

24

discriminatory intent based on race, national origin, and ethnicity' through statements taken out of context and without direct links to the Secretary's determinations." ECF 37 at 21 (quoting ECF 1 ¶ 149). The government's argument misses the mark. Plaintiffs are not required to "show" anything at the pleading stage; all they must do is allege sufficient facts to state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. Their allegations of discriminatory animus more than satisfy this standard. The equal-protection claim rests on well-pleaded allegations (1) that President Trump has a long history of discriminatory animus toward non-white immigrants in general and Haitians immigrants in particular (ECF 1 ¶¶ 66–82); (2) that Secretary Noem and other high administration officials also harbor animus toward immigrants, especially non-white immigrants (*id.* ¶¶ 83–91); and (3) that Secretary Noem has pledged to follow whatever directive the President gives (*id.* ¶ 113).

The government does not dispute the veracity of Plaintiffs' well-pleaded factual allegations. For example, the government does not deny that President Trump has said that immigrants are "poisoning the blood" of America; that Haitians "all have AIDs"; and that Haitian TPS holders are "eating the dogs" and "eating the cats" of American citizens. ECF 1 ¶¶ 68, 71, 73. Nor does the government deny that President Trump expressed a preference for immigrants from predominantly white "nice countries" like Denmark, Switzerland, and Norway, while denigrating immigrants from Haiti and other "shithole countries." *Id.* ¶¶ 78, 80. Instead, the government argues that the undisputed statements are "taken out of context" and lack a "direct link[]" to the "partial vacatur." ECF 37 at 21. But the government—which does not even attempt to recontextualize the President's statements—ignores the complaint's well-pleaded allegations that Secretary Noem too harbors discriminatory animus toward immigrants. ECF 1 ¶¶ 84–86. It also disregards Plaintiffs' well-pleaded allegation that Secretary Noem has said without qualification or limitation that "[w]hen

the President gives a directive [to end a TPS designation], the Department of Homeland Security will follow it." *Id.* ¶ 113. Secretary Noem's promise to do whatever the President directs reflects the administration's view that Secretary Noem and other subordinate officers "remain subject to the President's ongoing supervision and control." 90 Fed. Reg. at 10447. The President's assertion of complete control over all agencies and subordinate officers fatally undermines the government's attempt to distinguish between President Trump's uncontested animus and Secretary Noem's "partial vacatur."

Plaintiffs therefore have adequately alleged an equal-protection claim.

## CONCLUSION

The Court should deny the government's motion to dismiss and grant Plaintiffs' motion for partial summary judgment.

April 29, 2025

Respectfully submitted,

/s/ Andrew Tauber
Andrew Tauber

Ira J. Kurzban
Kevin Gregg*
KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060
ira@kktplaw.com
kgregg@kktplaw.com

Andrew E. Tauber
Sarah Levine Hartley
BRYAN CAVE LEIGHTON PAISNER, LLP
1155 F Street NW, Ste. 700
Washington, DC 20004
(202) 508-6200
andrew.tauber@bclplaw.com
sarah.hartley@bclplaw.com

Sejal Zota
Daniel Werner
Dinesh McCoy
JUST FUTURES LAW
1629 K Street NW, Suite 300
Washington, DC 20006
(617) 812-2822
sejal@justfutureslaw.org
dinesh@justfutureslaw.org
daniel@justfutureslaw.org

Geoffrey M. Pipoly
Alexa Thein
Madisen Hursey
BRYAN CAVE LEIGHTON PAISNER, LLP
161 N. Clark Street, Ste. 4300
Chicago, IL 60601
(312) 602-5000
geoff.pipoly@bclplaw.com
alexa.thein@bclplaw.com
madisen.hursey@bclplaw.com

Raymond Audain                         *PHV application forthcoming
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Floor
New York, NY 10004
(212) 847-8315
raudain@gslawny.com

*Attorneys for Plaintiffs*