UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HAITIAN EVANGELICAL CLERGY
ASS'N, *et al.*,

                         Plaintiffs,

            v.

DONALD J. TRUMP, President of the           Civil Action No.
United States of America, *et al.*,            1:25-cv-1464 (BMC)

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR POSTPONEMENT OF THE EFFECTIVE DATE OF DHS'S
PARTIAL VACATUR OF HAITI'S DESIGNATION
FOR TEMPORARY PROTECTED STATUS**

YAAKOV M. ROTH                  LAUREN BRYANT
Acting Assistant Attorney General      CATHERINE ROSS
                             LUZ MARIA RESTREPO
SARAH L. VUONG                    ERIC SNYDERMAN
Assistant Director                   ANNA L. DICHTER
                             JEFFREY HARTMAN
WILLIAM H. WEILAND              AMANDA SAYLOR
Senior Litigation Counsel            Trial Attorneys
                             U.S. Department of Justice, Civil Division
                             Office of Immigration Litigation
                             P.O. Box 868 Ben Franklin Station
                             Washington, D.C. 20044

                             *Attorneys for Defendants*

April 29, 2025

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND................................................................................................................3

    I.    Statutory Background.................................................................................3

    II.    Factual Background...................................................................................5

STANDARD OF REVIEW ...............................................................................................7

ARGUMENT .....................................................................................................................7

    I.    This Court Lacks Jurisdiction to Grant Plaintiffs the Relief They Seek......................7

        A.    Plaintiffs Lack Standing To Challenge a Possible Future Termination of Haiti's TPS Designation, and Their Claims Are Not Yet Ripe for Review................7

        B.    The TPS Statute Bars Plaintiffs' Claims...........................................................8

        C.    Section 1252(f) Precludes Plaintiffs' Requested Relief ...............................10

        D.    APA Review Is Prohibited Because Actions Affecting TPS Determinations are Statutorily Committed to Agency Discretion ...................................14

    II.    Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits .........15

        A.    The Secretary of Homeland Security has the Inherent Authority to Vacate a Prior Extension of a Country's TPS Designation ...............................15

    III.    Any Harm Plaintiffs May Suffer Is Inherent in the Nature of TPS ...........................19

    IV.    The Balance of the Equities and Public Interest Weigh Against Preliminary Injunctive Relief ....................................................................20

    V.    Plaintiffs' Requested Relief is Overbroad ................................................................22

CONCLUSION ................................................................................................................23

CERTIFICATE OF SERVICE

## **TABLE OF AUTHORITIES**

## **CASES**

**Page(s)**

*Albertson v. FCC*,
  182 F.2d 397 (D.C. Cir. 1950) ........................................................................15

*Ali v. Fed. Bureau of Prisons*,
  552 U.S. 214 (2008) ........................................................................................10

*Amgen, Inc. v. Smith*,
  357 F.3d 103 (D.C. Cir. 2004) ..........................................................................9

*Arizona v. United States*,
  567 U.S. 387 (2012) ...............................................................17, 20, 21, 23

*Biden v. Texas*,
  597 U.S. 785 (2022) ........................................................................................11

*California v. Texas*,
  593 U.S. 659 (2021) ........................................................................................22

*California v. Yamasaki*,
  442 U.S. 682 (1979) ..........................................................................................3

*Campbell-Ewald Co. v. Gomez,*
  577 U.S. 153, 160 (2016) .................................................................................7

*Clapper v. Amnesty International USA*,
  568 U.S. 398, 409 (2013) .............................................................................7, 8

*Ctr. for Biological Diversity v. Regan*,
  597 F. Supp. 3d 173 (D.D.C. 2022) ........................................................ 12-13

*Dan's City Used Cars, Inc. v. Pelkey*,
  569 U.S. 251 (2013) ........................................................................................10

*DHS v. New York*,
  140 S. Ct. 599 (2020) (Gorsuch, J., concurring) ...........................................23

*Doe v. Trump*,
  2025 WL 485070 (D. Mass. Feb. 13, 2025).....................................................23

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110, 118 (2d Cir. 2009) ...................................................................19

*Florida v. Mayorkas*,
   No. 3:23-cv-09962-TKW-ZCB, 2023 WL 3567851 (N.D. Fla. May 16, 2023)......................13

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ...............................................................................................11, 12

*Gill v. Whitford*,
   585 U.S. 48, 72 (2018) ...........................................................................................22

*Gun South, Inc. v. Brady*,
   877 F.2d 858 (11th Cir. 1989) ...............................................................................15

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) .........................................................................................16, 21

*INS v. Legalization Assistance Project*,
   510 U.S. 1301 (1993) ............................................................................................22

*Ivy Sports Medicine v. Burwell*,
   767 F.3d 81 (D.C. Cir. 2014) ................................................................................17

*Lamar, Archer & Cofrin, Llp v. Appling*,
   584 U.S. 709 (2018) ..............................................................................................10

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..............................................................................................22

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ..............................................................................................14

*Macktal v. Chao*,
   286 F.3d 822 (5th Cir. 2002) ................................................................................15

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ................................................................................................7

*McNary v. Haitian Refugee Center, Inc.*,
   498 U.S. 479 (1991) ................................................................................................9

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*,
   467 F.3d 999 (6th Cir. 2006) ................................................................................14

*Nken v. Holder*,
   556 U.S. 418 (2009) .........................................................................................20, 21

*NRDC v. U.S. Dep't of Energy*,
   362 F. Supp. 3d 126 (S.D.N.Y. 2019) ...................................................................12

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
  473 U.S. 1301 (1985) ........................................................................................ 13-14

*Patel v. Garland*,
  596 U.S. 328 (2022) ..............................................................................................10

*Poursina v. USCIS*,
  936 F.3d 868 (9th Cir. 2019)................................................................................17

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020).................................................................9, 15, 21, 23

*Reno v. Catholic Soc. Servs., Inc.*,
  509 U.S. 43 (1993) ..................................................................................................9

*S. Yuba River Citizens League v. National Marine Fisheries Service*,
  804 F. Supp. 2d 1045 (E.D. Cal. 2011) ................................................................19

*Safety-Kleen Corp. v. EPA*,
  Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324 (D.C. Cir. Jan. 19, 1996)....................12

*Sampson v. Murray*,
  415 U.S. 61 (1974) ............................................................................................7, 12

*Sanchez v. Mayorkas*,
  593 U.S. 409 (2021) ................................................................................................4

*Scripps-Howard Radio v. FCC*,
  316 U.S. 4 (1942) ............................................................................................11, 12

*Sorenson v. Sec'y of Treasury*,
  475 U.S. 851 (1986) ..............................................................................................13

*State v. U.S. Bureau of Land Mgmt.*,
  277 F. Supp. 3d 1106 (N.D. Cal. 2017) ................................................................12

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ........................................................................................14, 17

*United States v. Texas*,
  599 U.S. 670 (2023) (Gorsuch, J., concurring) .....................................................11

*Webster v. Doe*,
  486 U.S. 592 (1988) ..............................................................................................14

*Winter v. NRDC*,
  555 U.S. 7 (2008) ............................................................................................7, 18

iv

*Youngstown Sheet and Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ..........................................................................................16

*Zhu v. Gonzales*,
  411 F.3d 292 (D.C. Cir. 2005) ..........................................................................14

## STATUTES

5 U.S.C. § 553 ....................................................................................................17

5 U.S.C. § 554 ....................................................................................................17

5 U.S.C. § 701(a)(1) ..........................................................................................2, 9

5 U.S.C. § 701(a)(2) ............................................................................................14

5 U.S.C. § 705 ....................................................................................1, 7, 10, 13

6 U.S.C. § 202(1)-(5) ..........................................................................................17

6 U.S.C. § 557 ......................................................................................................4

8 U.S.C. § 1103 ....................................................................................................4

8 U.S.C. § 1103(a)(1) ..........................................................................................18

8 U.S.C. § 1103(a)(3) ..........................................................................................18

8 U.S.C. § 1252(f)(1) ..........................................................................3, 10, 11, 12

8 U.S.C. § 1254a ..........................................................................................12, 21

8 U.S.C. § 1254a(a) ..............................................................................................4

8 U.S.C. § 1254a(b) ..............................................................................................1

8 U.S.C. § 1254a(b)(1) ......................................................................................1, 4

8 U.S.C. § 1254a(b)(1)(B)(i) ..............................................................................19

8 U.S.C. § 1254a(b)(1)(C) ......................................................................6, 16, 17

8 U.S.C. § 1254a(b)(2) ..........................................................................................1

8 U.S.C. § 1254a(b)(3) ........................................................................................18

8 U.S.C. § 1254a(b)(3)(A) ...........................................................................................5, 15

8 U.S.C. § 1254a(b)(3)(C) .............................................................................................4, 5

8 U.S.C. § 1254a(b)(5)(A) ...........................................................................2, 5, 8, 9, 10, 18

## Immigration Act of 1990:

Pub. L. No. 101-649, 104 Stat. 4978 ...................................................................................3

## OTHER AUTHORITIES

Debate on Chinese & Cent. Am. Temp. Protected Status Act, H.R. 45, 101st Congress, (1989)
   101 Cong. Rec. 25845 (1989) ......................................................................................20

*Designation of Haiti for Temporary Protected Status*,
   75 Fed. Reg. 3,476, 3,477 (Jan. 21, 2010) ......................................................................5

*Designation of Haiti for Temporary Protected Status*,
   86 Fed. Reg. 41,863 (Aug. 3, 2021) ................................................................................6

*Extension and Redesignation of Haiti for Temporary Protected Status*,
   88 Fed. Reg. 5,022 (Jan. 26, 2023) ................................................................................6

*Extension and Redesignation of Haiti for Temporary Protected Status*,
   89 Fed. Reg. 54,484 (July 1, 2024) ................................................................................6

*Extension and Redesignation of Haiti for Temporary Protected Status*,
   76 Fed. Reg. 29,000 (May 19, 2011) ..............................................................................5

*Extension of the Designation of Haiti for Temporary Protected Status*,
   77 Fed. Reg. 59,943 (Oct. 1, 2012) ................................................................................5

*Extension of the Designation of Haiti for Temporary Protected Status*,
   79 Fed. Reg. 11,808 (Mar. 3, 2014) ..............................................................................5

*Extension of the Designation of Haiti for Temporary Protected Status*,
   80 Fed. Reg. 51,582 (Aug. 25, 2015) ..............................................................................5

*Extension of the Designation of Haiti for Temporary Protected Status*,
   82 Fed. Reg. 23,830 (May 24, 2017) ..............................................................................5

*Foreign Affairs Functions of the United States*,
   90 Fed. Reg. 12,200 (Mar. 14, 2025) ........................................................................16, 21

*Partial Vacatur of 2024 [TPS] Decision for Haiti*,
   90 Fed. Reg. 10,511 (Feb. 24, 2025) ...........................................................................2, 6

vi

*Protecting the American People Against Invasion*, § 16(b),
90 Fed. Reg. 8,443 (Jan. 20, 2025) ...............................................................20, 22, 28

*Reconsideration and Rescission of Termination of the Designation of El Salvador for Temporary
Protected Status; Extension of the Temporary Protected Status Designation for El Salvador,
88 Fed. Reg. 40,282, 40,285 (June 21, 2023)* ....................................................................2, 18

*Termination of the Designation of Haiti for Temporary Protected Status*,
83 Fed. Reg. 2,648 (Jan. 18, 2018) ............................................................................6

H.R. Rep. No. 101-245 (1989) ........................................................................9

**INTRODUCTION**

Defendants Donald J. Trump, in his official capacity as President of the United States; the United States of America; the U.S. Department of Homeland Security (DHS); and Kristi Noem, in her official capacity as Secretary of Homeland Security (hereafter, Defendants), respectfully submit this response in opposition to Plaintiffs' Motion for Relief Pending Review.[1] (PI Mot.), ECF 38.

In 1990, Congress created the Temporary Protected Status (TPS) program to provide, on a discretionary basis, temporary status to aliens who cannot safely return in the short-term to their home nation because of a natural disaster, armed conflict, or other "extraordinary and temporary conditions in the foreign state." 8 U.S.C. § 1254a(b). The Secretary of Homeland Security may designate a country for TPS only if she determines that certain statutory criteria justifying the designation are met. When a country is designated, eligible aliens from that country who are present in the United States on the effective date of the designation and register with the Federal Government are temporarily protected from removal and receive authorization to work in the United States. The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. 8 U.S.C. § 1254a(b)(2), (b)(3)(A). Upon the Secretary's determination that statutory conditions for designation are no longer met, the statute requires that the Secretary "shall terminate" that designation, or in the opposite case, the designation "is extended for an additional period of 6 months," but the Secretary has discretion to extend for 12 or 18 months. § 1254a(b)(3)(B-C).

---

[1] Plaintiffs style their Motion as arising under 5 U.S.C. § 705 of the Administrative Procedure Act (APA), calling it a Motion for Postponement of Agency Action. Yet Plaintiffs cite the preliminary injunction standard throughout their Motion—(PI Mot.), ECF 38-1 at 2—and effectively ask this Court for injunctive relief. Defendants will refer to the Memorandum of Law attached to Plaintiffs' Motion as a Preliminary Injunction Motion (PI Mot.).

As the prior administration recognized, "the TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination."[2] Underscoring the Secretary's discretion, Congress barred "judicial review of any determination" of the Secretary "with respect to the designation, or termination or extension of a designation, of a foreign state under" the TPS statute. *Id.* § 1254a(b)(5)(A).

Plaintiffs (the Haitian Evangelical Clergy Association ("HECA"), Service Employees International Union – Local 32BJ ("SEIU Local 32BJ"), and nine individual TPS beneficiaries) challenge the 2025 Haiti TPS Partial Vacatur[3] under the Administrative Procedure Act (APA). The Partial Vacatur had the effect of shortening the existing TPS designation period from 18 months to 12 months by partially vacating a recent extension of the TPS designation period. The Secretary explained that, among other factors, discussed *infra* §II, "there is no discussion in the [2024 Extension] of why the 18-month period was selected in lieu of a [six] or [twelve] month period." 90 Fed. Reg. at 10,513; AR at 0003. Plaintiffs ask this court to postpone the effective date of Secretary Noem's Partial Vacatur "pending final resolution of this case on the merits." PI Mot. 11.

The Court should reject this extraordinary request. To start, Plaintiffs improperly characterize the Secretary's Partial Vacatur as a termination of Haiti's TPS designation (PI Mot 3); but like any "determination with respect to … a designation," the Vacatur is expressly shielded from judicial review, 8 U.S.C. § 1254a(b)(5)(A) ("There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief); 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the

---

[2] *Reconsideration and Rescission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Designation for El Salvador,* 88 Fed. Reg. 40,282, 40,285 (June 21, 2023) ("2023 El Salvador Reconsideration, Rescission and Extension").

[3] *Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025) ("Partial Vacatur").

extent" that other "statutes preclude judicial review."). Separately, another provision of the Immigration and Nationality Act (INA) bars any court other than the Supreme Court from granting Plaintiffs the relief they seek—a sweeping order that "restrain[s]" the Secretary from exercising her authority under the TPS statute and enforcing immigration law how she deems appropriate. 8 U.S.C. § 1252(f)(1).

Even if the Court had jurisdiction, Plaintiffs are unlikely to succeed on the merits. The Partial Vacatur, which shortened Haiti's latest extension and redesignation for TPS by six months, was a valid exercise of the Secretary's authority. It was based on her determination that her predecessor's extension and redesignation contained flaws that warranted the abbreviation, particularly in light of evidence regarding improving conditions in Haiti, and it was carefully considered.

Finally, Plaintiffs seek what amounts to a nationwide injunction. That request is vastly overbroad and contravenes equitable principles that require relief to be no more burdensome to the defendant than is necessary to provide the plaintiff relief. *California v. Yamasaki*, 442 U.S. 682, 702 (1979). Any relief the Court grants should be limited to the individual Plaintiffs.

## BACKGROUND

### I.    Statutory Background

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals.  Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security,[4] "after consultation

_____

[4] The statute originally vested the Attorney General with the power to make TPS designation,

3

with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected

[S]tatus," if she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;
>
> (B) … that—
>> (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,
>> (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and
>> (iii) the foreign state officially has requested designation under this subparagraph; or
>
> (C)  … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b)(1).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may

not be removed from the United States and are authorized to work for the duration of the country's

TPS designation, so long as they remain in valid TPS. 8 U.S.C. § 1254a(a), (c); *see Sanchez v.*

*Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations and any extensions thereof may not

exceed eighteen months.  *Id*. § 1254a(b)(2), (3)(C).

Consistent with the temporary nature of TPS, Congress dictated that the Secretary must

regularly review a country's TPS designation and must extend that designation for six months (or,

in the Secretary's discretion, for twelve or eighteen months), if she determines that the conditions

giving rise to the designation continue to be met. 8 U.S.C. § 1254a(b)(3)(C). If, however, the

---

extension and termination decisions. Congress transferred these powers to the Secretary of Homeland Security. *See* 8 U.S.C. § 1103; 6 U.S.C. § 557.

Secretary determines that the conditions giving rise to the designation are no longer met, she must terminate that country's designation. *Id.* § 1254a(b)(3)(B); 1254a(b)(1). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). If the Secretary "does not determine" that the country "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the [Secretary's] discretion … , a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C). The Secretary's TPS determinations are unreviewable. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

## II.    Factual Background

On January 21, 2010, former Secretary Janet Napolitano designated Haiti for TPS for a period of 18 months based on "extraordinary and temporary conditions" that prevented Haitian nationals from safely returning to Haiti due to the "conditions in Haiti following the [7.0 magnitude] earthquake" that struck Haiti in January 2010.[5] Various Secretaries extended and redesignated TPS for Haiti through 2018.[6] On January 18, 2018, then-Acting Secretary Elaine

---

[5] *Designation of Haiti for [TPS]*, 75 Fed. Reg. 3,476, 3477 (Jan. 21, 2010); Administrative Record ("AR") 0179-0182.
[6] *Extension and Redesignation of Haiti for [TPS]*, 76 Fed. Reg. 29,000 (May 19, 2011); *Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 (Oct. 1, 2012); *Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg. 11,808 (Mar. 3, 2014); *Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 (Aug. 25, 2015); *Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 (May 24, 2017); AR 0214-18, 0246-73.

Duke announced the termination of the designation, finding that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met."[7] The 2018 termination did not go into effect.[8] On August 3, 2021, former Secretary Alejandro Mayorkas newly designated Haiti on the basis of extraordinary and temporary conditions.[9] Thereafter, he extended and redesignated TPS for Haiti for 18 months, ending on August 3, 2024.[10] On July 1, 2024, former Secretary Mayorkas again extended and redesignated TPS for Haiti for 18 months, ending on February 3, 2026.[11]

On February 24, 2025, Secretary Noem partially vacated the 2024 Extension.[12] Contrary to Plaintiffs' contention, Secretary Noem did not "prematurely terminat[e]" Haiti's TPS designation. ECF No. 17-1 at 12. Rather, the Secretary shortened the existing designation period from 18 months to 12 months. In rolling back the 18-month extension, Secretary Noem explained that the extension "failed to evaluate" whether permitting Haitian nationals to remain temporarily is "contrary to the national interest of the United States." *See* 90 Fed. Reg. at 10,511-12; AR at 0001-02; *see also* 8 U.S.C. § 1254a(b)(1)(C). Secretary Noem also noted that "there is no discussion in the [2024 Extension] of why the 18-month period was selected in lieu of a [six] or [twelve] month period." 90 Fed. Reg. at 10,513; AR at 0003. She further relied on indications from the Department of State and DHS of "significant developments" that "might result in improvement in conditions," including United Nations involvement to "support the Haitian National Police in capacity building,

---

[7] *Termination of Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 (Jan. 18, 2018); AR 0466-72.
[8] *Partial Vacatur*, 90 Fed. Reg. 10,512, n.9 (describing judicial proceedings); AR at 0002.
[9] *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 (Aug. 3, 2021); AR 0183-0191.
[10] *Extension & Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 (Jan. 26, 2023); AR 0219-29.
[11] *Extension & Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54,484 (Jul. 1, 2024); AR 0230-42.
[12] *See Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025); AR 0001-05.

combatting gang violence and provid[ing] security for critical infrastructure." 90 Fed. Reg. at 10,513-14; AR at 0003-04. The Secretary considered the putative reliance interests of those impacted by the 2025 Haiti Vacatur but found that they were outweighed by the overriding interests and concerns articulated in the notice. *Id.*

## STANDARD OF REVIEW

The standards of review for relief under 5 U.S.C. § 705 and for preliminary injunctions are the same. *See Sampson v. Murray*, 415 U.S. 61, 80 (1974). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that the injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

## ARGUMENT

### I. This Court Lacks Jurisdiction to Grant Plaintiffs the Relief They Seek

#### A. Plaintiffs Lack Standing To Challenge a Possible Future Termination of Haiti's TPS Designation, and Their Claims Are Not Yet Ripe for Review

Federal courts can adjudicate only live cases or controversies. *See Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 160 (2016). To enter a federal court, a plaintiff must establish standing, including an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling" rather than conjectural. *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013). The plaintiff's case must also be "ripe"— not dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.

*Clapper*, 568 U.S. at 408. Here, Plaintiffs are HECA (alleging organizational standing on behalf of member religious organizations), SEIU Local 32BJ, (alleging associational standing on behalf of its Haitian members) and nine individual Haitian plaintiffs who are TPS beneficiaries. Compl., ECF No. 1 at ¶ 1, 13, 14. Neither HECA, SEIU Local 32BJ or the individual Haitian plaintiffs has a ripe claim, or standing, with respect to Haiti's TPS designation.

Plaintiffs do not presently have a ripe claim stemming from Secretary Noem's Partial Vacatur. The only effect of that decision was to advance the time at which Secretary Noem would reevaluate Haiti's TPS designation. Plaintiffs speculate— incorrectly— that the Secretary's Partial Vacatur has "prematurely terminat[ed]" Haiti's TPS designation. ECF No. 17-1 at 12; *see Texas v. United States*, 523 U.S. at 300; *Trump v. New York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually implement this general statement of policy is no more than conjecture at this time") (quotations omitted). But any challenge to a future termination of Haiti's TPS designation must challenge that termination—which has yet to occur.

For similar reasons, Plaintiffs likewise have not suffered a cognizable injury from the Secretary's decision to move up the end date of Haiti's latest TPS extension by six months. Again, that decision did not itself deprive them of anything; it simply moved up the deadline for reconsideration of Haiti's TPS status. The Secretary was required to reconsider Haiti's TPS designation regardless. That reconsideration has not yet occurred, and plaintiffs do not suffer an injury based on the date on which the reconsideration occurs.

### A. The TPS Statute Bars Plaintiff's Claims

The TPS statute forecloses "judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). Each of Plaintiffs' claims seeks judicial review of the 2025 Haiti

8

Vacatur. They argue, for example, that the Secretary "terminated Haiti's TPS designation before its previously fixed expiration date[,]" and that as a result, her decision is "in excess of statutory … authority." PI Mot. 2-3 (alterations in original). The 2025 Haiti Vacatur was a "determination" with respect to Haiti's TPS statute, and it falls within § 1254a's broad terms. Section 1254a thus deprives this Court of jurisdiction over all of Plaintiffs' claims, whether statutory or constitutional. *See id.*; 5 U.S.C. § 701(a)(1) (APA review unavailable when another statute bars jurisdiction); *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004); *see also* H.R. Rep. No. 101-245, at 14 (1989) (provision covers Secretary's "decisions with regard to granting, extending, or terminating TPS")The text permits no other conclusion. The key terms are "any," "determination," and "with respect to." Start with "determination." The Ninth Circuit assessed that term at length in *Ramos v. Wolf*, 975 F.3d 872, 889 (9th Cir. 2020), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023). Comparing the term "determination" in § 1254a(b)(5)(A) with similar uses of the word in provisions analyzed by the Supreme Court in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 486 n.6 (1991), and *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 53 (1993), the Ninth Circuit concluded that the provision "generally precludes direct review of the secretary's country-specific TPS determinations." *Ramos*, 975 F.3d at 891. That is consistent with the plain meaning of the word "determination." *See Merriam-Webster's Dictionary* (2025), Determination ("the act of deciding definitely and firmly"), *The American Heritage Dictionary* (2022), Determination ("The act of making or arriving at a decision[;] The decision reached[;] The settling of a question by an authoritative decision or pronouncement"); *Black's Law Dictionary* 450 (defining determination as "[t]o settle or decide by choice of alternatives or possibilities."); *Webster's New Collegiate Dictionary* 346 ("the act of deciding definitively and firmly"); *Webster's Encyclopedic Unabridged Dictionary* 393 ("the act of coming to a decision or of fixing or settling a purpose").

The statute's broad terms confirm its broad sweep. The word 'any' carries an expansive

meaning. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("of whatever kind"). And the phrase "with respect to" similarly "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); *see* Webster's New Collegiate Dictionary 1004 (9th ed. 1990) (defining "respect" as "a relation to or concern with something usually specified"). Indeed, the Supreme Court held that materially similar jurisdiction stripping language in the INA precludes a whole category of judicial review. *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter).

Secretary Noem's 2025 Haiti Vacatur falls well within § 1254a's jurisdictional bar. It is a country-specific decision relating to a TPS extension. For this reason, § 1254a(b)(5)(A) eliminates this Court's jurisdiction to review any APA claim regarding the Vacatur determinations, including those raised by Plaintiffs regarding the substance of the Federal Register Notice and facts that the Secretary considered. *See* PI Mot. 8-11.

### C. Section 1252(f) Precludes Plaintiffs' Requested Relief

By invoking 5 U.S.C. § 705 and asking this Court to "postpone the effective date of three challenged actions[,]" Plaintiffs also seek the type of coercive order prohibited by 8 U.S.C. § 1252(f)(1). PI Mot. 1. Section 1252(f)(1) bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the operation of the statutory provisions § 1252(f)(1) covers. Section 1254a is one of those covered provisions. *See* Def's Mot. to Dismiss and Opp. to Ptf's

Mot. for Partial Summ. J., ECF 37 at 11 (Immigration and Nationality Act enacted text prevails over United States Code).

Regardless of how Plaintiffs frame the relief sought, an order pursuant to 5 U.S.C. § 705 prevents—i.e. "enjoin[s] or restrain[s]"—DHS from implementing the Secretary's 2025 determination vacating, in whole or in part, the decisions to extend the TPS designation for Haiti and is thus jurisdictionally barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions.") (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). To "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)). An order postponing the effective date of implementation of the Secretary's determinations would be an order "restraining" federal officials. *Id*. at 550.

Plaintiffs argue that stays differ from injunctions. But that argument relies on the incorrect assumption that § 705 creates a new form of remedy—a district court stay of agency action that is distinct from an injunction. *Cf. United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). Section 705 creates no new remedy beyond the traditional equitable relief that existed at the time of the APA's passage. *See Scripps-Howard Radio v. FCC*, 316 U.S. 4, 16–17 (1942). There is no evidence that Congress intended to create a new species of remedy when it adopted § 705. Instead, Congress simply codified existing equitable remedies. Section 705 allows a court to issue only that "process" that

11

is "necessary and appropriate." And the Supreme Court long ago concluded "[t]he relevant legislative history of that section … indicates that it was primarily intended to reflect existing law" permitting courts of appeals to stay certain agency actions pending direct review authorized by statute in the same manner that appellate courts can in certain circumstances stay a district court decision pending appeal. *Sampson*, 415 U.S. at 68 n.15; *see Scripps-Howard Radio*, 316 U.S. at 9-10 ("a federal court can stay the *enforcement of a judgment pending the outcome of an appeal*" (emphasis added)). Section 705 was not intended "to fashion new rules of intervention for District Courts." *Id*. Thus, the text, context, legislative history, sources contemporary to the APA's passage, and relevant case law all show § 705 does nothing more than preserve traditional equitable relief—relief that 8 U.S.C. § 1252(f)(1) bars.

Plaintiffs do not seek an order that would operate on the individual removal proceedings or some other agency adjudication pending judicial review. Plaintiffs instead ask this Court to "prevent" the government from implementing its chosen "course of action" with respect to 8 U.S.C. § 1254a. *See Aleman Gonzalez*, 596 U.S. at 549, 551 (orders requiring government to "refrain from actions that (again in the Government's view) are allowed" by covered provisions are barred by § 1252(f)). Such an order, even if labeled a stay, is injunctive in effect and barred by 8 U.S.C. § 1252(f)(1). Thus, Plaintiffs' stay request is no different from an injunction – a similarity underscored by the preliminary-injunction standard applying to it.

Even if § 705 created some novel form of relief not covered by § 1252(f)(1), any preliminary relief here would still be a preliminary injunction because § 705 does not authorize relief here. The Partial Vacatur has already taken effect, so it cannot be postponed under § 705. Courts construing § 705 have concluded that the phrase "postpone the effective date" of an agency action authorizes the "postpon[ment of] the effective date of *a not yet effective rule*, pending judicial review"—but not suspension of a policy that is *already in effect*. *Ctr. for Biological*

*Diversity v. Regan*, 597 F. Supp. 3d 173, 204 (D.D.C. 2022) (quoting *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2–3 (D.C. Cir. Jan. 19, 1996)) (emphasis added); *accord, e.g.*, *NRDC v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 151 (S.D.N.Y. 2019) (same); *State v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1118 (N.D. Cal. 2017) (same). While these cases address an agency decision to "postpone the effective date," 5 U.S.C. § 705 uses identical language when referring to "the reviewing court ... postpon[ing] the effective date of an agency action." The use of an identical phrase in the first and second sentences of § 705 must be presumed to be intentional. *See, e.g.*, *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning."). Given its plain meaning, the language in 5 U.S.C. § 705 allowing a court or agency to "postpone the effective date" can only be read to mean that the statute allows the court "to put off until a future time," "defer," or "delay" the "operative" date of the agency action. *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/effective (last visited Mar. 2, 2025); *see also* Black's Law Dictionary Online (2d ed.), https://thelawdictionary.org/?s=postpone (last visited Mar. 3, 2025) (defining "postpone" as "to put off; defer; delay; continue"). One cannot "defer" or "put off" an action that has already occurred; thus, the issuance of a stay after the effective date of the challenged policy has already passed is beyond what § 705 permits. *See Florida v. Mayorkas*, No. 3:23-cv-09962-TKW-ZCB, 2023 WL 3567851, at *4 (N.D. Fla. May 16, 2023) (Section 705 stay unavailable because the policy was in effect at time of filing).

The Vacatur determination Plaintiffs seek to stay was published in February 2025 with an immediate effective date. *2025 Haiti Partial Vacatur*, 90 Fed. Reg. at 10,511 (published Feb. 24, 2025). Thus, the determinations are already in effect. *See 2025 Haiti Partial Vacatur*, 90. Fed. Reg. at 10,511 (The "decision is effective immediately"). That 5 U.S.C. § 705 is disjunctive,

permitting reviewing courts to "postpone the effective date of an agency action *or* to *preserve status or rights* pending conclusion of the review proceedings" (emphases added), does not change this result. An order staying a policy after it has already gone into effect thus does not preserve the status quo, but *alters* it. *See, e.g.*, *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (had the district court issued an order stopping rule from taking effect that would alter the "status quo"); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the implementation of new regulations" would "disturb[]" rather than preserve "the status quo").

### B.  APA Review Is Prohibited Because Actions Affecting TPS Determinations are Statutorily Committed to Agency Discretion

The APA also precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). While "rare," this section of the APA is used "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). A determination as to what constitutes the national interest is one of these rare circumstances. *See Trump v Hawaii*, 585 U.S. 667, 684-86 (2018) (explaining that where the President has statutory discretion to determine if an alien's entry "would be detrimental to the interests of the United States," federal courts should not inquire "into the persuasiveness of the President's justifications"). The determination of "national interest" is one that calls upon the Secretary's "expertise and judgment" and is not a manageable legal standard. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988). Because there is no manageable standard by which this Court can judge the Secretary's ultimate finding as to whether permitting TPS holders from Haiti would be contrary to the national interest, this Court lacks jurisdiction to review any determination based upon that finding. *See* 2025 Haiti Vacatur.

## II.    Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits

### A. The Secretary of Homeland Security Has the Inherent Authority to Vacate a Prior Extension of a Country's TPS Designation

Congress granted the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Even if this Court had jurisdiction to review the Secretary's determinations, Plaintiffs have not shown a likelihood of success on the merits that the Vacatur determinations are contrary to law.

When Congress authorized the Secretary to designate foreign countries for TPS, it committed several underlying policy questions to her discretion by statute and explicitly barred judicial review of sensitive foreign relations determinations. The Secretary's continuing border and national security responsibilities require her to evaluate any potential threats to the safety and security of the United States and permit her to change position, including reconsideration of a TPS determination. *See* 8 U.S.C. § 1254a(b)(3)(A) (The Secretary "… shall determine whether the conditions for such designation under this subsection *continue to be met*.") (emphasis added); *see also Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n. 9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide.").[13] The

---

[13] "It is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decision. *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (collecting cases); *see also Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other

statute requires the Secretary to review conditions within foreign states designated for TPS, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C). Indeed, the statute inevitably requires the Secretary to make determinations affecting the conduct of United States foreign policy. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). When the Executive Branch acts in the field of foreign policy "… pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up).

Here, Plaintiffs cursorily allege that the Secretary "terminated Haiti's TPS designation before its previously fixed expiration date[,]" and that as a result, her decision is ""in excess of statutory … authority". PI Mot. 2 (quotation as in original). Not only is this argument incorrect, because agencies have inherent authority to vacate their prior decisions, *see infra*, § II.a, but this Court lacks jurisdiction to review the analysis of any such vacatur.[14]

Plaintiffs' analysis also fails to acknowledge that the Secretary's determinations are rooted

---

agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration.").

[14] Plaintiffs characterize the Secretary's Partial Vacatur as a "termination" of Haiti's TPS designation. That is wrong. Secretary Noem partially vacated the 2024 Extension and rolled back the existing designation period from 18 months to 12 months. *See* 90 Fed. Reg. at 10,511; AR 0001-0005. The Secretary explained that rolling back the designation period was necessary in order to evaluate whether permitting Haitian nationals with TPS status to remain temporarily was "contrary to the national interest of the United States" and in compliance with the parameters set forth in 8 U.S.C. § 1254a(b)(1)(C). *See* 90 Fed. Reg. at 10,513; AR 0003. Only after such consideration will the government decide whether to extend or terminate Haiti's TPS designation on August 3, 2025. But even if Plaintiffs' characterization were right, the Court would still lack jurisdiction, as § 1254a likewise bars review of any termination of TPS.

in foreign policy considerations. *See Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States").[15] Congress requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States[,]" and, as the Secretary explained in her Vacatur determination, the 2024 extension decision lacked any meaningful discussion or justification in relation to that requirement. 8 U.S.C. § 1254a(b)(1)(C). *Cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts") (citing *Hawaii*, 585 U.S. at 684-86). Plaintiffs rely on *Ivy Sports Medicine v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014), asserting that because Congress established a statutory framework to reconsider a decision, there is no inherent authority. ECF No. 17-1, at 9-10. But in *Ivy Sports*, the court held that inherent reconsideration authority *does* exist where there is no statutory mechanism to correct errors. *See Ivy Sports*, 767 F.3d at 86. Here, the TPS statute requires the Secretary to determine whether permitting the class of aliens from a designated country to remain temporarily in the United States is contrary to the national interest, but the statute contains no procedural requirement for how to remedy a recently-issued TPS decision that failed to meaningfully justify the national interest determination. 8 U.S.C. § 1254a(b)(1)(C).

If Plaintiffs are right that the Secretary lacks reconsideration authority, no Secretary of

---

[15] *Cf. Determination: Foreign Affairs Functions of the United States*, 90 Fed. Reg. 12,200 (Mar. 14, 2025) ("[A]ll efforts, conducted by any agency of the federal government, to control the status, entry, and exit of people, and the transfer of goods, services, data, technology, and other items across the borders of the United States, constitute a foreign affairs function of the United States under the [APA], 5 U.S.C. § 553, 554.").

Homeland Security could ever vacate a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error or legal defect in the prior determination. The TPS statute does not mandate such a surprising and unworkable limitation of the Secretary's ability to fulfill her border and national security responsibilities and exercise her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C. § 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with evolving facts on the ground.

Indeed, former Secretary Mayorkas agreed he had the inherent authority to revisit a prior TPS decision when he vacated his predecessor's termination of the TPS designation of El Salvador. *2023 El Salvador Reconsideration, Recission, and Extension*, 88 Fed. Reg. 40,282. As Secretary Mayorkas explained, "[t]he TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination." *Id.* at 40,285 (citing 8 U.S.C. § 1254a(b)(3), (b)(5)(A)). Former Secretary Mayorkas's own analysis took a sweeping view of the statutory authority provided by Congress to the Secretary. *See id.* Here, Secretary Noem has exercised the same authority to revisit previous TPS-related determinations and, upon reconsideration, vacate the prior determination to restore the status quo preceding that decision.

Plaintiffs' argument that the Vacatur is impermissible because Secretary Noem's actions did not follow statutory termination procedures also fails. PI Mot. 3. In issuing the Haiti Vacatur, Secretary Noem indicated that her decisions provided an opportunity to make informed determinations and to clarify procedures. *2025 Haiti Partial Vacatur*, 90 Fed. Reg. at 10,514 ("The Secretary intends to conduct a review of current conditions in Haiti and make a new determination in due course."). Here, vacatur is a statutorily permissible exercise of the Secretary's authority to reconsider a prior decision and make a reasoned decision of her own.

The Secretary's Vacatur determination complied with the statute and was consistent with

her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws.

### III.    Any Harm Plaintiffs May Suffer Is Inherent in the Nature of TPS

A key requirement for obtaining a preliminary injunction is demonstrating irreparable harm. *Winter*, 555 U.S. at 20. "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (cleaned up). Plaintiffs have failed to make the requisite showing here.

First, Plaintiffs contend that their allegations of APA violations *per se* constitute irreparable harm. PI Mot. 5-6. However, the alleged harms only occur if it is determined that Defendants have violated Plaintiffs' statutory rights. Plaintiffs have not established a likelihood of success on the merits of those claims. *See* § II. Second, Plaintiffs allege numerous injuries resulting from the Vacatur determination that are inherent in the temporary nature of TPS, all of which assume that Defendants would ultimately terminate Haiti's TPS designation, which they have not done. For example, Plaintiffs allege that if they lose their TPS, Plaintiffs would face deportation to Haiti, "where both violence and human-rights abuse are pervasive while food, housing, and medical care are scarce." PI Mot. 4. While Plaintiffs focus on the burden that TPS beneficiaries will face should the Vacatur goes into effect, the underlying cause of this harm flows from the statute ("temporary" protected status) itself. *See* 8 U.S.C. § 1254a(b)(1)(B)(i) ("substantial, but temporary"), (b)(1)(B)(ii) ("unable, temporarily"), (b)(1)(C) ("extraordinary and temporary"), (g) ("remain in the United States temporarily"). The alleged harms would exist with or without the Vacatur at issue, as there is never a guarantee of indefinite TPS. *Id.* § 1254a(b)(2)(B).

Even where Plaintiffs' declarations have identified concrete harms, those harms will not

be remedied by the requested injunction. The assurances that Plaintiffs seek can only be truly safeguarded through legislative action. Plaintiffs have failed to show a likelihood of irreparable harm that could be remedied by this Court, and their request for a preliminary injunction should be denied. *See S. Yuba River Citizens League v. National Marine Fisheries Service*, 804 F. Supp. 2d 1045, 1057 (E.D. Cal. 2011) ("[T]he court declines to order an interim measure that will provide no benefit . . . in the interim period.").

## IV.    The Balance of the Equities and Public Interest Weigh Against Preliminary Injunctive Relief

Plaintiffs also fail to demonstrate that the remaining equitable factors tip the balance in their favor. As the Supreme Court has explained in the immigration context, the questions of harm to the defendant and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The government and the public share an interest in ensuring that the process established by Congress— under which the Secretary of Homeland Security has unreviewable authority to weigh the statutory factors governing TPS designations—is followed as Congress intended. The government has an "obligation to prioritize the safety, security, and financial and economic well-being of Americans." *Protecting the American People Against Invasion*, Exec. Order No. 14159, § 1, 90 Fed. Reg. 8,443. In this vein, "[e]nforcing [the n]ation's immigration laws is critically important to the national security and public safety of the United States." *Id.*

A decision to grant nationwide injunctive relief here would upset the separation of powers, frustrating the Executive Branch's ability to ensure the United States speaks with one voice in our foreign relations. *See Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"). When Congress enacted the TPS statute, it intended to ensure that the Executive Branch could offer temporary protection to citizens of

20

designated foreign states, and crucially, "actually set a time limit on their continued presence in the United States and to have their names, and to know their addresses … [to] take the necessary steps to send these individuals home" at the end. *See, e.g.*, 101 Cong. Rec. 25845 (1989) (Statement of Congressman Morrison during Floor Debate on H.R. 45, Chinese and Central American Temporary Protected Status Act of 1989).[16] While the Secretary has not terminated Haiti's TPS designation, injunctive relief would harm her ability to conduct the foreign relations functions *Arizona* recognized, namely, determining "whether it is appropriate to allow a foreign national to continue living in the United States[.]" *Arizona*, 567 U.S. at 409. The Secretary's ability to take future immigration actions is a key factor in the Executive Branch's ability to successfully negotiate with foreign states. *See Harisiades*, 342 U.S. at 588-89. A decision to grant injunctive relief would interfere with the Secretary's foreign relations activities to ensure tens of thousands of noncitizens whose presence is contrary to the national interest or who no longer require temporary protection are able to comply with their legal obligation to depart at the end of the designation period, rather than months later. *See* 8 U.S.C. §§ 1254a(b)(1)(C); (d)(2); *Determination: Foreign Affairs Functions of the United States*, 90 Fed. Reg. 12,200 (Mar. 14, 2025); *see also Ramos*, 975 F.3d at 903 (Nelson, J. concurring op.) (finding District Courts who grant nationwide injunctive relief "can halt an entire executive policy or Congressional mandate with one stroke of the judicial pen, without Congressional authority to do so.") It is well settled that the public interest is harmed by the continued presence of an aliens who no longer have authorization to remain in the United States. *Nken*, 556 U.S. at 436.

---

[16] Congressman Morrison was the Chairman of the House Judiciary Committee's Subcommittee on Immigration, and one of the House members of the Conference Committee on the Immigration Act of 1990.   H.R. Rep. No. 101-955, at 135 (1990) (Conf. Rep. on S. 358, Immigration Act of 1990).   Morrison was also a cosponsor of H.R. 4300, the House companion bill to S.358, the Immigration Act of 1990, which contained the TPS statute at issue.

The vacatur in question allowed the government to take necessary steps to "ensur[e] that designations of [TPS] are consistent with the provisions of […] 8 U.S.C. § 1254a[], and that such designations are appropriately limited in scope and made for only so long as may be necessary to fulfill the textual requirements of that statute." Exec. Order No. 14159, § 16(b), 90 Fed. Reg. at 8,446.

Ultimately, the injunctive relief Plaintiffs seek would frustrate Secretary Noem's substantive judgment as to how to implement the TPS statute in line with the government's established interests. *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of Government"). Congress has given the Secretary, in consultation with the appropriate agencies, the broad and unique authority to assess conditions in foreign countries and reach determinations regarding TPS. Where the Secretary follows the statutory requirements, it is in the public interest for the Court to deny the extraordinary remedy of preliminary injunctive relief and allow this matter to proceed along the ordinary course.

## V.    Plaintiffs' Requested Relief is Overbroad

Even if preliminary relief were warranted here, Plaintiffs have no basis to request universal relief benefitting non-parties. Under settled constitutional and equitable principles, the Court may not issue relief that is broader than necessary to remedy actual harm shown by specific Plaintiffs. *Gill v. Whitford*, 585 U.S. 48, 72 (2018); *Lewis v. Casey*, 518 U.S. 343, 358 n.5 (1996) ("[S]tanding is not dispensed in gross[.]"). A valid remedy "operate[s] with respect to specific parties," not with respect to a law "in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (quotation marks omitted). In this case, where sensitive foreign policy decisions of the Executive Branch are implicated, an injunction should go no further than redressing any cognizable injuries to individual named plaintiffs. *See Arizona*, 567 U.S. at 409 (2012). Universal injunctive relief here circumvents

the requirement to limit relief to the Parties. Plaintiffs have not filed a putative class action and have made no effort to explain why they should be entitled to such sweeping relief. Granting universal relief would encourage forum shopping and short-circuit the consideration and decisions of other district or circuit courts considering similar challenges. *See DHS v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring); *see also Ramos*, 975 F.3d. at 902–06 (Nelson, J., concurring); *Doe v. Trump*, 2025 WL 485070, at *15 (D. Mass. Feb. 13, 2025) ("injunctive relief should be tailored to the parties before it.").

## CONCLUSION

This Court lacks jurisdiction to review the determination by Secretary Noem relating to Haiti's TPS and to grant Plaintiffs' requested relief. Even if this Court were to find that neither of the two clear jurisdictional bars applies, Plaintiffs' claims fail on the merits and the remaining factors do not support issuance of equitable relief.

Dated: April 29, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

SARAH L. VUONG
Assistant Director

WILLIAM H. WEILAND
Senior Litigation Counsel

ANNA L. DICHTER
JEFFREY HARTMAN
LAUREN BRYANT
CATHERINE ROSS
LUZ MARIA RESTREPO
Trial Attorneys

*/s/ Eric M. Snyderman*
ERIC MICHAEL SNYDERMAN (Va. 99563)
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 742-7079
Email: Eric.M.Snyderman@usdoj.gov

*Attorneys for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF.

Dated: April 29, 2025

_/s/ Eric M. Snyderman_____
ERIC MICHAEL SNYDERMAN
Trial Attorney