UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------x

HAITIAN EVANGELICAL CLERGY
ASS'N, *et al.*,

                        Plaintiffs,

                        v.

DONALD J. TRUMP, President of the         Civil Action No.
United States of America, *et al.*,            1:25-cv-1464 (BMC)


                        Defendants.

---------------------------------------------x


# DEFENDANTS' REPLY TO IN SUPPORT OF CROSS-MOTION TO DISMISS

| | |
|---|---|
| YAAKOV M. ROTH | LAUREN BRYANT |
| Acting Assistant Attorney General | CATHERINE ROSS |
| | ERIC SNYDERMAN |
| SARAH L. VUONG | ANNA L. DICHTER |
| Assistant Director | JEFFREY HARTMAN |
| | AMANDA SAYLOR |
| WILLIAM H. WEILAND | CARLTON F. SHEFFIELD |
| Senior Litigation Counsel | Trial Attorneys |
| | U.S. Department of Justice, Civil Division |
| | Office of Immigration Litigation |
| | P.O. Box 868 Ben Franklin Station |
| | Washington, D.C. 20044 |
| | |
| | *Attorneys for Defendants* |

May 6, 2025

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    I.    This Court Lacks Jurisdiction Over Plaintiffs' Entire Action ..................................... 1

        A.    Plaintiffs Lack Standing and Their Claims Are Not Yet Ripe for Review……. 1

        B.    The TPS Statute Bars Plaintiffs' Claims.............................................................. 2

        C.  8 U.S.C. § 1252(f)(1) Bars the Relief Plaintiffs Seek…..……………………… 6

    II.    Even If It Had Jurisdiction, the Court Should Dismiss All of Plaintiffs' Claims Under Fed. R. Civ. P. 12(b)(6)................................................................................... 7

        A.    APA ...................................................................................................................... 7

        B.    Due Process ........................................................................................................ 8

        C.    Equal Protection ................................................................................................. 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abbott v. Perez*,
 585 U.S. 579 (2018) ...........................................................................................................6

*Albertson v. FCC*,
 182 F.2d 397 (D.C. Cir. 1950) ...........................................................................................7

*Ali v. Fed. Bureau of Prisons*,
 552 U.S. 214 (2008) ...........................................................................................................3

*Arbaugh v. Y&H Corp.*,
 546 U.S. 500 (2006) ...........................................................................................................4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...........................................................................................................7

*Biden v. Texas*,
597 U.S. 785 (2022) ............................................................................................................6

*Chao v. Russell P. Le Frois Builder, Inc.*,
 291 F.3d 219 (2d Cir. 2002) ..........................................................................................7, 8

*Dan's City Used Cars, Inc. v. Pelkey*,
 569 U.S. 251 (2013) ...........................................................................................................3

*Dep't of Homeland Security v. Regents of the Univ. of California*,
 591 U.S. 1 (2020) .............................................................................................................10

*Dep't of State v. Muñoz*,
 602 U.S. 889 (2024) ...........................................................................................................8

*Galvez v. Jaddou*,
 52 F.4th 821 (9th Cir. 2022) ...............................................................................................6

*Garland v. Aleman Gonzalez*,
 596 U.S. 543 (2022) ...........................................................................................................6

*Harisiades v. Shaughnessy*,
 342 U.S. 580 (1952) ...........................................................................................................9

*Harris v. Mills*,
 572 F.3d 66 (2d Cir. 2009) .................................................................................................7

*Ivy Sports Med., LLC v. Burwell*,
   767 F.3d 81 (D.C. Cir. 2014) (Kavanaugh, J.) ...................................................................7

*Lamar, Archer & Cofrin, LLP v. Appling*,
   584 U.S. 709 (2018) ..........................................................................................................3

*Macktal v. Chao*,
   286 F.3d 822 (5th Cir. 2002)..............................................................................................7

*Mathews v. Diaz*,
   426 U.S. 67 (1976) .............................................................................................................9

*Rajah v. Mukasey*,
   544 F.3d 427 (2d Cir. 2008)...............................................................................................9

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .........................................................................................................1, 2

*McNary v. Haitian Refugee Center, Inc.*,
   498 U.S. 479 (1991) ...........................................................................................................5

*Nakka v. U.S. Citizenship & Immigr. Servs.*
   111 F.4th 995 (9th Cir. 2024)..............................................................................................5

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ...........................................................................................................2

*Nat'l Temp. Protect. Stat. Alliance v. Noem*,
   3:25-cv-01766-EMC (N.D. Cal. Mar. 24, 2025).................................................................4

*Ramos v. Wolf*,
   975 F.3d 872 (9th Cir. 2020), *vacated*, 59 F.4th 1010 (9th Cir. 2023) ........................... 4-5, 6, 8

*Texas v. United States*,
   523 U.S. 296 (1998) ...........................................................................................................2

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ..........................................................................................................9

*Trump v. New York*,
   592 U.S. 125 (2020) ...........................................................................................................1

*United States v. Tohono O'odham Nation*,
   563 U.S. 307 (2011) ...........................................................................................................3

*Village of Arlington Heights v. Metro. Hous. Devpt. Corp.*,
　429 U.S. 252 (1977) ..................................................................................................................10


**STATUTES**

8 U.S.C. § 1254a.........................................................................................................................6

8 U.S.C. § 1254a(b)(3)..........................................................................................................2, 3, 7

8 U.S.C. § 1254a(b)(5)(A) ...........................................................................................1, 2, 3, 4, 5

8 U.S.C. § 1252(a)(2)(B)(i)............................................................................................................5

8 U.S.C. § 1252(f)(1) ................................................................................................................1, 6


**RULES**

Fed. R. Civ. P. 12(b)(1)................................................................................................................10

Fed. R. Civ. P. 12(b)(6) .................................................................................................................1

**OTHER AUTHORITIES**

*Partial Vacatur of 2024 [TPS] Decision for Haiti*,
　90 Fed. Reg. 10,511 (Feb. 24, 2025)................................................................................1, 2, 7

*[TPS]: Extension of the Designation of South Sudan*,
　90 Fed. Reg. 19,217 (May 6, 2025)………………………………………………………….10

*Reconsideration and Rescission of Termination of the Designation of El Salvador for Temporary
　Protected Status; Extension of the Temporary Protected Status Designation for El Salvador*,
　88 Fed. Reg. 40,282, 40,285 (June 21, 2023) ........................................................................ 7-8

*Termination of the Designation of Haiti for Temporary Protected Status*,
　83 Fed. Reg. 2,648 (Jan. 18, 2018) ...........................................................................................6

H.R. Rep. No. 101-245 (1989)........................................................................................................2

## INTRODUCTION

The Court should dismiss Plaintiffs' Complaint in its entirety for lack of jurisdiction. First, Plaintiffs' claims are unripe for review because they are based on speculation that the Secretary of Homeland Security ("Secretary") may, at some point in the future, terminate Haiti's Temporary Protected Status designation. Even if Plaintiffs' claims presented a ripe controversy, the Immigration and Nationality Act ("INA") expressly precludes judicial review over the "termination or extension of a designation," 8 U.S.C. § 1254a(b)(5)(A), and a separate section, 8 U.S.C. § 1252(f)(1), bars this Court from granting the relief Plaintiffs seek. Alternatively, the Court should dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) because none of Plaintiffs' claims are plausible on their face.

## ARGUMENT

### I. THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' ENTIRE ACTION

#### A. Plaintiffs Lack Standing and Their Claims Are Not Yet Ripe for Review

Haiti's TPS designation remains effective, and the Secretary has not determined whether to extend or terminate it. *Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511, 10,514 (Feb. 24, 2025) ("USCIS will not recall TPS-related documentation previously issued with February 3, 2026, expiration dates and those documents remain valid through the new TPS Haiti designation period expiring on August 3, 2025."). At present then, Plaintiffs' claim is not ripe, and they lack standing because they have not suffered a concrete injury. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105 (1998) (dismissal was required where a complaint failed to establish "the third test of standing, redressability"); ECF No. 37 at 15-16.

Plaintiffs' opposition confirms as much. The President's stated goal of enforcing immigration law (ECF No. 44 at 9) cannot establish ripeness because "[a]ny prediction how the Executive Branch might eventually implement [a] general statement of policy is no more than conjecture at this time," *Trump v. New York*, 592 U.S. 125, 131 (2020). And Plaintiffs' planning for a *possible* future termination of TPS (ECF No. 44 at 10-11) cannot establish standing because the Partial Vacatur does not itself affect their "day-to-day affairs and no irremediably adverse

1

consequences flow[] from requiring a later challenge[.]" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003).

Plaintiffs' related assertion (at 8-9) that the Secretary effectively terminated Haiti's TPS designation because the Partial Vacatur affected their work authorization and risk of removal lacks merit. Plaintiffs properly do not contest that Haitian TPS beneficiaries continue to have work authorization and will not be deported while Haiti remains designated for TPS. None of those potential occurrences will occur sooner than the end of Haiti's current TPS extension. And none of those potential occurrences will occur unless Secretary Noem makes a future decision to terminate Haiti's TPS designation. Moreover, because TPS is temporary, the termination of a country's TPS designation is a possibility beneficiaries must always expect. *See* 8 U.S.C. § 1254a(b)(3)(C) (limiting TPS designations to 18 months); *Partial Vacatur*, 90 Fed. Reg. 10,514. Plaintiffs fall back on professing certainty that the Secretary will terminate Haiti's TPS designation when the current extension expires. ECF 44 at 8-9. But Plaintiffs' predictions about that possible future action cannot change the fact that their complaint "rests upon contingent future events that may never occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). At bottom, Plaintiffs are trying to challenge a decision that has not yet been made. The complaint thus must be dismissed for lack of standing and lack of ripeness. *See Steel Co.*, 523 U.S. at 105-07.

### B. The TPS Statute Bars Plaintiffs' Claims

The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). Jurisdictional bars can scarcely be any clearer—or more explicit—than this. This provision plainly bars all of Plaintiffs' claims, whether statutory or constitutional, each of which challenges Secretary Noem's vacatur and termination. *Id.*; *see also* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.") (emphasis added).

2

The statute's broad terms confirm its broad sweep. The term "determination" covers the Secretary's decisions regarding TPS designations. *See* Black's Law Dictionary 450 (6th ed. 1990) (defining determination as "[t]o settle or decide by choice of alternatives or possibilities."); Webster's New Collegiate Dictionary 346 (1990) ("the act of deciding definitively and firmly"); Webster's Encyclopedic Unabridged Dictionary 393 (1990) ("the act of coming to a decision or of fixing or settling a purpose"). If that were not enough, the statute expands its scope by sweeping in "any" determination "with respect to" a TPS designation, extension, or termination—broad terms that reflect a broad sweep. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (discussing breadth of "any"); *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018) (discussing breadth of "with respect to"); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); *see also United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011) (observing that when Congress has stripped a court of jurisdiction "in respect to" particular claims, it is to be construed as a "broad prohibition").

Plaintiffs incorrectly assert that the Secretary's Partial Vacatur is a "termination" under 8 U.S.C. § 1254a(b)(3), but it is not, *infra* § II.A. *See* ECF No. 44 at 23; *see also* ECF No. 1 at ¶¶ 131-33, 135-38. Moreover, Plaintiffs' logic, if followed, would lead straight into the TPS statute's bar on judicial review, which explicitly covers termination of a designation. 8 U.S.C. § 1254a(b)(5)(A).

Plaintiffs also try to rewrite the statute by arguing that the only determinations covered by this expansive phrase are "determination[s] whether the conditions for … designation … continue to be met" and pointing out that the Partial Vacatur is not a determination about whether Haiti continues to meet the requirements for TPS designation. ECF No. 44 at 22 (alterations accepted). As just explained, they are right about what the Secretary has yet to decide: She has not yet made the ultimate determination whether to extend or terminate Haiti's TPS designation. That means that their claims, which depend on the conclusion the Secretary ultimately reaches, are not yet ripe. But they are wrong about the statute's scope: the decision to partially vacate a TPS extension is

3

undeniably a determination *with respect to* a TPS extension. It is a determination about how long the TPS extension should last, and it is therefore plainly covered by the jurisdictional bar. This argument undermines the ripeness of Plaintiffs' claims but leaves them subject to the TPS statute's bar on judicial review.

Plaintiffs' reliance on a purported concession by the Government that the TPS statute did not bar the District Court in *National [TPS] Alliance v. Noem*, 3:25-cv-01766-EMC (N.D. Cal. Mar. 24, 2025), from considering legal questions surrounding the interpretation of the statute, is misplaced. *See* ECF No. 44 at 19-20. The Government made no such concession. To the contrary, the government argued in that case, just as here, that Secretary Noem's Vacatur of the 2025 Extension is "swept up under § 1254a(b)(5)(A)[']s]" language barring judicial review of "any determination" and thus eliminates jurisdiction. Hrg. Tr. 49-50, ECF 91, *Nat'l TPS Alliance v. Noem*, No. 3:25-cv-01766. In the exchange on which Plaintiffs focus, the Government began by discussing the Ninth Circuit and district court decisions in *Ramos* that had previously construed the statute to permit some review. *Id.* at 48-50 (discussing "the Ninth Circuit in *Ramos*" and the judge's previous decision). In this context, the Government simply recognized the principle that courts "have an independent obligation to determine whether subject matter jurisdiction exists[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006); Hrg. Tr. at 48-51. On that point, the statute could not be more clear: there is no judicial review of the Partial Vacatur because it is a "determination with respect to the designation, or termination of extension of a designation." Plaintiffs' contrary assertions are mistaken.

Plaintiffs incorrectly argue that courts are permitted to consider decisions like the Partial Vacatur, "even if" that decision was "a 'determination' with respect to country conditions or national interest." *See* ECF No. 44 at 22; 8 U.S.C. § 1254a(b)(5)(A); *Ramos v. Wolf*, 975 F.3d 872, 891 (9th Cir. 2020), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023). But contrary to Plaintiffs' assertion that the INA is silent about precluding APA review, the statute could scarcely be clearer about barring judicial review of "any determination" "with respect to" a TPS designation, extension, or termination. 8 U.S.C. § 1254a(b)(5)(A); ECF No. 44 at 21. And, in one case Plaintiffs

4

cite, the Ninth Circuit held that § 1254a(b)(5)(A) "generally precludes courts from inquiring into the underlying considerations and reasoning employed by the Secretary in reaching her country-specific TPS determinations." *Ramos*, 975 F.3d at 891. Plaintiffs' reliance on *Nakka v. U.S. Citizenship & Immigr. Servs.* for the proposition that procedural matters are reviewable is misplaced because *Nakka* never addressed the TPS statute. 111 F.4th 995, 1009 (9th Cir. 2024) (analyzing 8 U.S.C. § 1252(a)(2)(B)(i)'s bar on judicial review of *individual* requests for relief from removal).

Furthermore, Plaintiffs' reliance on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492 (1991), is unavailing because *McNary* construed a different statute, and *McNary*'s conclusion that litigants could raise "collateral challenges to unconstitutional practices and policies," *McNary*, 498 U.S. at 479, was predicated on the fact that, under the statute at issue, Congress barred judicial review only of "a determination respecting an application." *Ramos*, 975 F.3d at 889 (quoting former 8 U.S.C. § 1160(e)(1)). Thus, *McNary* "sheds little light as to what precisely constitutes such an unreviewable TPS determination." *Ramos*, 975 F.3d at 889. Comparing § 1254a(b)(5)(A) to the statute analyzed in *McNary*, the Ninth Circuit held that "the statute shields from judicial scrutiny" "specific TPS decisions and their underlying rationale[.]" *Ramos*, 975 F.3d at 891.

Plaintiffs' rejoinder that their challenge is merely procedural, and that prevailing would not compel an extension of Haiti's TPS designation, is incorrect and immaterial. It is incorrect because Plaintiffs challenge a single, country-specific determination to shorten Haiti's TPS designation, not some general policy or practice; they dispute the Secretary's *substantive* authority to reconsider TPS determinations; and if they prevail, Haiti's TPS designation will be prolonged. And it is immaterial because neither the TPS statute nor the broad definition of judicial review distinguishes between procedural and substantive challenges. The Court lacks jurisdiction and should dismiss.

### C. 8 U.S.C. § 1252(f)(1) Bars the Relief Plaintiffs Seek

Regardless of their characterization of their requested APA relief (ECF No. 44 at 25-27), Plaintiffs impermissibly seek to "enjoin or restrain" the Secretary's Partial Vacatur, and so, this Court must dismiss due to its inability to grant redress. *See Ramos*, 975 F.3d at 892-94 (finding Plaintiffs who seek an APA set-aside "appear to seek direct relief from the challenged decisions, rather than collateral relief from an allegedly unlawful agency practice."). Plaintiffs fail to demonstrate that § 1252(f)(1) is inapplicable to § 1254a, ECF No. 44 at 24-25, because it plainly applies. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022) (discussing the scope of § 1252(f)(1) at enactment); ECF No. 37 at 18-19.

Plaintiffs' assertion that APA relief "does not 'enjoin or restrain' anything" fails. ECF No. 44 at 25. The Supreme Court has held that 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). Plaintiffs impermissibly seek to do just that by preventing the Secretary from reviewing Haiti's TPS designation to ensure it is consistent with the statutory criteria until February 2026. ECF No. 44 at 23, 27. *See Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)) ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action). Seeking to downplay the significance of that intrusion, Plaintiffs contend that there are "material differences" between injunctions and APA relief but, regardless of label, APA relief would impermissibly "restrain" the Secretary from exercising her authority under the TPS statute. ECF No. 44 at 26; *cf. Abbott v. Perez*, 585 U.S. 579, 595 (2018) ("we have not allowed district courts to shield their orders from appellate review by avoiding the label injunction") (cleaned up). The INA prohibits the relief that Plaintiffs seek here.

## II. Even If It Had Jurisdiction, the Court Should Dismiss All of Plaintiffs' Claims Under Fed. R. Civ. P. 12(b)(6)

In opposing dismissal, Plaintiffs repeatedly invoke the notion that they are "not required 'to show' anything to avoid dismissal, and that they need "only allege facts sufficient 'to state a claim to relief that is plausible on its face.'" ECF No. 44 at 22. But as the Second Circuit has observed, "[w]hether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). In this case, common sense dictates that none of Plaintiffs' claims have a plausible basis for succeeding.

### A. APA

Plaintiffs' APA claim necessarily fails because it rests entirely on Plaintiffs' attempt to relabel the Secretary's Partial Vacatur as a "termination" under 8 U.S.C. § 1254a(b)(3). *See* ECF No. 44 at 23; *see also* ECF No. 1 at ¶¶ 131-33, 135-38. Instead, exercising her inherent authority under the INA, the Secretary reconsidered and partially vacated the prior 2024 TPS Haiti Extension and Redesignation. *Partial Vacatur*, 90 Fed. Reg. at 10,514.

Plaintiffs' APA claim rests on the incorrect premise that the Secretary lacks inherent authority to reconsider a prior decision. But courts have frequently recognized that agencies hold such inherent statutory authority. *See Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n.9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review") (cleaned up); *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (Kavanaugh, J.) ("administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion").[1] And the Secretary has previously asserted and exercised this authority with respect to TPS. *See 2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg.

---

[1] "It is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decision. *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide"); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (collecting cases).

7

40,282, 40,285 (2023) (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination" by vacating his predecessor's termination of El Salvador's TPS designation). Plaintiffs' assertion that Partial Vacatur is "in excess of statutory authority" under the APA is clearly meritless. *See* ECF No. 44 at 28; *see also Ramos*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). After all, the Secretary's continuing border and national security responsibilities require her to evaluate potential threats to the safety and security of the United States and permit her to change position, as she did here. *See Chao*, 291 F.3d at 229 n.9. The INA in general, and its TPS statute in particular, authorize the Partial Vacatur. Nor, as explained in the Government's previous brief and below, were determinations underlying the Partial Vacatur unreasonable. *See* ECF No. 37 at 16-18.

B. **Due Process**

Plaintiffs' procedural due process claim – that Defendants "prematurely terminated" TPS – is based on the same incorrect premise that dooms their APA claim. *See supra*, at §II.A. As to their substantive due process claim, apart from relying on a meritless claim of discriminatory animus, *see infra*, at §II.C., Plaintiffs' Complaint fails to plausibly allege that the Partial Vacatur has any bearing on a "fundamental liberty interest." *Department of State v. Muñoz*, 602 U.S. 889, 910 (2024) (an assertion that a fundamental right is at stake must begin with a "careful description of the asserted fundamental liberty interest."). Moreover, as the government explained in its motion to dismiss, Plaintiffs' due process claim fails as a matter of law because it is "premised upon a hypothetical 'termination' of Haiti's TPS designation which *has not taken place*." ECF 37 at 27. In their opposition, Plaintiffs argue that the "Partial Vacatur" is "currently inflicting significant harm on Plaintiffs." ECF No. 44 at 29. But the two declarations on which they primarily rely for this assertion speak entirely in conditional terms and only describe harm the declarants believe they would experience *if* TPS is terminated. ECF No. 17-2 at ¶¶ 16-29 (describing "Impact if TPS for Haiti ends"); ECF No. 17-3 at ¶¶ 15-24 (same). In sum, contrary to Plaintiffs' assertion, their

Complaint does *not* adequately allege a due process claim "based on what the Secretary has already done, not what she might do in the future." ECF No. 44 at 29.

### C. Equal Protection

In arguing that they advanced a plausible Equal Protection claim, Plaintiffs offer several reasons why they believe the rational basis review applied by the Supreme Court in *Trump v. Hawaii*, 585 U.S. 667 (2018), is inapplicable here. ECF No. 44, at 29-30. They first contend that *Hawaii*'s deferential review standard only applies to "foreign nationals living outside the U.S. who had 'no constitutional right of entry.'" *Id*. at 30. But the Court did not hint that the standard of review applied *only* in that circumstance; instead, it emphasized that rational basis review applies "across different contexts and constitutional claims." 585 U.S. at 703. *Hawaii* also approvingly cited *Rajah v. Mukasey*, 544 F.3d 427, 433 (2d Cir. 2008), which applied rational basis review to equal protection claims brought by aliens of certain nationalities *from within the United States* who were required to register in the wake of the terrorist attacks on September 11, 2001. 585 U.S. at 704. In earlier constitutional challenges brought by aliens *already within* the United States as well, the Supreme Court repeatedly cautioned against applying a rigorous standard of review. *See Galvan v. Press*, 347 U.S. 522, 531 (1954); *Harisiades v. Shaughnessy*, 342 U.S. 580, 590 (1952). Plaintiffs next emphasize that *Hawaii* involved "a very broad grant of statutory discretion," ECF No. 44 at 24, but in so doing, ignore Congress's explicit statutory choice to shield TPS determinations from judicial review. 8 U.S.C. § 1254a(b)(5)(A). Finally, Plaintiffs claim that *Hawaii's* use of rational basis review was rooted in the President's invocation of "national security." ECF No. 44, at 30. But in summarizing the "upshot of [its] cases" on the appropriate standard of review, *Hawaii*, 585 U.S. at 704, the Court quoted directly from *Mathews*, a case where the Court upheld the government's limitation on eligibility for federal medical insurance for resident aliens as not "wholly irrational," even in the absence of any stated national security concerns. *Mathews v. Diaz*, 426 U.S. 67, 83 (1976). Plaintiffs have therefore failed to present any convincing reason why rational basis review under *Hawaii* should not apply.

Even under heightened scrutiny, Plaintiffs' Equal Protection claim necessarily fails because they have not alleged a plausible claim that "discriminatory animus" motivated the Secretary's Partial Vacatur. Plaintiffs' attempt to rely on statements by President Trump from the recent presidential campaign should be rejected here for the same reason the Supreme Court rejected reliance on similar statements in *DHS v. Regents*: "even as interpreted by [plaintiffs], these statements – remote in time and made in unrelated contexts – do not qualify as 'contemporary statements' probative of the decision at issue." 591 U.S. 1, 35 (2020) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977)). Indeed, although Plaintiffs go to great lengths to locate discriminatory animus on the part of the President and members of his Administration, none of the statements they highlight speak to the reasons for the Partial Vacatur decision, *see* ECF No. 1, at ¶¶ 66-91. In any event, the statements that appear in the Complaint simply reflect the Executive's general view that the prior Administration's border policies encouraged a mass illegal influx of aliens and created an unsustainable situation. The untenable reasoning advanced by Plaintiffs would unjustifiably require concluding that these statements necessarily vitiate *every* ensuing immigration policy of this administration on Equal Protection grounds.[2]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or alternatively, under Fed. R. Civ. P. 12(b)(6), because Plaintiffs have failed to state a plausible claim for relief.

---

[2] The fact that the Secretary recently allowed for a six-month extension of TPS as to South Sudan further undermines Plaintiffs' claims that the Secretary's actions are based on "animus towards immigrants, especially non-white immigrants." ECF No. 44, at 31; *see [TPS]: Extension of the Designation of South Sudan*, 90 Fed. Reg. 19,217 (May 6, 2025).

Dated: May 6, 2025

| | |
|---|---|
| YAAKOV M. ROTH<br>Acting Assistant Attorney General | LAUREN BRYANT<br>CATHERINE ROSS<br>ANNA L. DICHTER |
| SARAH L. VUONG<br>Assistant Director | ERIC SNYDERMAN<br>JEFFREY HARTMAN<br>CARLTON F. SHEFFIELD |
| WILLIAM H. WEILAND<br>Senior Litigation Counsel | AMANDA SAYLOR<br>Trial Attorneys |

/s/ Eric M. Snyderman
ERIC MICHAEL SNYDERMAN (Va. 99563)
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 742-7079
Email: Eric.M.Snyderman@usdoj.gov

*Attorneys for the Defendants*


TO:   Raymond Audain
      *Counsel for Plaintiff*
      GISKAN, SOLOTAROFF & ANDERSON, LLP
      New York
      90 Broad Street
      Second Floor
      New York, NY 10004
      646-835-0773

      Ira J Kurzban
      *Counsel for Plaintiffs*
      KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
      131 Madeira Avenue
      Coral Gables, FL 33134
      305-444-0060

1

Madisen Hursey
Geoffrey Pipoly
Alexa Jane Thein
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER
161 N Clark St
Ste 4300
Chicago, IL 60607
847-894-3712

Andrew Tauber
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, DC 20004
202-508-6111

Sejal Zota
*Counsel for Plaintiffs*
JUST FUTURES LAW
1629 K Street N.W.
Suite 300
District of Columbia, DC 20006
919-698-5015