IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

HAITIAN EVANGELICAL CLERGY
ASSOCIATION; SERVICE
EMPLOYEES INTERNATIONAL
UNION – LOCAL 32BJ; SABINA BADIO
FLORIAL; YOUDELAINE DORCIN;
ROBERT JEAN ALIX ERINAC;
RACHELLE GUIRAND; DIEU
YOLNICK JEUNE CADET; AUDOINE
AMAZAN; GERALD MICHAUD;
NADEGE JOSEPH MICHAUD; and
MARIE WILDRIGUE ERINAC MIOT,

    *Plaintiffs*,

    v.

DONALD J. TRUMP, President of the
United States of America; UNITED
STATES OF AMERICA; THE
DEPARTMENT OF HOMELAND
SECURITY; and KRISTI NOEM,
Secretary of Homeland Security,

    *Defendants*.

Case No. 1:25-cv-01464-BMC

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RELIEF PENDING REVIEW**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i
TABLE OF AUTHORITIES ........................................................................................................ ii
ARGUMENT ..................................................................................................................................1
I.        Plaintiffs are entitled to relief under 5 U.S.C. § 705. ..........................................................1
           A.     Plaintiffs are likely to succeed on the merits. ...............................................................1
           B.     Plaintiffs are likely to suffer irreparable harm absent relief. .....................................2
           C.     Postponing the effective date of the "partial vacatur" is in the public interest. .........3
II.       The Court has authority to grant relief under 5 U.S.C. § 705. ...........................................5
III.     Postponement under § 705 is the appropriate remedy.........................................................9
CONCLUSION .............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................................5

*Baker v. Carr*,
  369 U.S. 186 (1962) ............................................................................................7

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) ..........................................................................................10

*El-Shifa Pharm. Indus. Co. v. United States*,
  607 F.3d 836 (D.C. Cir. 2010)............................................................................7

*Griffin v. HM Fla.-ORL, LLC*,
  144 S. Ct. 1 (2023) ............................................................................................10

*J.A.V. v. Trump*,
  --- F. Supp. 3d ---, 2025 WL 1257450 (S.D. Tex. 2025)....................................7

*League of Women Voters of United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016)............................................................................4, 5

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ............................................................................................7

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998)........................................................................10

*Nat'l TPS All. v. Noem*,
  --- F. Supp. 3d ---, 2025 WL 957677 (N.D. Cal. 2025)..........................4, 9, 10

*New York v. U.S. Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020) .......................................................................3, 4, 10

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) .................................................................8

*Texas v. Biden*,
  646 F. Supp. 3d 753 (N.D. Tex. 2022) ................................................................9

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) ...............................................................................9

*United States v. Balt. & O. R.R*,
 293 U.S. 454 (1935) ................................................................................................................8

*You v. Nielsen*,
 321 F. Supp. 3d 451 (S.D.N.Y. 2018) ......................................................................................4

*Zhu v. Gonzales*,
 411 F.3d 292 (D.C. Cir. 2005)..................................................................................................7

**Statutes**

5 U.S.C. § 559 ................................................................................................................................6

5 U.S.C. § 701(a)(1) ......................................................................................................................6

5 U.S.C. § 701(a)(2) ..............................................................................................................6, 7, 8

5 U.S.C. § 705 ........................................................................................................................1, 6, 8

5 U.S.C. § 706 ............................................................................................................................1, 6

5 U.S.C. § 706(2)(A) .....................................................................................................................6

5 U.S.C. § 706(2)(B) .....................................................................................................................6

8 U.S.C. § 1158(b)(2)(A)(iv) .........................................................................................................5

8 U.S.C. § 1252(f)(1) .................................................................................................................6, 8

8 U.S.C. § 1254a(a)(1)(A) .............................................................................................................5

8 U.S.C. § 1254a(b)(2) ..................................................................................................................2

8 U.S.C. § 1254a(b)(3) ..................................................................................................................6

8 U.S.C. § 1254a(b)(3)(A) ....................................................................................................2, 4, 6

8 U.S.C. § 1254a(b)(3)(B) ........................................................................................................5, 8

8 U.S.C. § 1254a(b)(3)(C) ........................................................................................................2, 4

8 U.S.C. § 1254a(b)(5)(A) ........................................................................................................6, 7

8 U.S.C. § 1254a(c)(2)(B)(ii) ........................................................................................................5

8 U.S.C. § 1254a(c)(3)(A) .............................................................................................................5

U.S. CONST. art. I, § 8....................................................................................................................5

**Other Authorities**

Mila Sohoni, *The Power to Vacate a Rule*,
   88 G`EO`. W`ASH`. L. R`EV`. 1121 (Sept. 2020) ............................................................................8, 10

Plaintiffs are entitled to relief under 5 U.S.C. § 705.[1] Plaintiffs have shown that they are likely to succeed on the merits; that they will likely suffer irreparable harm absent relief; and that postponement of Secretary Noem's "partial vacatur" is in the public interest. ECF 38-1 at 2–10. Plaintiffs have also shown that this Court has authority to grant the requested relief. *Id.* at 10–11. Most of the government's arguments against postponement under § 705 are the same arguments as the government made in its motion to dismiss and opposition to Plaintiffs' motion for partial summary judgment. *Compare* ECF 45 at 7–19 *with* ECF 37 at 7–21. Plaintiffs have explained why those arguments are wrong and will not repeat those explanations here. *See* ECF 44 at 2–21. The government's additional arguments are few—and unpersuasive. This Court should therefore postpone the effective date of the "partial vacatur" pending a final resolution on the merits.

## ARGUMENT

**I.        Plaintiffs are entitled to relief under 5 U.S.C. § 705.**

      **A.        Plaintiffs are likely to succeed on the merits.**

Plaintiffs are likely to succeed on the merits. Nothing said by the government in opposition to Plaintiffs' motion for postponement suggests otherwise. *Cf.* ECF 45 at 15–19. The government's arguments are identical to those made in its motion to dismiss—and they fail for the same reasons. *See* ECF 44 at 5–13; *see also* ECF 38-1 at 2–4; ECF 17-1 at 3–6, 8–11; ECF 1 ¶¶ 22–114.[2]

---

[1]   The government insists on calling Plaintiffs' motion a preliminary injunction motion. ECF 45 at 1 n.1. But it is not. It is a motion for postponement under 5 U.S.C. § 705. That courts considering motions for postponement apply the standard also used when considering preliminary injunction motions does not convert a motion for postponement into a motion for a preliminary injunction. The consequences of a postponement are different from those of a preliminary injunction—in the same way that the consequences of a set-aside under 5 U.S.C. § 706 are different from those of a permanent injunction. Injunctions, whether preliminary or permanent, compel an individual or entity to act or refrain from acting in a certain way. A postponement, like a set-aside, does not compel anyone to do anything. It simply deprives an agency's action of legal force on a provisional basis pending final resolution on the merits. *See* ECF 17-1 at 12–14; ECF 44 at 17–18, 19.

[2]   The government's pending application in the Supreme Court to stay the *NTPS* decision underscores Plaintiffs' likelihood of success on the merits. In it, the government implies that ex-

### B. Plaintiffs are likely to suffer irreparable harm absent relief.

Plaintiffs have offered uncontroverted evidence that the premature termination of Haiti's TPS designation is causing them—and will cause them—irreparable harm. *See* ECF 44 at 2–5; ECF 38-1 at 4–6; ECF 17-1 at 6–7; ECF 17-2; ECF 17-3.[3] The government offers two arguments in its attempt to rebut Plaintiffs' showing of irreparable harm. Neither is availing.

First, the government says that harms caused by the premature termination of Haiti's TPS designation are "inherent in the temporary nature of TPS." ECF 45 at 19. But Plaintiffs' harms are not caused by ***operation*** of the TPS statute; they are caused by Secretary Noem's ***violation*** of the TPS statute. Although a TPS designation is temporary, it is for a fixed period. 8 U.S.C. § 1254a(b)(2). Once fixed, that period may be extended but not be shortened. *Id.* § 1254a(b)(3)(C). Indeed, extensions are the default: under § 1254a(b)(3)(C), a designation is automatically extended an unlimited number of times unless the Secretary affirmatively terminates the designation following completion of the periodic review process mandated by § 1254a(b)(3)(A). In short, termination of a designation is not an intrinsic feature of the TPS statute.

And even if the statute were such that designations automatically terminated upon expiration of the previously fixed designation period, that would not change the fact that premature termination of a fixed designation period inflicts irreparable harm on the affected TPS holders. As Plaintiffs have explained, fixed designation periods create reliance interests. ECF 44 at 12–13.

---

Secretary Mayorkas's extension of Venezuela's TPS designation was illegitimate because he extended it "nearly *six months* before the statute required him to act." Stay Appl. at 23, *Noem v. Nat'l TPS All.*, No. 24A1059 (U.S. May 1, 2025). Here, Haiti's TPS designation was not scheduled to expire until February 3, 2026, yet Secretary Noem prematurely terminated it on February 24, 2025—nearly **ten** months before she was required to act under 8 U.S.C. § 1254a(b)(3)(A).

[3] The government's Supreme Court stay application in *NTPS* admits that vacating Venezuela's TPS designation was "an essential prerequisite" to the Secretary's subsequent decision to definitively terminate the designation (Stay Appl. at 18 n.12), thereby confirming that, as Plaintiffs allege, the "partial vacatur" of Haiti's TPS designation is merely a prelude to final termination on August 3 and the concomitant harms that will flow from it. ECF 44 at 4 n.3.

2

TPS holders are entitled to plan their lives based on the reasonable expectation that a country's TPS designation will remain in force through the end of the statutorily prescribed period. Infringement of Plaintiffs' reliance interests through the premature termination of Haiti's TPS designation is not inherent in the TPS statute. It is not the ***statute*** that leaves them with what is now only three months to prepare for possible repatriation on August 3, 2025; under the statute, they would have had an additional six months to prepare for possible repatriation on February 3, 2026. ECF 44 at 4–5. Rather than a natural consequence of the TPS statute, the impairment of Plaintiffs' reliance interests is attributable solely to the Secretary's ***violation*** of the statute.

The government's other response to Plaintiffs' showing of irreparable harm also misses the mark. According to the government, "[e]ven where Plaintiffs' declarations have identified concrete harms, those harms will not be remedied" by Plaintiffs' requested relief. ECF 45 at 19–20. That is incorrect. If the "partial vacatur" is postponed and ultimately set aside, Plaintiffs will not be subject to incarceration and deportation on August 3. Nor would they be at risk of losing their work authorization that day. And they would have an additional six months to prepare for possible repatriation. Thus, although nothing can compensate Plaintiffs for the extraordinary anxiety they have been forced to endure since issuance of Secretary Noem's "partial vacatur," postponement and set-aside will ease that anxiety and avert the other irreparable harms that Plaintiffs have shown. In short, Plaintiffs have shown that they are likely to suffer irreparable harm absent relief.

**C.      Postponing the effective date of the "partial vacatur" is in the public interest.**

Plaintiffs explained that courts may consider the economic and social impact of an administrative action when deciding whether the public interest favors postponement of the action pending review. ECF 38-1 at 7–8. Courts may, for example, consider whether the agency action "will likely result in worse health outcomes, including … malnutrition," "increased rates of poverty and housing instability," or "reduced productivity and educational attainment." *New York*

*v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 87 (2d Cir. 2020) (cleaned up). Courts may also consider how the administrative action will affect the "public interest in maintaining families together." *You v. Nielsen*, 321 F. Supp. 3d 451, 469 (S.D.N.Y. 2018). And courts may consider the "economic harms that await … States" should the challenged action be allowed to take effect. *New York*, 969 F.3d at 87. Plaintiffs and the *amici* that support them have shown—and the Northern District of California has held—that when these factors are given due consideration "the public interest weighs in favor of, not against, postponement" of the Secretary's action. *Nat'l TPS All. v. Noem*, --- F. Supp. 3d ---, 2025 WL 957677, at *24 (N.D. Cal. 2025), *appeal docketed*, No. 25-2120 (9th Cir. Apr. 2, 2025) (*NTPS*); ECF 38-1 at 7–10; ECF 43 at 6–22.

The government denies none of this; the government simply ignores it. *Cf.* ECF 45 at 20–22. What the government does say is unconvincing.

The government's discussion of the public interest begins with the observation that "[t]he government and the public share an interest in ensuring that the process established by Congress … is followed as Congress intended." ECF 45 at 20. Plaintiffs agree. As they have said, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." ECF 38-1 at 7 (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The problem for the government is that the Secretary Noem did ***not*** adhere to the statutorily prescribed termination process when issuing the "partial vacatur" that prematurely terminated Haiti's TPS designation. She terminated Haiti's designation effective six months earlier than allowed by 8 U.S.C. § 1254a(b)(3)(C) and did so without having engaged in the periodic review process mandated by § 1254a(b)(3)(A). ECF 44 at 5–13; *see also* ECF 38-1 at 2–4; ECF 17-1 at 3–6, 8–11; ECF 1 ¶¶ 22–57, 102–114. Thus, contrary to what the government suggests, the public interest in ensuring that agencies follow congressionally

4

mandated procedures is best served by postponing the Secretary's *ultra vires* action.[4]

And there is no merit to the government's suggestion that postponement would impair the public interest by preventing the Secretary from "determining 'whether it is appropriate to allow a foreign national to continue living in the United States.'" ECF 45 at 21 (quoting *Arizona v. United States*, 567 U.S. 387, 409 (2012)). The argument fails at two levels. First, postponement of the "partial vacatur" would not keep the Secretary from "withdraw[ing] temporary protected status" (8 U.S.C. §§ 1254a(c)(3)(A)) from any TPS holder reasonably found to pose "a danger to the security of the United States." 8 U.S.C. § 1158(b)(2)(A)(iv) (cross-referenced in 8 U.S.C. § 1254a(c)(2)(B)(ii)). Second, postponement of the "partial vacatur" would not prevent the Secretary from terminating Haiti's TPS designation altogether effective February 3, 2026, if she determines—based on a good-faith, evidence-based periodic review—that Haiti "no longer continues to meet the conditions for designation." 8 U.S.C. § 1254a(b)(3)(B).[5]

Because postponement of the "partial vacatur" pending final resolution on the merits would ensure that the Department of Homeland Security "abide[s] by the federal laws that govern [its] existence and operations" rather than interfere with the Secretary's lawful exercise of statutory authority, postponement is in the public interest. *League of Women Voters*, 838 F.3d at 12.

## II. The Court has authority to grant relief under 5 U.S.C. § 705.

The government claims that "[t]his Court lacks jurisdiction to grant Plaintiffs the relief they

---

[4] The government asserts that postponement of the "partial vacatur" would "upset the separation of powers" by encroaching on the executive branch's Article II prerogatives. ECF 45 at 20. But it is the Secretary's action that violates the constitutional order by infringing on Congress's power "[t]o make Rules for the Government." U.S. Const. art. I, § 8.

[5] Similarly, there is nothing to the government's assertion that postponement would impair the public interest by allowing "the continued presence of … aliens who no longer have authorization to remain in the United States." ECF 45 at 21. TPS holders **have** authorization to be in the United States. Indeed, that is the principal benefit conferred by the TPS statute—it protects TPS holders against "remov[al] … from the United States." 8 U.S.C. § 1254a(a)(1)(A).

5

seek." ECF 45 at 7 (capitalization omitted).[6] The government's assertion rests largely on arguments that it has made before. *Compare* ECF 45 at 7–14 *with* ECF 37 at 7–12. Plaintiffs have already explained why those arguments are wrong and will not do so again here. *See* ECF 44 at 13–21; ECF 17-1 at 11–16. The additional arguments advanced by the government in its opposition to postponement under 5 U.S.C. § 705 are also unfounded.

First, the government points to 5 U.S.C. § 701(a)(1), which says that the APA "applies … except to the extent that" another statute "preclude[s] judicial review." *See* ECF 45 at 2–3, 9. That provision, however, does not deprive the Court of jurisdiction here. The APA itself defines when a later-enacted statute can be held to preclude review under the APA—namely, only when the subsequent statute "***expressly***" supersedes or modifies "chapter 7" of the APA. 5 U.S.C. § 559 (emphasis added). Here, neither 8 U.S.C. § 1254a(b)(5)(A) nor 8 U.S.C. § 1252(f)(1) mentions, much less expressly supersedes, chapter 7 of the APA. Thus, 5 U.S.C. § 701(a)(1) poses no barrier to judicial review of the "partial vacatur" under 5 U.S.C. §§ 705 and 706. *See* ECF 44 at 15, 18.

Next, the government points to 5 U.S.C. § 701(a)(2), which says that the APA "applies … except to the extent that … agency action is committed to agency discretion by law." *See* ECF 45

---

[6] The government's position is extreme—and dangerous. If accepted, even egregious and admitted violations of 8 U.S.C. § 1254a(b)(3) would be immune from judicial scrutiny. Imagine two scenarios in which the Secretary's process for "determin[ing] whether the conditions for … designation … continue to be met" (*id.* § 1254a(b)(3)(A)) is to flip a coin—heads the conditions for extension are found to exist, tails they are not. In scenario number one, the Secretary uses a fair coin so that there is a 50% chance that the conditions are found to exist and a 50% chance that they are not. Such a procedure is clearly "arbitrary." 5 U.S.C. § 706(2)(A). Now, consider a second scenario in which the Secretary uses a weighted coin that has a 75% chance of landing tails and only a 25% chance of landing heads. Such a procedure is equally arbitrary and, depending on how the weighted coin came to be used, quite possibly also "contrary to constitutional right." *Id.* § 706(2)(B). Flipping a coin—especially a weighted coin—is not the good-faith, fact-based process required by the TPS statute. It simply cannot be the case that a random process, particularly one weighted to a desired outcome, satisfies Congress's mandate to conduct a periodic *review* and *determination* after *consultation* with appropriate agencies. 8 U.S.C. § 1254a(b)(3)(A). Yet, on the government's theory, judicial review would be unavailable even in these scenarios—and even if the Secretary admitted that her process was nothing more than the flip of a weighted coin.

6

at 14. According to the government, "[w]hile 'rare,' this section of the APA is used 'where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). The government claims that this principle forecloses judicial review here because "[t]he determination of 'national interest' is one that calls upon the Secretary's 'expertise and judgment' and is not a manageable legal standard." *Id.* (quoting *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005)).

But even if that is true, § 701(a)(2) does not bar judicial review in this case for at least three reasons. First, "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 841 (D.C. Cir. 2010) (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)). Evaluating whether an executive action is *ultra vires* "does not require courts to adjudicate the wisdom of the President's foreign policy and national security decisions." *J.A.V. v. Trump*, --- F. Supp. 3d ---, 2025 WL 1257450, at *10 (S.D. Tex. 2025) (rejecting use of the Alien Enemies Act to deport Venezuelan nationals). Nor does it force courts to "rely on 'no manageable standards.'" *Id.* "On the contrary, courts regularly apply known canons of construction to determine the meaning of statutory language." *Id.* Second, as Plaintiffs have explained, Secretary Noem made no determination of "national interest" when issuing the "partial vacatur." ECF 17-1 at 14–15; ECF 44 at 10–11.[7] Third, even if the TPS statute committed the ultimate determination of national interest to the Secretary's unfettered discretion, it does not give her discretion over ***what process*** she must follow in making that determination or ***when*** a decision based on that determination can take effect. Rather, the

---

[7] Because the "partial vacatur" contains no determination as to either U.S. national interest or country conditions in Haiti, it is irrelevant that 8 U.S.C. § 1254a(b)(5)(A) purports to bar judicial review of "any" determination "with respect to" the termination or extension of a TPS designation. *Cf.* ECF 45 at 9–10. Regardless, Plaintiffs challenge the Secretary's statutory authority to issue the "partial vacatur," not any determination on which it supposedly rests.

7

Secretary's determination must be the product of a good-faith, "evidence-based" review process conducted in consultation with the appropriate agencies. *Saget v. Trump*, 375 F. Supp. 3d 280, 346 (E.D.N.Y. 2019). And a decision to terminate a country's TPS designation based on the Secretary's determination may not take effect before the designation's previously scheduled expiration date. 8 U.S.C. § 1254a(b)(3)(B). Because the periodic review process and associated timeline are mandatory rather than discretionary, § 701(a)(2) does not bar judicial review of the "partial vacatur."

Looking to the remedies available under the APA, the government argues that 8 U.S.C. § 1252(f)(1) bars postponement under 5 U.S.C. § 705 because, says the government, the APA "creates no new remedy beyond the traditional equitable relief that existed at the time of the APA's passage"; an injunction, whether preliminary or permanent, is the only relevant remedy traditionally available in equity when the APA was enacted; and an injunction is exactly what is "barred under § 1252(f)(1)." ECF 45 at 11–12. Whatever its other failings, the government's argument rests on a false premise. Injunctions were ***not*** the only relevant remedy available in equity before passage of the APA. Although often paired with injunctions, set-asides were also available. For example, when railroads filed "suit to set aside" an order of the Interstate Commerce Commission, a district court "set the order aside, on the ground that the Commission had acted arbitrarily," and the Supreme Court affirmed, holding that "the order may be set aside." *United States v. Balt. & O. R.R.*, 293 U.S. 454, 458, 463 (1935). As one scholar has explained: "Well before the APA was enacted, the suit in equity had evolved into a tool for challenging the validity of statutes and agency action … in advance of their enforcement." Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1158 (Sept. 2020). Thus, when the APA incorporated pre-existing equitable remedies, it authorized courts "to suspend federal regulatory action universally for extended periods of time pending merits review of its validity." *Id.* at 1160.

Lastly, turning to the statutory text, the government argues that "§ 705 does not authorize relief here" because it empowers the Court only to "'postpone the effective date' of an agency action," which, says the government, is impossible in this case because the "partial vacatur" has "already taken effect." ECF 45 at 12. The government made the same argument in *NTPS* and the Northern District of California rightly dismissed it as sophistry. 2025 WL 957677, at *18–19. "First, although Plaintiffs may technically be asking for postponement of the effective date of the vacatur decision ..., what they are ultimately seeking is postponement of the *impact* of the vacatur decision." *Id.* at *18. Inasmuch as the "partial vacatur" prematurely terminates Haiti's TPS designation effective August 3, its functional effective date is in the future, not the past. *Id.* Second, although notice-and-comment rulemaking requirements prevent agencies from postponing agency actions that have already taken effect, courts are under no such limitation. To the contrary, "[c]ourts—including the Supreme Court—routinely stay ***already-effective*** agency action under Section 705." *Id.* at *19 (quoting *Texas v. Biden*, 646 F. Supp. 3d 753, 770 (N.D. Tex. 2022)). "Finally, the government gives short shrift to the fact" that § 705 not only authorizes courts "to postpone the effective date of an agency action" but also empowers them "***to preserve status or rights pending conclusion of the review proceedings***." *Id.* (quoting *Texas*, 646 F. Supp. 3d at 770). The status quo to be preserved is "the status quo absent the unlawful agency action." *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022); *accord NTPS*, 2025 WL 957677, at *19. In this case, that means the status quo before Secretary Noem issued the "partial vacatur."

### III. Postponement under § 705 is the appropriate remedy.

The government argues that "[e]ven if preliminary relief were warranted here, Plaintiffs have no basis to request universal relief benefitting non-parties." ECF 45 at 22. The government is mistaken. As the Second Circuit has explained: "courts have long held that when an agency action is found unlawful under the APA, 'the ordinary result is that the rules are vacated—not that

9

their application to the individual petitioners is proscribed.'" *New York*, 969 F.3d at 87 (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). This makes sense: "The term 'set aside' means invalidation—and an invalid rule may not be applied to anyone." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Statement of Kavanaugh, J.) (quoting Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. at 1173). The government's assertion that the APA limits relief to named plaintiffs "would revolutionize long-settled administrative law—shutting the door on entire classes of everyday administrative law cases." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring). In short, the government's "newly minted position is both novel and wrong." *Id.*[8]

In any event, "universal relief" is necessary in this case. Without it, it would be impossible to know who in particular would be entitled to the benefit of a set-aside. Plaintiff SEIU Local 32BJ is suing in a representational capacity on behalf of its TPS-holding members. Although Local 32BJ knows that many of its members are Haitian TPS holders, it does not know which members are Haitian TPS holders because it "does not track members by national origin or immigration status." Collerd Aff. ¶ 5 (Ex. 1); O'Brien Aff. ¶ 5 (Ex. 2); Joseph Aff. ¶ 5 (Ex. 3). It is therefore impossible for Local 32BJ, the government, or the Court to distinguish between Haitian TPS holders who are Local 32BJ members and thus would be entitled to relief under the government's theory, and those who are not SEIU 32BJ members and thus would not qualify for relief on that theory. The law neither requires nor allows such an unworkable approach. *NTPS*, 2025 WL 957677, at *46.

## CONCLUSION

The Court should postpone the effective date the "partial vacatur."

---

[8] Granting what the government characterizes as "universal relief" is "particularly appropriate in the immigration context, given the interest in a uniform immigration policy." *New York*, 969 F.3d at 87–88; *cf.* ECF 45 at 20. If unlawful agency action were invalidated only as to the parties before the court, such uniformity would be lost.

| May 6, 2025 | Respectfully submitted, |
|---|---|
| | /s/ Andrew Tauber |
| | Andrew Tauber |

| | |
|---|---|
| Ira J. Kurzban | Andrew E. Tauber |
| Kevin Gregg | Sarah Levine Hartley |
| KURZBAN, KURZBAN, TETZELI & PRATT, P.A. | BRYAN CAVE LEIGHTON PAISNER, LLP |
| 131 Madeira Ave. | 1155 F Street NW, Ste. 700 |
| Coral Gables, FL 33134 | Washington, DC 20004 |
| (305) 444-0060 | (202) 508-6200 |
| ira@kktplaw.com | andrew.tauber@bclplaw.com |
| kgregg@kktplaw.com | sarah.hartley@bclplaw.com |
| | |
| Sejal Zota | Geoffrey M. Pipoly |
| Daniel Werner | Alexa Thein |
| Dinesh McCoy | Madisen Hursey |
| JUST FUTURES LAW | BRYAN CAVE LEIGHTON PAISNER, LLP |
| 1629 K Street NW, Suite 300 | 161 N. Clark Street, Ste. 4300 |
| Washington, DC 20006 | Chicago, IL 60601 |
| (617) 812-2822 | (312) 602-5000 |
| sejal@justfutureslaw.org | geoff.pipoly@bclplaw.com |
| dinesh@justfutureslaw.org | alexa.thein@bclplaw.com |
| daniel@justfutureslaw.org | madisen.hursey@bclplaw.com |

Raymond Audain
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Floor
New York, NY 10004
(212) 847-8315
raudain@gslawny.com

*Attorneys for Plaintiffs*