# Exhibit 1

KeyCite Yellow Flag
Superseded by Statute as Stated in Patel v. United States Attorney General, 11th Cir., August 19, 2020

75 S.Ct. 591
Supreme Court of the United States

Edward J. SHAUGHNESSY, as District Director of Immigration and Naturalization for the District of New York, Petitioner,
v.
Mampriel Sequeira PEDREIRO.

No. 374.
|
Argued March 31, 1955.
|
Decided April 25, 1955.

**Synopsis**
Proceeding upon alien's petition to review deportation order, declare it void and issue temporary injunction restraining execution pending final District Court action. Relief was sought only against the District Director of Immigration and Naturalization. The District Court for the Southern District of New York dismissed the petition and the alien appealed. The United States Court of Appeals, Second Circuit, reversed, 213 F.2d 768, and the case was brought to the Supreme Court by certiorari. The Supreme Court, Mr. Justice Black, held that the order was subject to judicial review, that the remedy sought was appropriate, and that the Commissioner of Immigration and Naturalization was not an indispensable party.

Affirmed.

Mr. Justice Minton, Mr. Justice Reed, and Mr. Justice Burton, dissented.

West Headnotes (10)

[1]   **Federal Courts** ← Particular Cases, Contexts, and Questions

Where conflict existed among federal judicial circuits on issue whether judicial review of deportation orders could be had other than by habeas corpus, and where it was contended by party that allowing such other review conflicted with case previously decided by federal Supreme Court, that court granted certiorari. Immigration and Nationality Act, § 101 et seq., 8 U.S.C.A. § 1101 et seq.; Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011.

13 Cases that cite this headnote

[2]   **Aliens, Immigration, and Citizenship** ← Judicial Review or Intervention

Purpose of those sections of Administrative Procedure Act which respectively provide for judicial review of agency action and that no subsequent legislation should be held to supersede or modify the Act except to extent that such legislation should do so expressly, was to remove obstacles to judicial review of agency action under subsequently enacted statutes such as 1952 Immigration Act. Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011; Immigration and Nationality Act, § 101 et seq., 8 U.S.C.A. § 1101 et seq.

39 Cases that cite this headnote

[3]   **Administrative Law and Procedure** ← Procedure in General

Administrative Procedure Act is to be given "hospitable" interpretation. Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011.

7 Cases that cite this headnote

[4]   **Aliens, Immigration, and Citizenship** ← Decisions reviewable

Provision of 1952 Immigration Act that deportation order of Attorney General shall be "final", means that such orders are final with respect to administrative procedure but not with respect to judicial review, and right of judicial review of such order is not limited to habeas corpus. Immigration and Nationality

Act, § 101 et seq., 8 U.S.C.A. § 1101 et seq.; Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011.

52 Cases that cite this headnote

[5] **Aliens, Immigration, and Citizenship** ← Injunction

Alien's petition in federal District Court to review deportation order, declare it void and issue temporary injunction to restrain execution of deportation order pending final district court action was appropriate remedy to secure judicial review of deportation order. Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011; Immigration and Nationality Act, § 101 et seq., 8 U.S.C.A. § 1101 et seq.

34 Cases that cite this headnote

[6] **Administrative Law and Procedure** ← Reviewability

Basic policy of Administrative Procedure Act is to facilitate court review of administrative action. Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011.

4 Cases that cite this headnote

[7] **Declaratory Judgment** ← United States or federal officers

Merely because judgment against District Director of Immigration and Naturalization alone might not be final and binding in other immigration districts was not sufficient to establish that Commissioner of Immigration and Naturalization was indispensable party to alien's action for declaratory relief with respect to deportation order. Immigration and Nationality Act, § 101 et seq., 8 U.S.C.A. § 1101 et seq.; Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011.

23 Cases that cite this headnote

[8] **Federal Civil Procedure** ← Who are indispensable parties

Indispensability of parties may be determined on practical considerations.

28 Cases that cite this headnote

[9] **Declaratory Judgment** ← United States or federal officers

Where joining Commissioner of Immigration and Naturalization as additional party defendant in alien's action against District Director of Immigration and Naturalization for District of New York might result in compelling alien to go to District of Columbia in order to contest deportation in his action for declaratory relief, Commissioner was not an indispensable party. Administrative Procedure Act, §§ 10, 12, 5 U.S.C.A. §§ 1009, 1011; Immigration and Nationality Act, § 101 et seq., 8 U.S.C.A. § 1101 et seq.

32 Cases that cite this headnote

[10] **Aliens, Immigration, and Citizenship** ← Judicial Review or Intervention

In alien's suit to review deportation order, determination of question of indispensability of parties is dependent, not on nature of decision attacked, but on ability and authority of defendant before court to effectuate relief which alien seeks. Immigration and Nationality Act, §§ 241, 279, 8 U.S.C.A. §§ 1251, 1329.

13 Cases that cite this headnote

**Attorneys and Law Firms**

 *48  **592 Mr. Oscar H. Davis, Washington, D.C., for petitioner.

Mr. Aaron L. Danzig, New York City, for respondent.

**Opinion**

*49 Mr. Justice BLACK delivered the opinion of the Court.

**593 [1] After administrative hearings, the respondent Pedreiro, an alien, was ordered deported under the Immigration and Nationality Act of 1952.[1] He petitioned the District Court for the Southern District of New York to review the deportation order, declare it void and insue a temporary injunction restraining its execution pending final district court action. In part he contended that there was no legal evidence to support the order and that in violation of due process he had been compelled to incriminate himself in the hearings. Relief was sought only against the District Director of Immigration and Naturalization for the District of New York. The District Court dismissed the petitioner on the ground that either the Attorney General or the Commissioner of Immigration and Naturalization was an indispensable party and should have been joined. This holding made it unnecessary for the District Court to pass on another ground urged for dismissal, that the Immigration and Nationality Act of 1952 precluded judicial review of deportation orders by any method except habeas corpus. The Court of Appeals reversed, rejecting both contentions of the Government. 2 Cir., 213 F.2d 768. In doing so it followed the Court of Appeals for the District of Columbia Circuit which had held that deportation orders entered under the 1952 Immigration Act can be judicially reviewed in actions for declaratory relief under s 10 of the Administrative Procedure Act.[2] Rubinstein v. Brownell, 92 U.S.App.D.C. 328, 206 F.2d 449, affirmed by an equally divided Court, 346 U.S. 929, 74 S.Ct. 319, 97 L.Ed. 421. But the Court of Appeals for the First Circuit has held that habeas corpus is the only way such deportation orders can be attacked. *50 Batista v. Nicolls, 1 Cir., 213 F.2d 20. Because of this conflict among the circuits and the contention that allowing judicial review of deportation orders other than by habeas corpus conflicts with Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972, we granted certiorari, 348 U.S. 882, 75 S.Ct. 124.

The Heikkila case, unlike this one, dealt with a deportation order under the Immigration Act of 1917. That Act provided that deportation orders of the Attorney General should be 'final'[3] and had long been interpreted as precluding any type of judicial review except by habeas corpus. Heikkila contended that this narrow right of review of deportation orders under the 1917 Act had been broadened by s 10 of the 1946 Administrative Procedure Act which authorizes review of agency action by any appropriate method 'except so far as (1) statutes preclude judicial review * * *.' Because this Court had construed the word 'final' in the 1917 Act as precluding any review except by habeas corpus, it held that the Administrative Procedure Act gave no additional remedy since s 10 excepted statutes that precluded judicial review. The Court carefully pointed out, however, that it did not consider whether the same result should be reached under the 1952 Immigration and Nationality Act 'which took effect after Heikkila's complaint was filed.'[4] Consequently Heikkila does not control this case and we must consider the effect of the 1952 Immigration and Nationality Act on the right to judicial review under the Administrative Procedure Act.

Section 10 of the Administrative Procedure Act provides that 'Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.' And s 12 *51 of the Act provides that 'No subsequent **594 legislation shall be held to supersede or modify the provisions of this act except to the extent that such legislation shall do so expressly.' In the subsequent 1952 Immigration and Nationality Act there is no language which 'expressly' supersedes or modifies the expanded right of review granted by s 10 of the Administrative Procedure Act. But the 1952 Immigration Act does provide, as did the 1917 Act, that deportation orders of the Attorney General shall be 'final.' The Government contends that we should read this as expressing a congressional purpose to give the word 'final' in the 1952 Act precisely the same meaning Heikkila gave 'final' in the 1917 Act and thereby continue to deprive deportees of all right of judicial review except by habeas corpus. We cannot accept this contention.

[2] [3] [4] [5] Such a restrictive construction of the finality provision of the present Immigration Act would run counter to s 10 and s 12 of the Administrative Procedure Act. Their purpose was to remove obstacles to judicial review of agency action under subsequently enacted statutes like the 1952 Immigration Act. And as the Court said in the Heikkila case, the Procedure Act is to be given a 'hospitable' interpretation. In that case the Court also referred to ambiguity in the provision making deportation orders of the Attorney General 'final.' It is more in harmony with the generous review provisions of the Administrative Procedure Act to construe the ambiguous word 'final' in the 1952 Immigration Act as referring to finality in administrative procedure rather

than as cutting off the right of judicial review in whole or in part. And it would certainly not be in keeping with either of these Acts to require a person ordered deported to go to jail in order to obtain review by a court.

The legislative history of both the Administrative Procedure Act and the 1952 Immigration Act supports respondent's **\*52** rights to full judicial review of this deportation order. The sponsors of the Administrative Procedure Act were Representative Walter in the House and Senator McCarran in the Senate. They were also the sponsors of the 1952 Immigration Act. While the latter Act was under consideration in the House, an amendment was proposed which provided for liberal judicial review of deportation orders. Representative Walter assured the House that the proposed amendment was not needed. He said: 'Now, we come to this question of the finality of the decision of the Attorney General. That language means that it is a final decision as far as the administrative branch of the Government is concerned, but it is not final in that it is not the last remedy that the alien has. Section 10 of the Administrative Procedures Act is applicable.'[5] With reference to the same problem Senator McCarran assured the Senate that 'the Administrative Procedure Act is made applicable to the bill.'[6] It is argued that these assurances by the chairmen of the committees in charge of the bills were but isolated statements and that other legislative history is sufficient to refute them. We cannot agree. Our holding is that there is a right of judicial review of deportation orders other than by habeas corpus and that the remedy sought here is an appropriate one.

 **[6]**  We also reject the Government's contention that the Commissioner of Immigration and Naturalization is an indispensable party to an action for declaratory relief of this kind.[7] District Directors are authorized by regulation to issue warrants of deportation, to designate the country to which an alien **\*\*595** shall be deported, and to determine when his mental or physical condition requires the **\*53** employment of a person to accompany him. The regulations purport to make these decisions of the District Director final.[8] It seems highly appropriate, therefore, that the District Director charged with enforcement of a deportation order should represent the Government's interest. Otherwise in order to try his case an alien might be compelled to go to the District of Columbia to obtain jurisdiction over the Commissioner. To impose this burden on an alien about to be deported would be completely inconsistent with the basic policy of the Administrative Procedure Act to facilitate court review of such administrative action. We know of no necessity for such a harsh rule. Undoubtedly the Government's defense can be adequately presented by the District Director who is under the supervision of the Commissioner.

 **[7]**  **[8]**  **[9]**  It is argued, however, that the Commissioner should be an indispensable party because a judgment against a District Director alone would not be final and binding in other immigration districts. But we need not decide the effect of such a judgment. We cannot assume that a decision on the merits in a court of appeals on a question of this kind, subject to review by this Court, would be lightly disregarded by the immigration authorities. Nor is it to be assumed that a second effort to have the same issue decided in a habeas corpus proceeding would do any serious harm to the Government. In habeas corpus proceedings district courts would have the duty to consider previous court decisions on the same matter. And even though in extraordinary circumstances new matters not previously adjudicated may arise in habeas corpus proceedings, this is no adequate reason for subjecting an alien to the great burden of having to go with his witnesses to the District of Columbia, which may be far distant from his home, in order to contest his deportation. **\*54** Our former cases have established a policy under which indispensability of parties is determined on practical considerations. See, e.g., Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95. That policy followed here causes us to conclude that the Commissioner of Immigration and Naturalization is not an indispensable party.

Affirmed.

Mr. Justice MINTON, with whom Mr. Justice REED and Mr. Justice BURTON join, dissenting.

In Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972, this Court held that s 19(a) of the Immigration Act of 1917, making decisions of the Attorney General 'final,' was a statute which precluded judicial review within the meaning of the first exception to s 10 of the Administrative Procedure Act. Now, slightly more than two years later, the Court holds that judicial review of deportation orders is available under s 10 even though s 242(b) of the 1952 Act is a re-enactment, almost verbatim, of the 'final' clause of the 1917 Act. The decision is based on three considerations. First, s 12 of the Administrative Procedure Act provides that, 'No subsequent legislation shall be held to supersede or modify the provisions

of this act except to the extent that such legislation shall do so expressly', and, in the opinion of the majority, there is no language in the 1952 Act which 'expressly' establishes a more limited review. Second, it is believed more consistent with the liberal review provisions of the Administrative Procedure Act to construe 'final' as referring to finality in the administrative process. And third, isolated statements in the congressional debates indicate that Congress actually intended to permit review under the Administrative Procedure Act.

 **\*596** Section 12 of the Administrative Procedure Act, however, as I read it, applies only where subsequently enacted legislation, in the words of the Court, 'supersedes or **\*55** modifies the expanded right of review granted by s 10 of the Administrative Procedure Act', and this Court held in the Heikkila case that the rights of aliens subject to deportation were not enlarged by the Administrative Procedure Act. Moreover, notwithstanding significant substantive changes in the immigration laws in the 1952 Act, I hesitate to consider the re-enactment of a provision, with minor changes in language, 'subsequently enacted legislation.' The issue then is much like the one the Court faced in Heikkila: whether, in the context of the liberal review provisions of the Administrative Procedure Act, Congress intended, by s 242(b), to preclude application of s 10 of the Administrative Procedure Act. As this Court pointed out in Heikkila, the word 'final,' though ambiguous in other contexts, as used in immigration legislation since the Immigration Act of 1891, has precluded judicial review except by habeas corpus. In view of this long history and the reenactment of s 242 with only minor textual changes, I hesitate to impute to Congress an intention to change the method of review absent a clear showing. The Court found in examining the legislative history that Representative Walter, one of the sponsors of the 1952 Act as well as of the Administrative Procedure Act, believed that s 10 of the Administrative Procedure Act applied to deportation orders. The statement by Senator McCarran, however, that 'the Administrative Procedure Act is made applicable to the bill,' in context, may merely refer to the administrative procedures aspect of an amendment proposed by Senator Moody. 98 Cong.Rec. 5778, 5779. In any event, the statements of Congressman Walter and Senator McCarran, in the course of debate on the floor, are less persuasive than the more carefully prepared and authoritative committee report and the report of the Senate Committee in charge of the bill would seem to indicate that no change in the law was intended.

 **\*56** The Immigration and Nationality Act of 1952 was preceded by extensive studies of the structure and operation of the immigration law. These studies culminated in a report by the Senate Committee on the Judiciary entitled, The Immigration and Naturalization Systems of the United States, S.Rep. No. 1515, 81st Cong., 2d Sess. 28. It contains the following statement, at page 629:
'Judicial review

'Once the order and warrant of deportation are issued, the administrative process is complete. Under the fifth amendment to the Constitution, the 'due process' provision, the alien may, however, petition for a writ of habeas corpus. In a habeas corpus proceeding, based on a deportation case, the court determines whether or not there has been a fair hearing, whether or not the law has been interpreted correctly, and whether or not there is substantial evidence to support the order of deportation. Habeas corpus is the proper remedy to determine the legality of the detention of an alien in the custody of the Immigration and Naturalization Service. The dismissal of an application for a writ of habeas corpus is not a bar to the filing of another application before another judge.'

Although this report was dated April 1950, it serves to clarify any ambiguity in the statement in the Senate report accompanying the bill in final form that judicial review in immigration cases was not expanded 'beyond that under existing law.' S.Rep. No. 1137, 82d Cong., 2d Sess. The Committee, in using the phrase 'existing law,' particularly in light of the long history of exclusive **\*\*597** habeas corpus review, was necessarily referring to the law as understood and expressed in its prior report. Moreover, the report also states, at page 30, that 'The bill **\*57** declares that the prescribed deportation proceedings shall be the sole and exclusive procedure for determining the deportability of any alien, notwithstanding the provisions of any other law.' The legislative history, therefore, would seem to make it unmistakably clear that Congress, aware that the word 'final' as used in immigration legislation was not ambiguous, intended to preserve habeas corpus as the only escape from a deportation order. It was error to give relief under the Administrative Procedure Act.

**All Citations**

349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868

## Footnotes

1    66 Stat. 163, 8 U.S.C. s 1101 et seq., 8 U.S.C.A. s 1101 et seq.

2    60 Stat. 243, 5 U.S.C. s 1009, 5 U.S.C.A. s 1009.

3    39 Stat. 889, as amended, 54 Stat. 1238.

4    Heikkila v. Barber, 345 U.S. 229, 232, 73 S.Ct. 603, 604, note 4, 97 L.Ed. 972.

5    98 Cong.Rec. 4416.

6    98 Cong.Rec. 5778.

7    Compare Paolo v. Garfinkel, 3 Cir., 200 F.2d 280; Rodriguez v. Landon, 9 Cir., 212 F.2d 508.

8    CFR ss 234.1, 243.2.

---

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.