UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
HAITIAN EVANGELICAL CLERGY          :
ASSOCIATION, SERVICE EMPLOYEES      :
INTERNATIONAL UNION - LOCAL 32BJ,   :    **MEMORANDUM DECISION AND**
SABINA BADIO FLORIAL,               :    **ORDER TO SHOW CAUSE**
YOUDELAINE DORCIN, ROBERT JEAN      :
ALIX ERINAC, RACHELLE GUIRAND,      :    25-cv-1464 (BMC)
DIEU YOLNICK JEUNE CADET,           :
AUDOINE AMAZAN, GERALD              :
MICHAUD, NADEGE JOSEPH MICHAUD,     :
and MARIE WILDRIGUE ERINAC MIOT,    :
                                    :
                      Plaintiffs,   :
                                    :
            - against -             :
                                    :
DONALD J. TRUMP, in his official capacity :
as President of the United States; UNITED :
STATES OF AMERICA; THE              :
DEPARTMENT OF HOMELAND              :
SECURITY; and KRISTI NOEM, in her   :
official capacity as Secretary of Homeland :
Security,                           :
                                    :
                      Defendants.   :
                                    :
--------------------------------------------------------- X

**COGAN**, District Judge.

This case arises out of Secretary of Homeland Security Kristi Noem's "partial vacatur" of

Haiti's Temporary Protected Status ("TPS") designation.  TPS is a humanitarian program,

codified at 8 U.S.C. § 1254a, that provides temporary relief from removal and work

authorization to certain aliens present in the United States who cannot safely return to their

country of nationality due to armed conflict, a natural disaster, or other extraordinary and

temporary conditions.

Plaintiffs are nine individual Haitian nationals who are beneficiaries of TPS and two associations with Haitian beneficiaries of TPS as members.  They have moved for partial summary judgment on their claims that Secretary Noem's partial vacatur is reviewable by this Court and that it was *ultra vires*, requiring it to be set aside pursuant to 5 U.S.C. § 706(2).  Plaintiffs have also moved to postpone Secretary Noem's partial vacatur pending final resolution of this case pursuant to 5 U.S.C. § 705.  The Government opposes these motions and has filed a motion to dismiss for lack of jurisdiction and failure to state a claim.

Plaintiffs' motions for postponement of the partial vacatur and partial summary judgment are granted.  The Government's motion to dismiss is denied in part, and plaintiffs are ordered to show cause why their remaining claims are not moot.

## BACKGROUND

The Department of Homeland Security first designated Haiti for TPS status in 2010, after Haiti was struck by a 7.0 magnitude earthquake.  The Department subsequently extended this designation and redesignated Haiti for TPS status multiple times based on continuing harms from the earthquake.  In 2018, the Department of Homeland Security published a notice in the Federal Register terminating Haiti's TPS designation.  However, a judge in this district enjoined the Department's termination, finding that plaintiffs were likely to succeed on the merits of their claim that the termination violated the Administrative Procedure Act ("APA") because it was "not in accordance with the law," arbitrary and capricious, and based on a pretextual rationale. Saget v. Trump, 375 F. Supp. 3d 280, 345 (E.D.N.Y. 2019).

The Department of Homeland Security appealed that decision, but after a change in administration, withdrew the appeal and once again extended Haiti's TPS designation.  Haiti's TPS designation was most recently extended in July 2024 for 18 months due to gang violence; political unrest and corruption; a 7.2 magnitude earthquake that struck Haiti in August 2021 and

subsequent flooding and landslides; food insecurity; a cholera outbreak that, as of January 2024, had infected approximately 73,000 Haitians; lack of healthcare resources; and a decimated economy (the "July 2024 extension").  89 Fed. Reg. 54484 (July 1, 2024).  The July 2024 extension extended Haiti's TPS designation through February 3, 2026.  Id.

On February 24, 2025, Secretary Noem issued a "partial vacatur" of the July 2024 extension, such that Haiti's TPS designation would expire on August 3, 2025, instead of February 3, 2026.  90 Fed. Reg. 10511 (Feb. 24, 2025).  In Secretary Noem's notice of the partial vacatur in the Federal Register, she stated that she "intends to review the Haiti TPS designation by June 4, 2025."  Secretary Noem published notice of termination of Haiti's TPS designation in the Federal Register on July 1, 2025, effective September 2, 2025.  90 Fed. Reg. 28760 (July 1, 2025).

## LEGAL STANDARD

The TPS statute, codified at 8 U.S.C. § 1254a, provides that immigrants from designated countries may remain in the United States and receive work authorization if the Secretary of Homeland Security,[1] "after consultation with appropriate agencies of the Government," finds that "there is an ongoing armed conflict within the state" that "would pose a serious threat to [the] personal safety" of returning aliens; "there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state" and "the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state;" or there are "extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that

---

[1] The TPS statute is written as vesting power in the Attorney General.  See, e.g., 8 U.S.C. § 1254a(b)(1).  Congress has transferred authority related to TPS from the Attorney General to the Secretary of Homeland Security.  See 8 U.S.C. § 1103; 6 U.S.C. § 557.

permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1).  The Secretary's designation of a country for TPS lasts for a "period, specified by the [Secretary of Homeland Security], of not less than 6 months and not more than 18 months."  8 U.S.C. § 1254a(b)(2)(B).

"At least 60 days before end of the initial period of designation," the Secretary of Homeland Security, "after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state" to "determine whether the conditions for such designation under this subsection continue to be met."  8 U.S.C. § 1254a(b)(3)(A).  If the Secretary does not make such a determination, the country's TPS designation is automatically extended "for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)."  8 U.S.C. § 1254a(b)(3)(C).  If the Secretary determines that the conditions are no longer met, the Secretary "shall terminate the designation by publishing notice in the Federal Register of the determination . . . (including the basis for the determination).  Such termination . . . shall not be effective earlier than 60 days after the date the notice is published or . . . the expiration of the most recent previous extension," whichever is later.  8 U.S.C. § 1254a(b)(3)(B).  The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection."  8 U.S.C. § 1254a(b)(5).

Under the APA, courts must "hold unlawful and set aside" an agency action if it falls into one of the categories listed in 5 U.S.C. § 706(2), including that the action is: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" or "without

observance of procedure required by law."  In addition, the APA provides that, while the review

of an agency action is ongoing, the reviewing court "may issue all necessary and appropriate

process to postpone the effective date of an agency action or to preserve status or rights" "to the

extent necessary to prevent irreparable injury."  5 U.S.C. § 705.

## DISCUSSION

### I.     Standing and Ripeness

Courts will dismiss an action for lack of subject matter jurisdiction pursuant to Federal

Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional

power to adjudicate it."  Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013)

(quotation omitted).  "Under Article III of the U.S. Constitution, '[t]he judicial Power of the

United States' extends only to certain 'Cases' and 'Controversies.'"  Lacewell v. Off. of

Comptroller of Currency, 999 F.3d 130, 141 (2d Cir. 2021) (quoting U.S. Const. art. III §§ 1-2).

"To satisfy the Constitution's 'case-or-controversy requirement,' a plaintiff in federal court

'must establish that they have standing to sue.'"  Id. (quoting Clapper v. Amnesty Int'l USA, 568

U.S. 398, 408 (2013)).  To establish standing, "[a] plaintiff must have (1) suffered an injury in

fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)

(citations omitted).

To be a justiciable case or controversy, a plaintiff's claim must also be ripe.  "In the

administrative context, the ripeness doctrine 'prevents the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also protects the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties.'"  Lacewell, 999 F.3d at 148 (quoting Nat'l Park Hosp. Ass'n v. Dep't of

Interior, 538 U.S. 803, 807-808 (2003) (cleaned up)).  The constitutional ripeness requirement "overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical. . . .  In most cases, that a plaintiff has Article III standing is enough to render its claim constitutionally ripe."  In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 725 F.3d 65, 110 (2d Cir. 2013) (internal quotation marks, quotation, and citations omitted).

For issues such as standing and ripeness, which determine whether this Court has subject matter jurisdiction, plaintiffs bear the burden of establishing that subject matter jurisdiction exists.  MLC Fishing, Inc. v. Velez, 667 F.3d 140, 141 (2d Cir. 2011).  On a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all factual allegations in the complaint as true.  Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).  The Court "may also rely on evidence outside the complaint."  Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l., 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted).  The Supreme Court has stated that the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."  Raines v. Byrd, 521 U.S. 811, 819-20 (1997) (citations omitted).

Plaintiffs allege harm from Secretary Noem's "partial vacatur" of the July 2024 extension, which shortened Haiti's TPS designation from February 3, 2026, to August 3, 2025. Notably, plaintiffs do not (nor could they) contend that Secretary Noem lacks the authority to terminate Haiti's TPS designation pursuant to the TPS statute.  In other words, if Secretary Noem had, in accordance with 8 U.S.C. § 1254a(b)(3), "review[ed] the conditions in" Haiti "after consultation with appropriate agencies of the Government" at least 60 days before

6

February 3, 2026, determined that Haiti "no longer continues to meet the conditions for designation," and "publish[ed] notice in the Federal Register of the determination . . . (including the basis for the determination)," which would have become effective either "60 days after the date the notice [was] published" or on February 3, 2026, whichever was later, plaintiffs would not be harmed. Thus, this Court's analysis of standing and ripeness is limited to the harms plaintiffs allege from Secretary Noem's shortening of the July 2024 extension from February 3, 2026, to August 3, 2025, not the ultimate termination of Haiti's TPS designation.

Plaintiffs allege that:

> The . . . fact that now Haiti's TPS designation could (and almost certainly will) end on August 3 leaves Plaintiffs with only half the time that they previously had to prepare for possible repatriation. Plaintiffs . . . must start planning now if they have any hope of managing and surviving a possible return to Haiti. Were it not for the "partial vacatur," Plaintiffs would have six additional months to make the difficult if not impossible arrangements and difficult if not impossible decisions that they must make.

Specifically, plaintiffs "now have less than [three] months to organize transportation to Haiti; locate housing in which they can live upon their return; seek jobs with which they can support themselves after returning; arrange medical care to treat existing conditions and those they are likely to contract in Haiti; and secure reliable sources of food." They must also, "in that same rapidly vanishing time," "make an impossible choice between taking their U.S.-citizen children to Haiti where they would immediately become targets for kidnapping and murder, or leaving them in the United States, where they would not be able to fend for themselves." Thus, plaintiffs argue, their "injuries are not just imminent – they are already occurring."

The Government argues that the above harms do not confer standing because of the temporary nature of TPS, which means that "the termination of a country's TPS designation is a possibility beneficiaries must always expect." As discussed above, the Court agrees that

plaintiffs would not have standing to challenge a lawful termination of TPS made pursuant to the statute.  Here, however, as the Government itself explains, Secretary Noem "moved up the end date of Haiti's latest extension and redesignation for TPS by six months."  *That* is the root of plaintiffs' harm, not any eventual termination of Haiti's TPS designation made in accordance with the law.

When the Government confers a benefit over a fixed period of time, a beneficiary can reasonably expect to receive that benefit at least until the end of that fixed period.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (collecting cases).  It follows, then, "[w]here a TPS extension is given, it creates important reliance interests."  Nat'l TPS All. v. Noem, No. 25-cv-1766, 2025 WL 957677, at *32 (N.D. Cal. March 31, 2025) (footnote omitted).  "Indeed, the TPS statute itself implicitly recognizes the importance of such reliance interests because it . . . builds in some delay before termination of TPS becomes effective: termination does not take effect until the later of 60 days from the date of notice or the expiration of the most recent previous extension."  Id. (citing 8 U.S.C. § 1254a(b)(3)(B)).  The Supreme Court has also recognized that immigration programs, even if temporary in nature, can confer legally cognizable reliance interests on beneficiaries of those programs.  See Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1 (2020) (finding recission of DACA in violation of the APA in part because the acting Secretary of Homeland Security did not assess reliance interests on the program, even though "the DACA Memorandum stated that the program 'conferred no substantive rights' and provided benefits only in two-year increments" (quotation and citations omitted)).

Here, too, plaintiffs have evinced a reliance interest in Haiti maintaining its TPS designation until February 3, 2026.  Plaintiffs have enrolled in schools, taken jobs, and begun

courses of medical treatment in the United States in reliance on Haiti's TPS designation lasting until at least February 3, 2026. Assuming for the purposes of standing that plaintiffs are right on the merits[2] and that Secretary Noem's partial vacatur was unlawful, plaintiffs' reliance interest in Haiti's TPS designation lasting until February 3, 2026, has been harmed. This is sufficient to establish an injury in fact.

Moreover, this injury is plainly traceable to the challenged conduct: Secretary Noem's partial vacatur of Haiti's TPS designation such that it will expire on August 3, 2025, instead of February 3, 2026. And this injury will be redressed by a favorable judicial decision. If the Court grants plaintiffs' requested relief, thus finding that Secretary Noem's partial vacatur is subject to review by this Court, is unlawful, and must be set aside, then plaintiffs will be able to once again rely on the existence of Haiti's TPS designation until at least February 3, 2026.

Plaintiffs' injury, as articulated above, is also ripe for judicial review. Plaintiffs' reliance on Haiti's TPS designation lasting until at least February 3, 2026, has been destroyed: as a result of Secretary Noem's partial vacatur, she has terminated Haitit's TPS designation, effective five months earlier than plaintiffs understood to be possible, requiring plaintiffs to prepare five months earlier than expected to leave the United States. Thus, their injury is occurring now.

Because plaintiffs have standing and their injury is ripe for review, the Government's motion to dismiss is denied on those grounds, and I proceed to the merits.

## II.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment on two issues: whether this Court has authority to review Secretary Noem's partial vacatur of Haiti's TPS designation, and whether

---

[2] "[I]n reviewing the standing question, a court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." The Intercept Media, Inc. v. OpenAI, Inc., ---- F. Supp. 3d. ----, 2025 WL 556019 (S.D.N.Y. Feb. 20, 2025) (quoting City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam)).

Secretary Noem exceeded her authority in partially vacating Haiti's TPS designation.  Rule 56 of the Federal Rules of Civil Procedure provides that partial summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view all facts in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up)).

### A.    Availability of Judicial Review

The Government asserts two statutory grounds for its argument that, regardless of plaintiffs' standing and the ripeness of their claims, this Court lacks the ability to review Secretary Noem's partial vacatur pursuant to 5 U.S.C. § 706(2): 8 U.S.C. § 1254a(b)(5)(A) and 8 U.S.C. § 1252(f)(1).  Plaintiffs move for summary judgment on their argument that neither of these statutes prevents this Court from reviewing Secretary Noem's partial vacatur of Haiti's TPS designation.

### 1.    *8 U.S.C. § 1254a(b)(5)(A)*

Section 1254a(b)(5)(A) of Title 8 provides that "[t]here is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS.  8 U.S.C. § 1254a(b)(5)(A).  However, this subsection does not prevent courts from reviewing and setting aside agency action that is procedurally deficient.  As another judge of this Court has previously held, "it is clear from context that the judicial review provision in the TPS statute refers to an

individual designation, termination, or extension of a designation with respect to a particular country, not to Defendants' determination practices or adoption of general policies or practices employed in making such determinations." Saget v. Trump, 345 F. Supp. 3d 287, 295 (E.D.N.Y. 2018) (citing McNary v. Haitian Refugee Ctr., 498 U.S. 479, 492 (1991); Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 55 (1993)).

"[T]here is a strong presumption that administrative actions are reviewable in federal court. . . .  The presumption in favor of judicial review may be overcome 'only upon a showing of clear and convincing evidence of contrary legislative intent.'" Id. at 294 (citing Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670 (1986), and quoting Sharkey v. Quarantillo, 541 F.3d 75, 84 (2d Cir. 2008)).  Here, the only legislative intent evinced is the unavailability of judicial review of "the underlying considerations and reasonings employed by the Secretary in reach[ing] her country-specific TPS determinations." Nat'l TPS All., 2025 WL 957677 at *15 (quotation omitted).  Thus, § 1254a(b)(5)(A) "does not apply to, *e.g.*, a pattern or practice that is collateral to and distinct from the specific [country] TPS designations and their underlying rational." Id. (internal quotation marks, quotation, and footnote omitted); see also Reno v. Catholic Soc. Servs., Inc., 509 U.S. at 55 (statute barring judicial review of "a determination" does not "preclude[ ] [an] action challenging the legality of a regulation"); accord CASA de Maryland, Inc. v. Trump, 355 F. Supp. 3d 307, 321 (D. Md. 2018); Centro Presente v. U.S. Dep't of Homeland Sec., 332 F. Supp. 3d 393, 409 (D. Mass. 2018); Ramos v. Nielsen, 321 F. Supp. 3d 1083, 1101-08 (N.D. Cal. 2018), vacated sub nom. Ramos v. Wolf, 975 F.3d 872 (9th Cir. 2020), vacated, 59 F.4th 1010 (9th Cir. 2023) (granting en banc rehearing), appeal dismissed, 2023 WL 4363667 (9th Cir. 2023).

Because "[t]he presumption in favor of judicial review may be overcome only upon a showing of 'clear and convincing evidence' of a contrary legislative intent," Saget, 345 F. Supp. 3d at 294 (internal quotation marks and quotation omitted), and there is no indication that § 1254a(b)(5)(A) applies to the review of procedures followed in making TPS decisions, this provision does not prevent judicial review of the procedures Secretary Noem followed (or did not follow) in partially vacating Haiti's TPS designation.

The Government argues that Secretary Noem's partial vacatur of Haiti's TPS designation is a "single, country-specific determination to shorten Haiti's TPS designation, not some general policy or practice," and "the statute shields from judicial scrutiny specific TPS designations and their underlying rationale." However, at least on this motion, plaintiffs are not challenging the "underlying rationale" of the partial vacatur; they are challenging Secretary Noem's *authority* to partially vacate Haiti's TPS designation. Plaintiffs' arguments do "not dictate how the Secretary should ultimately rule on a TPS designation, termination, or extension." Nat'l TPS All., 2025 WL 957677 at *17. If plaintiffs prevail, Secretary Noem will still be free to make a determination about Haiti's TPS designation; the only caveat is that she will have to make that determination based on the statutorily prescribed timeline, which sets the next available date for termination of Haiti's TPS designation as February 3, 2026. In other words, the substance of Secretary Noem's decision will remain at her discretion, but she will have to follow the procedures set forth in the TPS statute. Clearly, then, plaintiffs are challenging the procedures Secretary Noem followed (or ignored), not the substance of her decision, which 8 U.S.C. § 1254a(b)(5)(A) shields from judicial review.

> 2.    *8 U.S.C. § 1252(f)(1)*

The next provision at issue states that "[r]egardless of the nature of the action or claim

12

. . . no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). The Government argues that § 1252(f)(1)'s prohibition on judicial restraint (other than by the Supreme Court) applies not just to injunctions but also to any order that otherwise restrains the Secretary. An order pursuant to 5 U.S.C. § 706(2), it argues, prevents – *i.e.*, "enjoin[s] or restrain[s]" – the Department of Homeland Security from implementing the Secretary's determination partially vacating the decision to extend Haiti's TPS designation. However, "[n]o court has adopted the construction of § 1252(f)(1) advanced by the government. Rather, all courts that have addressed the issue have rejected the government's construction of the statute." Nat'l TPS All., 2025 WL 957677 at *12 (collecting cases).

In the Supreme Court's recent decision holding that federal courts lack the authority to issue universal injunctions against executive orders, Trump v. CASA, Inc., 606 U.S. ___, 2025 WL 1773631 (June 27, 2025), it explicitly distinguished between injunctions and orders pursuant to 5 U.S.C. § 706(2), stating that no restraint imposed on injunctions by the decision "resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." Id. at *8 n.10 (citing 5 U.S.C. § 706(2)). Justice Kavanaugh, concurring, emphasized this point: "To be sure, in the wake of the Court's decision . . . in cases under the Administrative Procedure Act, plaintiffs may [still] ask a court to preliminarily 'set aside' a new agency rule." Id. at *19 (Kavanaugh, J., concurring) (citing 5 U.S.C. § 706(2)) (additional citations and footnote omitted).

In the § 1252(f)(1) context, the Supreme Court in <u>Garland v. Aleman Gonzalez</u>, 596 U.S. 543, 550 (2022), held that "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions."  In so ruling, the Court did "not purport to hold that § 1252(f)(1) affects courts' ability to 'hold unlawful and set aside agency action, findings, and conclusions' under the Administrative Procedure Act."  <u>Id.</u> at 571 (Sotomayor, J., concurring in part and dissenting in part) (quoting 5 U.S.C. § 706(2)).  Justices Barrett, Thomas, Alito, and Gorsuch have also recognized that the Supreme Court has, to date, "avoid[ed] a position on whether § 1252(f)(1) prevents a lower court from vacating or setting aside an agency action under the Administrative Procedure Act."  <u>Biden v. Texas</u>, 597 U.S. 785, 839 (2022) (Barrett, J., dissenting) (citing 5 U.S.C. § 706(2)).

The Fifth Circuit, in rejecting the Government's contention that vacatur of an action is a *de facto* enjoining or restraining of an agency enforcement action, provided a helpful explanation:

> There are meaningful differences between an injunction, which is a "drastic and extraordinary remedy," and vacatur, which is "a less drastic remedy."  <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, 165 (2010).  The Supreme Court has indicated that § 1252(f) is to be interpreted relatively narrowly.  Indeed, the Court described § 1252(f) as "nothing more or less than a limit on injunctive relief."  <u>Reno v. Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 481 (1999).  And again, in a recent opinion, the Supreme Court reiterated this sentiment and additionally noted that the title of the provision – "Limit on injunctive relief" – clarified the "narrowness of its scope."  <u>See</u> <u>Biden v. Texas</u>, [597 U.S. at 798].  Extending <u>Aleman Gonzalez</u> to vacatur is particularly dubious in light of the Court's caveats.
>
> Additionally, a vacatur does nothing but re-establish the status quo absent the unlawful agency action.  Apart from the constitutional or statutory basis on which the court invalidated an agency action, vacatur neither compels nor restrains further agency decision-making.  We decline to extend <u>Aleman Gonzalez</u> to such judicial orders, especially when doing so would be contrary to the "strong presumption favoring judicial review of administrative action."  <u>Salinas v. U.S.</u>

R.R. Ret. Bd., —— U.S. ——, 141 S. Ct. 691, 698 (2021).

Texas v. United States, 40 F.4th 205, 219 (5th Cir. 2022) (footnote omitted), overruled on other grounds, United States v. Texas, 143 S. Ct. 1964 (2023).

Orders pursuant to 5 U.S.C. § 706(2) set aside unlawful agency actions without foreclosing future agency actions.  These orders are different in nature from injunctions, which prohibit an agency from taking a certain action at all, ever.  Given these differences and the Supreme Court's narrow construction of 8 U.S.C. § 1252(f)(1), see Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. at 481 ("By its plain terms, and even by its title, that provision is nothing more or less than a limit on injunctive relief."), it is clear that orders pursuant to 5 U.S.C. § 706(2) are not prohibited by 8 U.S.C. § 1252(f)(1).

Accordingly, this Court has authority to review Secretary Noem's partial vacatur and provide the relief sought by plaintiffs pursuant to § 706(2).

### B.    Scope of Authority

Plaintiffs next argue for summary judgment on their claim that Secretary Noem exceeded her authority in partially vacating Haiti's TPS designation.

The Government does not contend that Secretary Noem had statutory authority to partially vacate Haiti's TPS designation.  Instead, it asserts that she was "exercising her inherent authority under the INA."  According to the Government, courts have long recognized that an administrative agency has inherent authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures. See Gun South, Inc. v. Brady, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration."); Albertson v. FCC, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to

15

reconsider is inherent in the power to decide.").  This is especially appropriate here, the Government argues, because when the Executive Branch acts in the field of foreign policy "pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can delegate." Youngstown Sheet and Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). The Government recognizes that the TPS statute contains temporal limits and requirements, but it argues that none of them foreclose the Secretary's inherent authority to reconsider the length of a TPS extension.

The cases the Government itself cites demonstrate that there is inherent authority to reconsider a decision, but only where there is no "contrary legislative intent or other affirmative evidence."  Chao v. Russell P. Le Frois Builder, Inc., 291 F.3d 219, 229 n.9 (2d Cir. 2002) (internal quotation marks and quotations omitted); see also The Last Best Beef, LLC v. Dudas, 506 F.3d 333, 340 (4th Cir. 2007) (holding that the USPTO had inherent authority to cancel or suspend its previous decisions *because* the relevant statute was silent as to cancellation and suspension); Macktal v. Chao, 286 F.3d 822, 825-26 (5th Cir. 2002) ("it is generally accepted that *in the absence of a specific statutory limitation*, an administrative agency has the inherent authority to reconsider its decisions." (emphasis added) (collecting cases)); Gun South, Inc., 877 F.2d at 862 (holding that there was an inherent authority to reconsider *because* it did not "interpret [the applicable statute] so broadly [as to] expressly prohibit[ ]" reconsideration); Albertson, 182 F.2d at 399 ("The power to reconsider is inherent in the power to decide . . . *in the absence of any specific limitation*," also referred to as "in the absence of statutory prohibition" (emphasis added)).

Here, there is such a "contrary legislative intent." Section 1254a(b)(3) provides procedures for "periodic review" of a TPS designation, prescribing that:

(A) Periodic review. At least 60 days before end of the initial period of designation, and any extended period of designation, of a foreign state (or part thereof) under this section the [Secretary of Homeland Security], after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state (or part of such foreign state) for which a designation is in effect under this subsection and shall determine whether the conditions for such designation under this subsection continue to be met. The [Secretary] shall provide on a timely basis for the publication of notice of each such determination (including the basis for the determination, and, in the case of an affirmative determination, the period of extension of designation under subparagraph (C)) in the Federal Register.

(B) Termination of designation. If the [Secretary] determines under subparagraph (A) that a foreign state (or part of such foreign state) no longer continues to meet the conditions for designation under paragraph (1), the [Secretary] shall terminate the designation by publishing notice in the Federal Register of the determination under this subparagraph (including the basis for the determination). Such termination is effective in accordance with subsection (d)(3), but shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension under subparagraph (C).

8 U.S.C. § 1254a(b)(3).

The statute provides specific instructions for how to reconsider a TPS designation, and it provides a timeline for doing so. Cf. Nat'l TPS All. v. Noem, 2025 WL 957677, at *31 (no inherent authority to terminate TPS designation because "[t]he TPS statute is specifically prescriptive as to the time frame within which a TPS designation may be terminated." (citing 8 U.S.C. § 1254a(b)(3)(B))). The Secretary of Homeland Security may not publish a termination of a TPS designation that becomes effective before 60 days after the publication of notice in the Federal Register, or "the expiration of the most recent previous extension," whichever is later. 8 U.S.C. § 1254a(b)(3)(B). In other words, Secretary Noem cannot reconsider Haiti's TPS designation in a way that takes effect before February 3, 2026, the expiration of the most recent

17

previous extension.  The legislative provision of a specific procedure for reconsideration of a TPS designation precludes Secretary Noem from reconsidering a TPS designation pursuant to other procedures (or no procedures at all), including by partial vacatur.  Cf. Macktal, 286 F.3d at 825-26 (only "in the absence of a specific statutory limitation [does] an administrative agency has the inherent authority to reconsider its decisions." (collecting cases)).

Because Secretary Noem does not have statutory or inherent authority to partially vacate a country's TPS designation, her partial vacatur must be set aside as unlawful under the APA.  See 5 U.S.C. §§ 706(2)(A), (C).  Plaintiffs' motion for partial summary judgment is granted.

## III.    Plaintiffs' Motion for Postponement of Agency Action

This decision on plaintiffs' motion for partial summary judgment does not completely resolve the case.  Plaintiffs bring other claims, including that the partial vacatur is arbitrary and capricious in violation of the APA, violates due process, and violates the equal protection clause.  Thus, plaintiffs move to postpone Secretary Noem's partial vacatur pending final resolution of the case pursuant to 5 U.S.C. § 705.

As discussed above, 5 U.S.C. § 705 provides that courts reviewing agency actions "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings" "to the extent necessary to prevent irreparable injury."  An order pursuant to 5 U.S.C. § 705 simply postpones an agency action until the completion of a case.  Unlike an injunction, it "does nothing but re-establish the status quo absent the unlawful agency action," and it "neither compels nor restrains further agency decision-making."  Texas v. United States, 40 F.4th at 219.

### A.    Availability of Judicial Review

The Government argues that, in addition to blocking judicial review under § 706(2), 8 U.S.C. §§ 1254a(b)(5)(A) and 1252(f)(1) also bar plaintiffs' motion for postponement.

For the same reasons discussed in the § 706(2) context, the Government's § 1254a(b)(5)(A) argument fails. Plaintiffs move for a postponement pursuant to 5 U.S.C. § 705 based on the same arguments as their motion for partial summary judgment pursuant to 5 U.S.C. § 706(2). Accordingly, the § 705 motion also challenges the procedures Secretary Noem followed (or didn't follow) in partially vacating Haiti's TPS designation, not the substance of her decision, which is what 8 U.S.C. § 1254a(b)(5)(A) shields from judicial review. And, as above, the Supreme Court has distinguished between preliminary injunctions and orders pursuant to 5 U.S.C. § 705, such that 8 U.S.C. § 1252(f)(1) does not apply. See Trump v. CASA, 2025 WL 1773631 at *19 (Kavanaugh, J., concurring) ("plaintiffs may [still] ask a court to preliminarily 'set aside' a new agency rule" (citing West Virginia v. EPA, 577 U.S. 1126 (2016), a case involving § 705) (other citations and footnote omitted)).

In addition to the arguments related to 8 U.S.C. § 1252(f)(1) dispensed with above, the Government argues, specific to plaintiffs' motion pursuant to 5 U.S.C. § 705, that "any preliminary relief here would still be a preliminary injunction because § 705 does not authorize relief here:" the partial vacatur "has already taken effect, so it cannot be postponed under § 705." However, plaintiffs are "seeking . . . postponement of the *impact* of the vacatur decision – *i.e.*, the actual termination of the . . . TPS Designation. As the actual termination . . . has not yet gone into effect," plaintiffs are seeking postponement of the effective date of agency action. Nat'l TPS All., 2025 WL 957677, at *18 (footnote omitted).

Moreover, courts "routinely stay already-effective agency action under Section 705." Texas v. Biden, 646 F. Supp. 3d 753, 770 (N.D. Tex. 2022) (collecting cases). This is because the language of 5 U.S.C § 705 includes authority for the courts "to postpone the effective date of an agency action *or to preserve status or rights pending conclusion of the review proceedings*."

(emphasis added).  The Government argues that "[a]n order staying a policy after it has already

gone into effect . . . does not preserve the status quo, but *alters* it."  "This argument, however, is

without merit because, traditionally, the 'status quo' to be restored is the last peaceable

uncontested status existing between the parties *before* the dispute developed."  Nat'l TPS All.,

2025 WL 957677, at *19 (quoting Texas v. Biden, 646 F. Supp. 3d at 771, and citing Boardman

v. Pac. Seafood Grp., 822 F.3d 1011, 1024 (9th Cir. 2016)) (cleaned up).  "Here, the last

uncontested status that preceded the pending controversy was the state of the TPS designation[ ]

at the time Secretary Mayorkas extended [Haiti's] Designation . . . *i.e., before* Secretary Noem

took the contested action of [partially] vacating the extension."  Id.

     The Government also asserts that plaintiffs are precluded from seeking (and receiving) a

postponement of agency action based on 5 U.S.C. § 701(a)(2), which states that the APA's

provisions do not apply to "agency action . . . committed to agency discretion by law."  This

limitation on the APA applies "in those rare circumstances where the relevant statute is drawn so

that a court would have no meaningful standard against which to judge the agency's exercise of

discretion."  Lincoln v. Vigil, 508 U.S. 182, 191 (1993) (internal quotation marks, quotation, and

citations omitted).  The Government contends that such a rare circumstance exists as to the

Secretary of Homeland Security's "determination as to what constitutes the national interest."

That may be true.  But here, plaintiffs are not challenging a national security determination.

Rather, they are challenging Secretary Noem's partial vacatur as in excess of her authority.

Construing the TPS statute to determine whether it allows for a partial vacatur "does not require

courts to adjudicate the wisdom of the [Secretary's] foreign policy and national security

decisions."  J.A.V. v. Trump, ---- F. Supp. 3d. ----, 2025 WL 1257450, at *10 (S.D. Tex. May 1,

2025).  If this Court were to consider the merits of a Secretary of Homeland Security's findings

as to whether permitting aliens to remain temporarily in the United States was contrary to the United States' national interest, a different analysis would be required. But because plaintiffs do not raise such a challenge, § 701(a)(2) does not preclude the availability of § 705.

### B.    Application of 5 U.S.C. § 705

"The standard for a stay under 5 U.S.C. § 705 is the same as or similar to the standard for a preliminary injunction." Rural & Migrant Ministry v. EPA, 565 F. Supp. 3d 578, 595 (S.D.N.Y. 2020) (citing Bauer v. DeVos, 325 F. Supp. 3d 74, 104-05 (D.D.C. 2018)). "As the Second Circuit put it years ago, a 'stay of an order of an administrative agency may be granted when the following conditions are met: (a) Where the petitioner is likely to prevail on the merits of its appeal; (b) Where the petitioner has shown that without a stay it will suffer irreparable injury; (c) Where there is no substantial harm to other interested persons; and (d) Where the public interest will not be harmed.'" Id. (quoting E. Air Lines v. Civil Aeronautics Bd., 261 F.2d 830, 830 (2d Cir. 1958)). "When the injunction would affect government action taken pursuant to a regulatory scheme, the plaintiff must show a 'clear or substantial' likelihood of success on the merits." Id. (quoting Sussman v. Crawford, 488 F.3d 136, 140 (2d Cir. 2007)).

The above grant of plaintiffs' partial summary judgment motion easily disposes of the first condition, that plaintiffs are likely to prevail on the merits. Plaintiffs are likely to (and, indeed, do) succeed on the merits. Secretary Noem's partial vacatur was in excess of her authority and was thus unlawful.

Plaintiffs have also shown that they will suffer irreparable injury without postponement. "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015) (quotation omitted). As discussed above in the analysis of plaintiffs' standing and the ripeness of their claims, plaintiffs' alleged injuries are

actual and imminent.  They cannot be remedied by an award of money damages.  If the partial

vacatur remains in effect until the final resolution of this case, plaintiffs will lose their right to

live and work in the United States based on what the Court has already found was an unlawful

action.  Even before Secretary Noem's termination goes into effect, plaintiffs are currently being

(and will continue to be) impacted by the partial vacatur's removal of TPS protection, having to

prepare to lose their rights five months earlier than they thought legally possible.

Postponement would not harm the public interest.  The Government argues that "[a]

decision to grant injunctive relief would interfere with the Secretary's foreign relations activities

to ensure tens of thousands of noncitizens whose presence is contrary to the national interest or

who no longer require temporary protection are able to comply with their legal obligation to

depart at the end of the designation period, rather than months later."  But this Court is not

granting injunctive relief.  The Secretary remains free to terminate TPS status for any country

pursuant to the statutorily prescribed procedures Congress has enacted.  Moreover, "the

perpetuation of unlawful agency action is not in the public interest."  Saget, 375 F. Supp. 3d at

377 (citations omitted).

Balancing the equities, plaintiffs' injuries far outweigh any harm to the Government from

a postponement.  Without a postponement, plaintiffs face the termination of Haiti's TPS

designation on September 2, 2025 and the subsequent loss of their legal right to live and work in

the United States, despite this Court's finding that Secretary Noem's partial vacatur of Haiti's

TPS designation was unlawful.  Other than the Executive Branch's right to engage in foreign

relations activities and enforce the nation's immigration laws within the bounds Congress has

set, which remains intact, the Government identifies no other harms to the public interest, other

interested people, or the Government itself that would result from the postponement of Secretary Noem's partial vacatur.

Plaintiffs' motion for postponement pursuant to 5 U.S.C. § 705 is thus granted.

## IV.    Plaintiffs' Remaining Claims

Having granted plaintiffs' motion to set aside Secretary Noem's partial vacatur and to postpone the partial vacatur until the conclusion of this case, it appears that plaintiffs have received all of the relief they seek.  However, plaintiffs' claims that the partial vacatur was arbitrary and capricious, violated plaintiffs' due process rights, and violated the equal protection clause remain.  Thus, the Court defers ruling on the Government's motion to dismiss these claims, and plaintiffs are ordered to show cause why their remaining claims should not be dismissed as moot.  See Anobile v. Pelligrino, 303 F.3d 107, 123 (2d Cir. 2002) (after finding that the action challenged by plaintiffs was unconstitutional, declining to reach plaintiffs' other arguments on constitutionality); Saget, 375 F. Supp. 3d at 366 n.24 (same).

## CONCLUSION

For the foregoing reasons, plaintiffs' motions for partial summary judgment and for postponement of agency action are granted.  The Government's motion to dismiss is denied in part.  Plaintiffs are ORDERED TO SHOW CAUSE within 14 days why their remaining claims should not be dismissed as moot.

**SO ORDERED.**

_Brian M. Cogan_
_____
                        U.S.D.J.

Dated: Brooklyn, New York
       July 1, 2025

23